# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| GILEAD COMMUNITY SERVICES, INC., *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>TOWN OF CROMWELL, *et al.*<br><br>*Defendants.* | Case No. 3:17-cv-627 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 16(b)(4) and 15(a)(2), Plaintiffs Gilead Community Services, Inc. and Rainbow Housing Corp. ("Gilead"), along with the Connecticut Fair Housing Center, Inc. (collectively, "Plaintiffs"), hereby respectfully move for leave to file a First Amended Complaint ("FAC"). Plaintiffs seek leave from this Court to amend the allegations contained in the original Complaint to add newly-discovered facts arising from adverse acts Defendants took this past spring in retaliation for Plaintiffs' assertion of their fair housing rights.[1]

## INTRODUCTION

The instant action stems from a series of discriminatory acts by Defendants Town of Cromwell, Enzo Faienza, Anthony Salvatore, and Jillian Massey (collectively, "Defendants" or

---

[1] On June 20 and June 22, 2018, Plaintiffs' counsel contacted Defendants' counsel pursuant to D. Conn. Local Rule 7(f) in an effort to ascertain Defendants' position on the instant motion and proposed amended complaint. To date, Plaintiffs' counsel has not received a response from Defendants.

"the Town") in an overt and concerted effort to prevent Gilead from opening a home for people with disabilities at 5 Reiman Drive in Cromwell, Connecticut. Specifically, beginning in the spring of 2015, when Defendants became aware of their constituents' opposition to Gilead's purchase of a home on Reiman Drive with the intention of opening a group home at the property for people with disabilities, the Town embarked upon a multi-pronged opposition campaign. The Town invoked the full weight of its municipal authority in order to stop Gilead from operating the home as planned: among other actions, (1) it hosted a forum at the Town Hall in which Town officials spoke in opposition to the home, (2) it issued press releases indicating its official preference that the Reiman Drive neighborhood was not a "suitable" location and that the group home relocate, and (3) it publicly petitioned Gilead's funding entity to withdraw approval of the home. When those actions failed, the Town went so far as to (4) issue a patently illegal cease-and-desist order commanding that Gilead limit the home to two occupants or face fines of $150 per day, and (5) deny Gilead's application for a tax exemption for which it was clearly eligible. The Town continued its crusade until Gilead was left with no choice but to vacate and sell the property, and celebrated when it succeeded in doing so.

Plaintiffs submit that Defendants' campaign to prevent the establishment of Plaintiffs' group home on Relman Drive was because of the disabilities of actual and prospective residents of the intended home and thereby violated federal anti-discrimination laws. Among other claims, Plaintiffs' original complaint alleged that Defendants violated the federal Fair Housing Act ("FHA") by making housing unavailable, in violation of 42 U.S.C. § 3604(f); making discriminatory statements, in violation of 42 U.S.C. § 3604(c); and coercing, intimidating, threatening, or interfering with Plaintiffs' operation of the group home, in violation of 42 U.S.C. § 3617. *See* Compl., Dkt. No. 1, at ¶¶ 96-102.

Through the instant motion, Plaintiffs seek to amend their complaint to add additional, newly-discovered facts. These new allegations involve acts of retaliation taken by Defendants *this year*, well after the filing of the initial complaint and well after the deadline for amending pleadings. Specifically, in the spring of 2018, Defendants denied a tax exemption application submitted by Gilead for a second property it owned in Cromwell. Gilead had previously applied for—and had successfully received—tax exemption status for this other Cromwell property without any eligibility issues. In the course of their dispute regarding the intended group home on Reiman Drive, however, Defendants warned Gilead that if it continued to pursue legal recourse with respect to the Reiman property, Defendants would deny the property tax exemption on Gilead's other Cromwell property. Defendants were true to their word: at the very next opportunity the Town had to review those properties that had previously been granted tax exemptions, Gilead's application was denied.

Federal Rules 15(a)(2) and 16(b)(4) govern whether Plaintiffs' proposed amended complaint should be permitted. Pursuant to Rule 16(b)(4), amendments after the deadline require the party seeking leave to articulate "good cause." Good cause is shown where the moving party demonstrates "that the schedule cannot be reasonably met despite that party's diligence." *Bentley v. GreenSky Trade Credit, LLC*, 2015 WL 1509243 at *1 (D. Conn. Apr. 1, 2015) (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). By the parties' agreement, the deadline for amending pleadings was June 15, 2017, thus Plaintiffs must articulate good cause. There is good cause to permit the amendment because Defendants did not take the actions at issue until the spring of 2018.

Plaintiffs' proposed amendment is also proper under Rule 15(a)(2), which states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions

to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). None of these factors are present here. Plaintiffs have not unduly delayed in filing this motion, given the timing of the retaliatory act, nor do they bring this motion in bad faith. Defendants will not be prejudiced because Plaintiffs do not anticipate serving any additional discovery on the basis of the proposed amendments, Defendants inquired about this issue during the 30(b)(6) deposition of Gilead, and almost three months remain in the discovery period for Defendants to proffer any additional discovery requests regarding the limited amendment. Finally, amendment will not be futile, as the facts in the record and additional facts surrounding Defendant's recent actions demonstrate that the Town's denial of Gilead's tax exemption application violates the FHA.

## BACKGROUND

Plaintiffs' initial complaint was filed on April 17, 2017. Dkt No. 1. The parties' joint Rule 26(f) report set forth a deadline for Plaintiffs to amend pleadings of June 15, 2017.[2]  Dkt. No. 20. Defendants answered the complaint on June 29, 2017,[3] and the parties proceeded to discovery. Dkt. No. 27. On April 27, 2018, the parties moved jointly to amend the scheduling order, which the Court granted on April 30, 2018. Dkt. No. 52. Under the terms of the Amended Scheduling Order, discovery is now set to be complete by September 14, 2018. *Id.*

Plaintiffs now seek leave to amend their complaint to include additional allegations with respect to Defendants' denial of Gilead's tax exemption application in the spring of 2018. These

---

[2] The Court's scheduling order of June 20, 2017 did not address the parties' proposal for a pleading amendment deadline, because the deadline had passed by the time the order was issued. Dkt. No. 26.
[3] In addition to their first answer, Defendants belatedly filed a motion for leave to amend their answer and affirmative defenses, on December 28, 2017, which Plaintiffs did not oppose. Dkt. No. 44. The Court granted Defendants' motion on May 21, 2018. Dkt. No. 54.

actions support Plaintiffs' claim under 42 U.S.C § 3617, which prohibits retaliation against individuals for exercising rights protected under the FHA. Plaintiffs also seek to add a claim under 42 U.S.C. § 3604(f)(2) because Defendants' actions discriminated against Gilead in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, on the basis of disability.

Specifically, on January 5, 2018, the Town issued a letter denying Gilead's application for a property tax exemption for the remaining property Gilead owned in Cromwell. Prior to January 2018, the Town had always approved Gilead's tax exemption applications for that property, and the letter did not give any indication why the Town's position had changed. Gilead filed a timely appeal of the Town's denial and attended a hearing in front of the Town Board of Assessment Appeals ("Appeal Board"). On March 29, 2018, the Appeal Board denied Gilead's appeal, again without any explanation. On May 17, 2018, Gilead filed an appeal of the Appeal Board's decision to Middlesex County Superior Court.

Defendants' denial of the tax exemption for Gilead's Cromwell property was taken in explicit retaliation for its efforts to vindicate its federal fair housing rights and the filing of this lawsuit. On or around May 2016, as Gilead was considering whether to challenge the Town's actions with respect to the property on Reiman Drive, Defendants warned Gilead that if it continued to pursue legal recourse, the Town would take away the tax exemption status from the other property Gilead owned in Cromwell. Indeed, Town Manager Salvatore informed Gilead CEO Osborne that it may not be in Gilead's best interest to continue pushing the tax issue with respect to the property on Reiman Drive.  He stated that if Gilead did continue along this path, the Town may take the status away from Gilead's other property. Gilead nevertheless chose to pursue its fair housing rights, including by filing the instant federal lawsuit in April 2017,

seeking recourse for, among other discriminatory acts, Defendants' denial of tax-exempt status for the Reiman Drive property. Subsequently, at the next quadrennial review of tax exemptions (that is, Cromwell's first opportunity to make any determination with respect to a Gilead property following Defendant Salvatore' threats as well as the filing of Plaintiffs' Complaint), the Town made good on its threat.

Plaintiffs' proposed complaint simply adds allegations involving the above-referenced actions taken by Defendants in the past few months. Attached as Exhibit 1 is a clean copy of Plaintiffs' proposed First Amended Complaint, and attached as Exhibit 2 is a copy of the amended pleading with changes from the original complaint in redline.

## ARGUMENT

Because Plaintiffs' proposed amendment is outside of the parties' agreed-upon deadline to amend pleadings, the Court must consider whether to modify the schedule to permit the filing of the amended complaint, *see* Fed R. Civ. P. 16(b)(4), as well give leave to amend the pleading, *see* Fed. R. Civ. P. 15(a)(2). Plaintiffs meet both standards.

## I.      Plaintiffs' Proposed Amendment Should be Granted under Federal Rule 16(b)(4).

First, the Court should modify the schedule because Plaintiffs meet the good cause standard set forth under Rule 16(b)(4). "'Good cause' means that the schedule cannot reasonably be met despite that party's diligence." *Julian v. Equifax Check Servs. Inc.,* 178 F.R.D. 10, 16 (D. Conn. 1998) (citing Fed. R. Civ. P. Advisory Committee Notes). Courts in the Second Circuit, including this district, have found that good cause exists when, as occurred here, the events giving rise to the proposed new claim did not occur until after the deadline to amend. *See, e.g.*, *Webb v. Armstrong*, No. 3:11-CV-1557 RNC, 2015 WL 1311292, at *2 (D. Conn. Mar. 23, 2015) (finding good cause because plaintiff "did not discover the facts supporting the proposed

claims" until deadline in scheduling order had passed); *see also Lincoln v. Potter,* 418 F.Supp.2d 443, 453 (S.D.N.Y. 2006); *Robinson v. Town of Colonie,* No. 91-CV-1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993).

Good cause is present here. By the parties' agreement, the deadline for amending pleadings was June 15, 2017, but the retaliatory acts that spurred the allegations in Plaintiffs' FAC did not occur until spring of 2018, almost a year later. Because the acts at issue occurred after the deadline to amend, the previously-agreed upon schedule could not have been reasonably met. After it became clear that Defendants would not reverse their denial of Gilead's tax exemption application, Plaintiffs diligently moved to amend the complaint, and have done so shortly after the issuance of the Appeal Board's decision. That Plaintiffs have filed the instant motion close in time to when these additional events took place constitutes "good cause" to permit leave to amend under Second Circuit precedent.

## II.   Plaintiffs' Proposed Amendment is Also Proper Under Rule 15(a)(2).

The Court should also grant leave for Plaintiffs to file their FAC under Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have consistently held that the standard is a liberal one that favors amendment. *See, e.g., Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). Under this liberal standard, "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F. 3d 79, 87 (2d Cir. 2000).

### a.   *Plaintiffs Have Not Unduly Delayed or Engaged in Bad Faith.*

Plaintiffs have not unduly delayed or engaged in bad faith in filing the instant motion. As discussed above, Plaintiffs have diligently sought to amend their complaint soon after the

discovery of the new facts (that is, the fact that Cromwell denied its tax exemption application and the Appeal Board made its final ruling on the matter). Less than ten weeks have elapsed since Defendants' decision to deny Gilead's property tax exemption became final and only five weeks since Gilead appealed this decision. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 848 (2d Cir. 1981) (permitting a three-year gap between discovering new information and filing of complaint and reversing district court's denial of motion to amend on that basis). It is clear that Plaintiffs have exercised diligence in uncovering, investigating, and filing the instant motion and FAC.[4]

### b. *Defendants Will Not Be Prejudiced.*

Nor will Defendants be prejudiced by the proposed amendments. Courts assessing prejudice will consider, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citing *Block v. First Blood Assocs.* 988 F.2d 344, 350 (2d Cir. 1993)). Undue prejudice arises when an "amendment [comes] on the eve of trial and would result in new problems of proof." *Id.* Such concerns are not present here.

Defendants will not have to expend significant resources to conduct discovery on the basis of the amendment (if any at all). Plaintiffs do not anticipate serving any additional discovery or taking any additional depositions on the basis of the proposed amendments. That is because the new allegations are brought with regard to similar Town action (denial of tax

---

[4] Moreover, "[t]he Second Circuit has interpreted the *Foman* standard to allow amendments, even if there was substantial delay in seeking the same, unless the movant has acted in bad faith, the amendment will prejudice the nonmovant, or the amendment is futile." *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 231 (E.D.N.Y. 2007). In other words, even if there is substantial delay (which there is not), that in and of itself cannot serve as the basis for denying Plaintiffs' motion.

exemption) and the same Town players (Shawna Baron and Anthony Salvatore) that were already at issue in this litigation. Thus, documents related to Defendants' 2018 tax exemption denial were appropriately covered by previously-promulgated (and answered) document responses. *See Algonquin Gasoline, Inc. v. Petroleum & Franchise Capital, LLC*, No. 3:16-CV-00017-VAB, 2016 WL 6089674, at *2 (D. Conn. Oct. 17, 2016) (Bolden, J.) (granting motion to amend when "amendments sought arise from the same set of operative facts as the original complaint"); *Malave v. Bolger*, 599 F. Supp. 221, 224 (D. Conn. 1984) (no prejudice when plaintiffs' proposed amendment "merely adds allegations of one more instance of defendant's discriminatory conduct against a background of many other similar allegations").

In addition, Plaintiffs submit the amended complaint three months prior to the close of discovery. Defendants have already had an opportunity to depose Plaintiffs' 30(b)(6) witness at length with respect to his conversation with Defendant Salvatore, and there is ample time for Defendants to conduct any additional discovery (assuming any is even required, which it should not be as the facts added to the complaint are squarely within Defendants' ken) within the remainder of the discovery period. Courts in this Circuit routinely grant motions for leave to amend when the cases are in much more advanced stages than this one. *See, e.g.*, *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming denial of motion for leave to amend complaint where motion was submitted over five years after the complaint was filed and two years after the close of discovery); *Middle Atl. Utilities Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 383 (2d Cir. 1968) (reversing district court's denial of motion to amend when motion submitted after summary judgment briefing was completed); *Malave*, 599 F. Supp. at 224. In light of the timing of the motion to amend and the lack of additional discovery needed, no prejudice will result from granting Plaintiffs leave at this juncture.

### c. *Plaintiffs' Proposed Cause of Action is Not Futile.*

Finally, Plaintiffs' proposed FAC is not futile. A proposed amendment is only futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Plaintiffs' FAC states a claim for retaliation under the FHA. Under Section 3617 of the FHA, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of his having exercised or enjoyed. . . any right granted or protected" by Section 3604. 42 U.S.C. § 3617. For a plaintiff to establish a prima facie case of retaliation, they must show that they engaged in a protected activity, the defendant was aware of the activity, that the defendant took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002).

Here, Gilead engaged in a number of protected activities, not least of all by filing the complaint in the instant case in April 2017, alleging Defendants had violated the FHA. Defendants were aware of those activities by the time they denied Gilead's application in early 2018. And Defendants' decision to deny Gilead's application caused Gilead concrete injury, as it is now subject to thousands of dollars a year in property taxes that it previously did not have to, and legally should not be required to, pay.

The causal connection is clear. As part of Gilead's 30(b)(6) deposition, Gilead's CEO Osborne testified that he had a conversation in or around May 2016 with Defendant Salvatore, during which Mr. Salvatore stated that if Gilead continued to challenge the tax exemption denial as it pertained to Gilead's property on Reiman Drive, the Town would consider taking adverse

action against the tax exemption as it pertained to Gilead's other property. *See* Exhibit 3

(excerpts of Dep. Tr. of Gilead 30(b)(6)). Plaintiffs have even produced to Defendants records

from a Gilead board meeting held on May 2, 2016, which contemporaneously recorded Mr.

Osborne's communication with the board that Mr. Salvatore "advised that it may not be in our

best interest to push the non-profit status to Cromwell as *they may take that status away from

Gilead or have us begin to pay property taxes on our other Cromwell property*." *See* Exhibit 4.

Finally, Plaintiffs establish that Defendants took adverse action at the first opportunity they had

to make a determination on any Gilead property following Plaintiffs' engagement in protected

activities.[5] *See Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir. 2001) (court may infer a

causal connection between protected activity and adverse action if the plaintiff "show[s] that the

protected activity was followed closely in time by the adverse action.") (internal citation

omitted). Any one of these pieces of evidence would be more than sufficient to evince a causal

connection.

Plaintiffs' additional proposed claim under 42 U.S.C. § 3604(f)(2) is equally strong.

Under Section 3604(f)(2), the Town is prohibited from discriminating against Gilead in "the

terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

facilities in connection with such a dwelling," on the basis of disability. 42 U.S.C. § 3604(f)(2);

*see also Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359, 387 (D. Conn. 2011) (finding

that defendant municipality's decision to deny zoning application because of disability of

intended residents violated FHA, including § 3604(f)(2)); *Step By Step, Inc. v. City of

Ogdensburg*, 176 F. Supp. 3d 112, 132 (N.D.N.Y. 2016). Plaintiffs have alleged that Defendants

---

[5] The Town's decision to deny Plaintiffs' application also occurred shortly after Plaintiffs issued a notice seeking to depose the Town Assessor, Shawna Baron, in relation to this case. Ms. Baron's deposition included examination on this topic.

set a discriminatory term, condition, or privilege on Gilead by denying it a tax exemption for which it was otherwise entitled, and that Defendants did so because of the disabilities of the residents Gilead serves. Plaintiffs' FAC states claims under § 3617 as well as § 3604(f)(2).

## CONCLUSION

For the reasons stated above, all the factors of Federal Rules of Civil Procedure 15 and 16 necessary to grant leave to amend are satisfied. Therefore, Plaintiffs respectfully request that the Court grant leave to file the First Amended Complaint.


DATED: June 22, 2018

/s/ Yiyang Wu
Michael Allen, *Pro Hac Vice Granted 4/20/17*
Tara Ramchandani, *Pro Hac Vice Granted 8/25/17*
Yiyang Wu, *Pro Hac Vice Granted 4/20/17*
RELMAN, DANE &COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
mallen@relmanlaw.com
tramchandani@relmanlaw.com
yiyangwu@relmanlaw.com

/s/ Greg Kirschner
Greg Kirschner (ct26888)
Connecticut Fair Housing Center, Inc.
221 Main Street, 4th Floor
Hartford, CT 06106
(860) 263-0724
gkirschner@ctfairhousing.org
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, a copy of the foregoing was filed and served electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ Yiyang Wu
Yiyang Wu