UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GILEAD COMMUNITY SERVICES, INC.,
et al.,
    Plaintiffs,

v.

TOWN OF CROMWELL, et al.,
    Defendants.

No. 3:17-cv-627 (VAB)

**RULING AND ORDER ON MOTION TO AMEND THE COMPLAINT**

On April 17, 2017, Gilead Community Services, Inc. ("Gilead"), Rainbow Housing Corp. ("Rainbow"), and the Connecticut Fair Housing Center, Inc. ("Fair Housing" and in conjunction with Gilead and Rainbow, "Plaintiffs") sued the Town of Cromwell ("Cromwell"), as well as Enzo Faienza, Anthony Salvatore, and Jillian Massey, individually and in their official capacities as Cromwell's mayor, town manager, and zoning enforcement officer, respectively. Compl., ECF No. 1.

Plaintiffs allege that Cromwell and the named officials (collectively "Defendants") violated the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA") and implementing regulations at 24 C.F.R. § Part 100; the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA") and implementing regulations at 28 C.F.R. § Part 35; and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and implementing regulations at 24 C.F.R. § Part 8, "by denying housing to Gilead's clients, who are people with disabilities." *Id*. ¶ 1.

On June 22, 2018, Plaintiffs moved to amend their Complaint to add retaliation claims under 42 USC §§ 3617 and 3604(f)(2). Mem. of Law in Supp. of Pls. Mot. for Leave to File Am. Compl. (Pls. Mem. of Law), ECF No. 57 at 5. Plaintiffs allege that Defendants denied the

property tax exemption on Gilead's other Cromwell property in retaliation for the fair housing rights claims pursued in this Court, and that Defendants' retaliation occurred after the Complaint was filed and the deadline for amendment of the pleadings had passed. *Id*. at 1–3.

Defendants oppose the motion as untimely, substantially prejudicial, and improper due to Plaintiffs' present appeal to the Connecticut Superior Court. Obj. to Pls. Mot. for Leave to File Am. Compl. ("Defs. Obj"), ECF No. 60.

For the reasons set forth below, the Court now **GRANTS** Plaintiffs' motion to amend the Complaint, ECF No. 57.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Gilead, allegedly a tax-exempt organization, seeks to provide housing and community-based services to individuals with mental illnesses. Compl. ¶ 22. Rainbow Housing Corporation allegedly is a separate entity affiliated with and controlled by Gilead. *Id*.

Since 1968, Gilead allegedly has provided housing to mentally ill individuals in Middlesex County, Connecticut. *Id*. Around 2015, Gilead allegedly sought to operate a "community residence for six men with mental health diagnoses in an existing single family residence at 5 Reiman Drive in Cromwell" ("Reiman Drive residence"). *Id*. ¶ 2.

Plaintiffs allege that Defendants not only opposed the operation of the Reiman Drive residence but also "took a leading role in fanning the flames of community opposition, providing community forums for amplifying the opposition's voice, and knowingly and intentionally invoking the full weight of municipal authority to prevent Gilead from operating the house on Reiman Drive." *Id*. ¶ 4.

Specifically, Plaintiffs allege that Defendants: (1) "called a special Town forum and encouraged Town residents to attend and oppose Gilead's operation of the house", (2) "issued an official Town press release requesting that Gilead relocate the house", (3) "petitioned the Connecticut Department of Public Health ("DPH") to deny Gilead the ability to operate the house on Reiman Drive", (4) "issued a 'Cease & Desist Order,' wrongly alleging that Gilead was operating the house 'without first obtaining proper zoning permits,' in violation of Town zoning regulations", and (5) "denied Gilead a property tax exemption for which it was clearly eligible." *Id*. ¶ 5. Plaintiffs claim that "[a]s a consequence of the Defendants' discriminatory actions . . . Gilead had to limit occupancy at the house to just two residents for several months, and eventually was forced to cease its operations on August 31, 2015." *Id*. ¶ 6. Plaintiffs claim that Defendants deprived Gilead of the "opportunity to fulfill its mission", *id*. ¶ 7, and forced the actual and proposed occupants of the Reiman Drive residence "to remain in settings more restrictive and institutional than clinically indicated to be in their best interests", *id*. ¶ 9.[1]

### B. Procedural Background

On April 17, 2017, Plaintiffs filed their Complaint. Compl. That day, the Court issued a Standing Order on Pretrial deadlines that set the deadline for the amendment of pleadings as June 16, 2017. Order, ECF No. 2.

On June 5, 2017, the parties filed a joint Rule 26(f) planning report. Form 26(f) Report of Parties' Planning Meeting, ECF No. 20.

On June 20, 2017, the Court issued a Scheduling Order that set a discovery deadline of June 22, 2018. Scheduling Order, ECF No. 26.

---

[1] Plaintiffs allege that "[e]ach client that Gilead proposed to move—or actually did move—into the house on Reiman Drive was determined, by clinical professionals, to be capable of living in more integrated community settings like those available in the house on Reiman Drive." Compl. ¶ 8.

On June 29, 2017, Defendants filed an Answer to the Complaint. Answer, ECF No. 27. Cromwell largely denies Plaintiffs' allegations. Answer, ECF No. 27. The town asserts four defenses: (1) that the Complaint fails to state a claim upon which relief may be granted, (2) that Plaintiffs' claims against individual Defendants are barred by qualified immunity, (3) that Plaintiffs have failed to exhaust administrative remedies, *id*. at 12, and (4) that Plaintiffs' claims are not ripe for adjudication under *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), Am. Answer, ECF No. 44-1.

On August 24, 2017, the Court granted the parties' consent motion for an extension of time for Plaintiffs to respond to Defendants' first set of interrogatories and requests for production. Order, ECF No. 31. The Court then granted two requests by Defendants for extensions of time to respond to Plaintiffs' interrogatories and requests for production, Orders, ECF Nos. 33, 39.

On December 26, 2017, after the deadline for amendment of pleadings had passed, Order, ECF No. 2, Defendants moved to amend their Answer to add a fourth affirmative defense. Mot. to Amend or Correct Answer to Compl., ECF No. 44.

Thereafter, the parties jointly moved to amend the Scheduling Order. Joint Motion to Amend or Correct Scheduling Order, ECF No. 48.

On April 30, 2018, the Court granted the parties' motion and set a new deadline for discovery of September 14, 2018. Orders, ECF Nos. 51, 52.

On May 21, 2018, the Court granted Defendants' unopposed motion to amend their Answer. Order, ECF No. 54.

On June 22, 2018, Plaintiffs moved to amend their Complaint. Pls. Mem. of Law.

On July 11, 2018, Defendants objected to Plaintiffs' motion. Defs. Obj.

4

On July 20, 2018, Plaintiffs replied. Reply to Defs. Obj. to Pls. Mot. for Leave to Amend ("Reply"), ECF No. 61.

## II. STANDARD OF REVIEW

Rule 16(b)(4) of the Federal Rules of Civil Procedure permits the modification of the pre-trial schedule "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended pleading. FED. R. CIV. P. 15(a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id.*; *see also Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000) ("[D]istrict courts should not deny leave unless there is a substantial reason to do so[.]"). The Second Circuit "review[s] the district court's decision to grant a party leave to amend for abuse of discretion." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. [.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Plaintiffs argue that (1) that they have shown good cause for the modification of the scheduling order, (2) that justice requires the Court's leave to amend, and (3) that the proposed amendment is not futile.

The Court agrees.

### A. Modification of the Scheduling Order

Rule 16(b)(4) permits the modification of a pre-trial schedule "with the judge's consent." FED. R. CIV. P. 16(b)(4). The movant must show good cause for the modification. *Id*. While "the rule is designed to offer a measure of certainty in pretrial proceedings . . . . in certain cases the court may determine that the deadline cannot reasonably be met despite the diligence of the party seeking the extension. In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (internal quotation and citation omitted).

"'Good cause' means that the schedule cannot reasonably be met despite that party's diligence." *Julian v. Equifax Check Servs., Inc.*, 178 F.R.D. 10, 16 (D. Conn. 1998), citing Fed.R.Civ.P. 16 Advisory Committee Notes, Subdivision (b) (1983 Amendment); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("According to the principles we discussed in *Parker*, 204 F.3d at 339–40, the primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.").

Defendants argue that Cromwell denied Plaintiffs' relevant tax exemption on March 24, 2018, Defs. Obj. at 5, and that Plaintiffs should have sought leave to amend their Complaint three days later, in the parties' March 27, 2018 joint motion to amend the schedule. Joint Motion to Amend or Correct Scheduling Order. Defendants argue that since Plaintiffs did not move to amend in late March of 2018, the Court should deny their motion for leave to amend the scheduling order. Defs. Obj. at 5.

Plaintiffs argue that they have been diligent and have shown good cause to amend the scheduling order. Pls. Mem. of Law at 6–7.

The Court agrees.

The deadline for the amendment of pleadings was June 16, 2017. Order, ECF No. 2. Cromwell allegedly denied the tax exemption on Plaintiffs' second property in the spring of 2018. Pls. Mem. of Law at 7; Defs. Obj. at 5. Plaintiffs thus could not have pled their retaliation claim by the 2017 amendment deadline. *Julian*, 178 F.R.D. at 16 ("'Good cause' means that the schedule cannot reasonably be met despite that party's diligence.").

Plaintiffs must "demonstrate diligence" in adhering to deadlines. *Kassner*, 496 F.3d at 244 ("[T]he primary consideration is whether the moving party can demonstrate diligence."). Plaintiffs allege that they filed their motion "after the issuance of the Appeal Board's decision", when "it became clear that Defendants would not reverse their denial of Gilead's tax exemption application." Pls. Mem. of Law at 6. Plaintiffs' motion was allegedly filed "[l]ess than ten weeks . . . since Defendants' [denial] and only five weeks since Gilead appealed [the denial]." *Id*. at 8. Within weeks of this second denial, Plaintiffs drafted an Amended Complaint and moved to modify the scheduling order. That timeline reflects a diligent effort to adhere to deadlines.

Accordingly, the Court finds good cause to amend the scheduling order to permit amendment of the pleadings.

### B. Leave to Amend the Complaint

Rule 15 establishes a permissive standard for the amendment of pleadings. FED. R. CIV. P. 15(a)(2). Courts will not deny leave absent a substantial reason to do so. *Friedl*, 210 F.3d at 87; *see also Foman*, 371 U.S. at 182. Courts, however, will deny leave on account of prejudice or bad faith. *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 376 (D. Conn. 2012).

An "[a]mendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute.'" *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation and citation omitted).

Defendants contend that Plaintiffs' lengthy delay lessens Defendants' burden to demonstrate prejudice. Defs. Obj. at 4. Defendants argue that they would be prejudiced by having to expend additional resources on discovery unrelated to the pending lawsuit. *Id*. at 2, 6. Defendants also assert that Plaintiffs "should complete the appeals process in state court before bringing these allegations to federal court." *Id*. at 7.

Plaintiffs argue that they did not unreasonably delay in seeking to amend, that no prejudice would result from the amendment, and that the "pending state tax appeal is irrelevant to Plaintiffs' claim of retaliation." Reply at 1.

The Court agrees.

As explained above, Plaintiffs did not delay in filing the present motion. Rather, Plaintiffs filed shortly after the denial of their appeal but before final resolution by the state's courts. Defs. Obj. at 7. In essence, Plaintiffs waited to see if Cromwell would reverse its position before filing a retaliation claim. When Cromwell did not, Plaintiffs filed within weeks. Further, as both parties acknowledge, Plaintiffs filed the present motion before the close of fact witness discovery, *id*. at 6, and three months before the close of all discovery. Pls. Mem. of Law at 9.

Plaintiffs plausibly allege that the retaliation claims implicate "the same Town players" and "similar Town action." Pls. Mem. of Law at 9. The proposed claims seem to arise from the exercise of Defendants' discretionary zoning and taxing authority, Pls. Mem. of Law at 3, similar to Plaintiffs' initial claims, *id*. at 2. As a result, any prejudice to Defendants is minimal.

8

Courts do not deny Rule 15 amendments on account of some prejudice. Rather, an "[a]mendment may be prejudicial when . . . it would 'require the opponent to expend significant additional resources . . . or significantly delay the resolution of the dispute.'" *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation and citation omitted). At most, the parties may have to re-depose a few witnesses. Defendants have not shown that such depositions would require "significant additional resources . . . or . . . delay[.]" *Id*.

Moreover, if Plaintiffs pursued the retaliation claim in a separate suit, then Defendants would have to defend Cromwell and the named Defendants against a second suit by the same Plaintiffs related to allegedly interconnected zoning and taxation issues. Pls. Mem. of Law at 3 ("In the course of their dispute regarding the intended group home on Reiman Drive, Defendants warned Gilead that if it continued to pursue legal recourse with respect to the Reiman property, Defendants would deny the property tax exemption on Gilead's other Cromwell property."); *see also Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (Reversing the district court's denial of leave to amend where "the new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint. Moreover, both the contract and negligence theories set forth in the proposed amended complaint were forecast by the original malpractice allegations."). A second suit thus would be improvident.

Finally, while Defendant is correct that section 12-117a of the Connecticut General Statutes "set forth the appeal process regarding property tax decisions to superior court", Defs. Obj. at 7, the state statute does not require administrative exhaustion prior to filing a federal Fair Housing Act claim. CONN. GEN. STAT. 12-117a. Connecticut courts have required plaintiffs to exhaust local appeals processes before appealing to the state's Superior Courts. *See Tirado v.*

9

*City of Torrington*, 179 Conn. App. 95, 104–05, 179 A.3d 258, 264 (2018) ("The plaintiff claimed that the defendant acted without authority when it issued a certificate of change and added her motor vehicle to its 2004 grand list beyond the three year statute of limitations that the plaintiff alleged was applicable . . . . that claim was appealable to the defendant's Board of Assessment Appeals and then, if she was dissatisfied with the board's decision, to the Superior Court.").

Connecticut's courts have not required plaintiffs to obtain an unfavorable Superior Court ruling before filing in federal court. Furthermore, the federal Fair Housing Act does not require administrative exhaustion. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103, (1979) ("Contrary to petitioners' contention, § 810 is not structured to keep complaints brought under it from reaching the federal courts, or even to assure that the administrative process runs its full course."). And, Defendants have cited no law to support their contention that the ruling of a Connecticut Superior Court is dispositive of a federal retaliation claim. Defs. Obj. at 7. The Court therefore finds no sound basis to deny Plaintiffs' motion to amend.

### C. Viability of the Retaliation Claim

Under section 3617 of the Fair Housing Act, it is "unlawful to coerce, intimidate, threaten, or interfere with any person" pursuing his or her rights under sections 3603, 3604, 3605, or 3606 of the Fair Housing Act. 42 USC § 3617. Section 3604(f)(2) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." 42 USC § 3604(f)(2).

10

To establish a prima facie retaliation case, a plaintiff must show "that it was engaged in protected activity, that the defendant was aware of this activity, that the defendant took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse . . . action." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53–54 (2d Cir. 2002) (alterations in original). ("Finally, RECAP alleges that the defendants retaliated against it for threatening to complain and actually complaining about the denial of the permit by withdrawing funds committed to it by [Middletown] for a different project. We conclude that this allegation states a claim . . . .").

While Defendants have not raised the issue of futility, in determining whether to grant leave to amend the Complaint, the Court has reviewed the issue and does not find Plaintiffs' proposed amendment futile. Plaintiffs have plausibly pled a retaliation claim by alleging that Plaintiffs provide housing services to individuals covered by the Fair Housing Act, Compl. ¶22, that Defendants were aware of Plaintiffs' proposed operation of the Reiman Drive residence, *id*. ¶ 2, that Defendants denied Plaintiffs' recent tax exemption request, Defs. Obj. at 5, and that such a denial could constitute an adverse action causally connected to Plaintiffs' allegedly protected activity at the Reiman Drive residence, Pls. Mem. of Law at 3 ("[A]t the very next opportunity the Town had to review those properties that had been granted tax exemptions, Gilead's application was denied.").

IV.  **CONCLUSION**

For the reasons set forth above, the Court now **GRANTS** Plaintiffs' motion to amend the Complaint, ECF No. 57.

As a result of this ruling, Plaintiffs' First Amended Complaint, ECF No. 57-1, is now the operative Complaint for this case. To the extent that the current scheduling order needs to modified as a result of this ruling, the parties should so move, jointly, if possible, by March 22, 2019.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of February, 2019.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE