# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GILEAD COMMUNITY SERVICES, INC., *et al.*,

          Plaintiffs,

          v.

TOWN OF CROMWELL, *et al.*,

          Defendants.

Civil Action No. 3:17-cv-627

## PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING SCOPE OF DAMAGES IN LIGHT OF THE COURT'S OCTOBER 15, 2019 ORDER

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ ii

I.   **All Defendants Face Liability Under the Fair Housing Act** .............................1

    A.  **Plaintiffs Have Established Municipal and Individual Liability** ............... 2

    B.  **Qualified Immunity is Not Appropriate and in Any Event Will Not Dispose of the Need for Trial** ...................................................................5

II.  **Compensatory and Punitive Damages are Available Under the Fair Housing Act Against All Defendants** ................................................................ 6

    A.  **Defendants are Jointly Liable for Plaintiffs' Compensatory Damages** ..... 6

    B.  **All Defendants Face Liability for Punitive Damages** ................................ 7

        1.  **Under the FHA, Punitive Damages are Available Against All Defendants** ........................................................................ 8

        2.  **The Evidentiary Record Supports Jury Assessment of Punitive Damages Against All Defendants** .................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Anderson Grp., LLC v. City of Saratoga Springs*,
805 F.3d 34 (2d Cir. 2015)..................................................................................................6

*Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013) ..........................................................5

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) ..........................................................3

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) ........................................8, 12

*Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*,
No. 09-CV-6552, 2011 WL 6016623 (W.D.N.Y. Dec. 2, 2011)...................................4, 5

*Ciraolo v. City of New York*, 216 F.3d 236 (2d Cir. 2000)...........................................12

*City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*,
982 F.2d 1086 (7th Cir. 1992) ..........................................................................................6

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ............................5

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)..........................10, 11, 12

*Dadian v. Vill. of Wilmette,* No. 98 C 3731,
1999 WL 299887 (N.D. Ill. May 4, 1999*)* ................................................................9, 11

*Floyd v. City of Sanibel*, No. 2:15-CV-00795-SPC-CM,
2017 WL 78638 (M.D. Fla. Jan. 9, 2017)........................................................................9

*Forziano v. Indep. Grp. Home Living Program, Inc.,*
613 F. App'x 15 (2d Cir. 2015). ......................................................................................2

*Gonzalez v. Rakkas*, No. 93 CV 3229 (JS), 1995 WL 451034 (E.D.N.Y. July 25, 1995)..............8

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,
958 F. Supp. 1320 (N.D. Ill. 1997) ....................................................................9, 11, 12, 13

*Jennings v. Hous. Auth. of Baltimore City*, No. Civ. WDQ-13-2164,
2014 WL 346641 (D. Md. Jan. 29, 2014)......................................................................10

*Johnson v. Ganim*, 342 U.S. 105 (2d Cir. 2003)..............................................................5

*Kentucky v. Graham*, 473 U.S. 159 (1985)......................................................................4

*L & F Homes & Dev. v. City of Gulfport, Miss.*, No. 1:10CV387HSO-JMR,
2011 WL 5563205 (S.D. Miss. Nov. 15, 2011)................................................................10

*Meyer v. Holley*, 537 U.S. 280 (2003) .........................................................................2, 3

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ......................2

*Parris v. Pappas,* 844 F. Supp. 2d 271 (D. Conn. 2012)................................................8, 9

*Ponce v. 480 E. 21st St., LLC,* No. 12 CIV. 4828 (ILG) (JMA),
2013 WL 4543622 (E.D.N.Y. Aug. 28, 2013).....................................................................3

*Rehab. Support Servs., Inc. v. City of Albany, N.Y.,* No. 1:14-CV-0499 LEK/RFT,
2015 WL 4067066 (N.D.N.Y. July 2, 2015) ..................................................................9, 11

*Reg'l Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*,
294 F.3d 35 (2d Cir. 2002)..........................................................................................2, 3, 4

*S. Middlesex Opportunity Council, Inc. v. Town of Framingham*,
752 F. Supp. 2d 85 (D. Mass. 2010) ...............................................................................10

*Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363 (2d Cir. 1988)...................................6

*Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*,
102 F.3d 781 (6th Cir. 1996) ...........................................................................................11

*Space Hunters, Inc. v. United States*, No. 10 Civ. 6335 CM, 2011 WL 1899627
(S.D.N.Y. May 17, 2011), *aff'd* 500 F. App'x 76 (2d Cir. 2012) .......................................9

*Stern v. Michelangelo Apartments, Inc.*,
No. 97-CV-9532 GAY, 2000 WL 33766107 (S.D.N.Y. Jan. 24, 2000).............................9

*Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565
(2d Cir. 2003)................................................................................................................2, 5

*United States v. Hylton*, 944 F. Supp. 2d 176 (D. Conn. 2013),
*aff'd*, 590 F. App'x 13 (2d Cir. 2014).......................................................................6, 8, 13

*United States v. Space Hunters, Inc.*,
429 F.3d 416 (2d Cir. 2005)...................................................................................3, 7, 8, 12

*Whyte v. Alston Mgmt., Inc.,* No. 10-81041-CIV,
2012 WL 11789773 (S.D. Fla. Apr. 11, 2012) ..................................................................6

iii

**<u>Statutes and Regulations</u>**                                                        **<u>Page(s)</u>**

29 U.S.C. § 794 ........................................................................................................2

42 U.S.C. § 1981 ......................................................................................................9

42 U.S.C. § 1983 ...........................................................................................2, 10, 11

42 U.S.C. § 3604 ...................................................................................................1, 2

42 U.S.C. § 3613 ............................................................................................. *passim*

42 U.S.C. § 3614 ....................................................................................................11

42 U.S.C. § 3617 ......................................................................................................1

42 U.S.C. § 12131 ....................................................................................................2

Pub. L. 100–430, 102 Stat 1619 (1988) ..................................................................8

**<u>Other Authorities</u>**

Restatement (Second) of Torts § 886A (1979) .........................................................7

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GILEAD COMMUNITY SERVICES, INC., *et al.*,

        Plaintiffs,

        v.

TOWN OF CROMWELL, *et al.*,

        Defendants.

Civil Action No. 3:17-cv-627

## PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING SCOPE OF DAMAGES IN LIGHT OF THE COURT'S OCTOBER 15, 2019 ORDER

Pursuant to the Court's October 15, 2019 Order, Gilead Community Services, Rainbow Housing Corporation, and Connecticut Fair Housing Center ("Plaintiffs") respectfully submit the instant memorandum regarding the scope of damages facing the Town of Cromwell, Enzo Faienza, and Anthony Salvatore ("Defendants") at trial.

## I.    All Defendants Face Liability Under the Fair Housing Act.

As discussed in greater detail in Plaintiffs' earlier briefing, *see* Dkt. Nos. 76, 85, 95, 113, ample record evidence allows a jury to find that Defendants' campaign against Gilead's group home violated the Fair Housing Act ("FHA") by discriminating on the basis of disability. *See* 42 U.S.C. § 3604(f)(1)-(2) (unlawful to "make [housing] unavailable" and to impose discriminatory "terms, conditions, or privileges" on account of disability); *id.* § 3617 (unlawful to "interfere with" enjoyment of property and otherwise retaliate on account of disability). Because genuine issues of material fact remain regarding the liability of each defendant under the FHA, and because the law is clear that Mayor Faienza and Town Manager Salvatore ("Individual

Defendants") are not entitled to qualified immunity, Plaintiffs' claims should proceed to a jury trial against all Defendants.[1]

### A.    Plaintiffs Have Established Municipal and Individual Liability.

The FHA provides relief for plaintiffs whose fair housing rights were jointly violated by municipal and individual defendants. *See, e.g.*, *Reg'l Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*, 294 F.3d 35, 53-54 (2d Cir. 2002) (proper to sue city and individual Town officials and employees who took discriminatory actions). As set forth below, each Defendant—the Town, Mayor Faienza, and Town Manager Salvatore—faces independent exposure on account of their own discriminatory actions against Plaintiffs.

A municipality's liability under the FHA can be established in at least two manners. First, consistent with § 1983 doctrine under *Monell v. Dep't of Soc. Servs. of City of New York*, a municipality is liable for municipal policies or customs that led to discrimination. *See* 436 U.S. 658, 694 (1978). Second, as the Supreme Court held in *Meyer v. Holley*, a municipality is liable for discriminatory actions taken by its agents under principles of *respondeat superior. See* 537 U.S. 280, 286 (2003); *see also RECAP*, 294 F.3d at 53-54 (holding City liable for acts of mayor).

Both are at play here. Plaintiffs' original brief in opposition lays out the series of concerted Town actions that give rise to municipal liability. *See* Dkt. Nos. 85-86. These include some of the Town's own policies as applied to group homes (municipal acts that are susceptible to liability under a *Monell* theory) as well as acts that were targeted at Gilead by the Individual

---

[1] The scope of Defendants' damages is governed by Plaintiffs' claims under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617. Plaintiffs have also sued the Town of Cromwell for violating the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Dkt. No. 57-1. Liability under those statutes are assessed under the same framework as the FHA, and they do not give rise to any independent claims to damages. *See generally Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573–74 (2d Cir. 2003); *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18 (2d Cir. 2015).

Defendants and other Town officials and employees (acts that, under *Meyer*, are imputed to the Town). *See, e.g.*, Dkt. No. 86 at ¶ 22 (Town policy that employees notify Town Manager when group home moves into town); Dkt. No. 114 at ¶ 64 (Town policy to deny tax exemptions to all group home providers); *see also* Dkt. No. 77 at ¶¶ 39-40, 45-47 (Town Mayor's issuance of statements urging Gilead to close its group home); *id.* at ¶¶ 60-65 (Town Zoning and Enforcement Officer's issuance of cease-and-desist order against Gilead); *id.* at ¶¶ 66-71 (Town Assessor's denial of Gilead's tax exemption application as to 5 Reiman); Dkt. No. 114 at ¶¶ 43-53, 61-64 (Town Manager's warning to Gilead that Town may revoke Gilead's tax-exempt status as to Main Street property if Gilead exercised its fair housing rights, and Town's subsequent decision to follow through on this threat). Based on these facts, a reasonable jury could easily find that the Town's actions violated the FHA.

In addition to holding the municipality accountable, a plaintiff may also seek redress from individual defendants for actions they took in violation of the FHA. This is true even if the principal's liability is based purely on a theory of vicarious liability. *See RECAP*, 294 F.3d at 53-54 (City and mayor liable for same acts); *see also United States v. Space Hunters, Inc.*, 429 F.3d 416, 427–28 (2d Cir. 2005) (principal and agent both liable under vicarious liability theory); *Cabrera v. Jakabovitz*, 24 F.3d 372, 380 (2d Cir. 1994) (same). Under those circumstances, so long as the individual defendants "engaged in affirmative acts of discrimination or enforced a [principal's] discriminatory rules or policies," they are also "directly liable under the statute." *Ponce v. 480 E. 21st St., LLC*, No. 12 CIV. 4828 (ILG) (JMA), 2013 WL 4543622, at *4 (E.D.N.Y. Aug. 28, 2013) (citations omitted).[2]

---

[2] To be clear, Plaintiffs do not claim that the Town's actions are imputed to the Individual Defendants, or that the Individual Defendants participated in each Town action. Rather, Plaintiffs

Because Plaintiffs have produced substantial evidence that Mayor Faienza and Town Manager Salvatore engaged in affirmative acts of discrimination against Gilead, both face exposure in their capacities as individual defendants. Mayor Faienza testified that he and Salvatore issued statements to the press urging Gilead to relocate, and that he, Salvatore, and the Town Council made the decision to petition DPH to deny Gilead's proposal. *See* Exh. 1, Response to Interrogatories 5 and 7 (admitting Faienza and Salvatore's involvement in press releases and DPH petition)[3]; Exh. 2-3 (excerpts from Town councilmembers' testimony that they relied on advice of Faienza, Salvatore, and Town Attorney); *see also* Dkt. No. 86 at ¶ 173 (Mayor's email to constituent taking credit for persuading Gilead to leave town). And, in addition to his role in the press releases and DPH petition, Town Manager Salvatore instituted the Town policy of informing him of group homes moving in; worked closely with the tax assessor to deny Gilead's tax exemptions; and explicitly warned Gilead against exercising its fair housing rights. *See* Dkt. No. 77 at ¶ 73; Dkt. No. 114 at ¶¶ 38-42, 45-49. A jury could easily find that the Individual Defendants took those actions for discriminatory reasons and are individually liable under the FHA. *See RECAP*, 294 F.3d at 53-54 (defendant Mayor individually liable for signing Town's withdrawal of funding commitment); *Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*, No. 09-CV-6552, 2011 WL 6016623, at *6–7 (W.D.N.Y. Dec. 2,

---

seek to hold the Individual Defendants accountable for the affirmative acts of discrimination that they themselves engaged in.

In addition, Defendants do not contend that any of the actions listed above fall outside of the Individual Defendants' official duties, nor would such an argument make a difference to the Court's assessment of liability. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (individual capacity lawsuits cover actions taken by a government official under color of law).

[3] While Plaintiffs introduced some of these exhibits as attachments to their previously-filed Statements of Fact, for the Court's convenience, they are re-attached to the instant memorandum.

2011) (individual liability for board members who voted to delay plaintiff's construction project and realtor who recommended vote).

> **B.      Qualified Immunity is Not Appropriate and in Any Event Will Not Dispose of the Need for Trial.**

Defendants' assertions of qualified immunity also fail to protect Defendants from liability at trial, for two reasons.

First, as the Court correctly concluded in its original opinion, the Individual Defendants are not entitled to qualified immunity. Defendants' argument that they did not have sufficient notice of their clearly-established obligations under the FHA is without merit. *See, e.g.*, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985). In fact, in *Tsombanidis v. West Haven Fire Dept.*, the Second Circuit held that a municipality's campaign against unpopular group home provider, including sending inspectors to the home, identifying and penalizing the home for alleged code infractions, and classifying the property as an illegal boarding home requiring a conditional permit, violated the FHA. 352 F.3d 565, 579-80 (2d Cir. 2003). Nor can Defendants establish objective reasonableness. Where, as here, there is a jury question as to whether Defendants acted with discriminatory motive against Plaintiffs, qualified immunity is not appropriate. *See Johnson v. Ganim*, 342 F.3d 105, 117 (2d Cir. 2003).

Second, qualified immunity—assuming it is successfully established—only pertains to claims against the Individual Defendants. *See Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). Claims against the municipal defendant will proceed to trial, and the same evidence will be introduced at trial, regardless of this Court's holding on qualified immunity.[4]

---

[4] Qualified immunity will not impact Defendants' exposure to compensatory damages. It will, however, affect the potential scope of punitive damages, as those are assessed on each defendant separately. *See infra Section* II.

## II.     Compensatory and Punitive Damages are Available Under the Fair Housing Act Against All Defendants.

The Court has asked for clarification regarding the scope of Defendants' liability at trial. The scope of damages under the FHA is statutorily defined. Under 42 U.S.C. § 3613(c), "the court may award to the plaintiff actual and punitive damages, and . . . may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order[.]" 42 U.S.C. § 3613(c).

Because Plaintiffs have introduced evidence that would support findings of compensatory and punitive damages, both categories of damages should be submitted to a jury. As to compensatory damages, Defendants would be jointly liable for the harm incurred by Plaintiff as a result of their discriminatory conduct. And all Defendants, including the Town, face separate liability for punitive damages.

### A.     Defendants are Jointly Liable for Plaintiffs' Compensatory Damages.

Upon a finding of liability, Defendants will owe Plaintiffs compensatory damages. Compensatory damages are "designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015). In multi-defendant FHA cases involving vicarious liability, joint liability attaches to co-defendants. *See United States v. Hylton*, 944 F. Supp. 2d 176, 192 (D. Conn. 2013), *aff'd*, 590 F. App'x 13 (2d Cir. 2014) (citing *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1094, 1098 (7th Cir. 1992)); *Whyte v. Alston Mgmt., Inc.,* No. 10-81041-CIV, 2012 WL 11789773, at *1–2 (S.D. Fla. Apr. 11, 2012) (citing cases); *see generally Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 374 (2d Cir. 1988) (in multi-defendant breach of fiduciary duty case, rejecting joint liability for punitive damages but not compensatory damages).

6

The Court has asked the parties to brief whether the Individual Defendants are "liable for damages under the Fair Housing Act separate and apart from any alleged damages against the Town of Cromwell." Dkt. No. 129. At trial, each Plaintiff will be prepared to introduce evidence of the harm they incurred as a result of Defendants' discriminatory conduct. *See* Dkt. No. 86 at ¶¶ 168, 175-76 (Gilead and Rainbow suffered, *inter alia*, financial losses (including out-of-pocket costs related to renovations and sale of the property at a loss), loss of business reputation and good will, and loss of opportunity); *Id.* ¶¶ 177-79 (CFHC suffered harms related to the diversion of their resources and frustration of their mission). The jury will then be asked to award an amount of damages that make each Plaintiff whole, and Defendants will be held jointly liable for those amounts.[5] In other words, although the jury's compensatory damages awards will consider harm sustained by each Plaintiff as a result of the Individual Defendants' conduct, under joint liability principles, those damages will not be "separate and apart" from damages resulting from the Town's conduct.

### B. All Defendants Face Liability for Punitive Damages.

At trial, each Defendant will be exposed to a separate jury award for punitive damages. The FHA explicitly contemplates the availability of punitive damages. *See* 42 U.S.C. § 3613(c)(1). Punitive damages are proper in FHA cases where a defendant "has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Space Hunters*, 429 F.3d at 427 (internal quotations omitted). This Circuit has noted that whether a Defendant acted with "malice" or

---

[5] The defendant who pays the judgment has a right to pursue contribution from the other defendants, but determining that allocation would not be the province of this Court. *See generally* Restatement (Second) of Torts § 886A (1979).

"reckless indifference" is a fact-intensive inquiry best suited to determination by a jury. *See id.*; *see also generally Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010).

Because punitive damages are designed to punish, they are tailored to each defendant's characteristics and are therefore assessed against each defendant separately. This is true even in cases involving vicarious liability. *See Space Hunters,* 429 F.3d at 427-28 (error not to submit punitive damages issue to jury for both principal and agent); *see also Gonzalez v. Rakkas*, No. 93 CV 3229 (JS), 1995 WL 451034, at *7 (E.D.N.Y. July 25, 1995) ("A principal is liable for punitive damages for the discriminatory acts of his agent if he knew of or ratified the acts.").

As set forth below, Plaintiffs' punitive damages claims should survive summary judgment as to all Defendants.

### 1. Under the FHA, Punitive Damages are Available Against All Defendants.

As a threshold matter, punitive damages are available against all Defendants.

First, the FHA contemplates the assessment of punitive damages on Individual Defendants. *See, e.g.*, *Space Hunters*, 429 F.3d at 427 (finding error when district court failed to submit punitive damages question to jury); *see also Parris v. Pappas,* 844 F. Supp. 2d 271, 283 (D. Conn. 2012) (in disability discrimination FHA case, awarding $150,000 in punitive damages against individual defendant); *Hylton,* 944 F. Supp. 2d at 176.

Second, punitive damages are available against municipalities that violate the FHA. In 1988, Congress amended the FHA and added punitive damages as an available remedy upon a finding of liability.[6] In stark contrast to other civil rights statutes, § 3613(c)(1) does <u>not</u> set forth any limitation as to who may be subject to punitive damages awards. *Compare* 42 U.S.C. § 3613(c)(1) ("[I]f the court finds that a discriminatory housing practice has occurred or is about

---

[6] *See* Pub. L. 100–430, 102 Stat 1619 (1988) (codified at 42 U.S.C. § 3613).

to occur, the court may award to the plaintiff actual and punitive damages,") *with* 42 U.S.C.

§ 1981a(b)(1) (in Title VII context, "A complaining party may recover punitive damages under

this section against a respondent (other than a government, government agency or political

subdivision[.])"). As a result, courts in this circuit have never restricted the applicability of

§ 3613(c)(1) to exclude any defendant; to the contrary, they have allowed punitive damages to

proceed against a diverse array of defendants, including a municipality. *See, e.g.*, *Rehab. Support

Servs., Inc. v. City of Albany, N.Y.,* No. 1:14-CV-0499 LEK/RFT, 2015 WL 4067066, at *11

(N.D.N.Y. July 2, 2015) (defendant municipality); *Space Hunters, Inc. v. United States*, No. 10

Civ. 6335 CM, 2011 WL 1899627, at *2 (S.D.N.Y. May 17, 2011), *aff'd*, 500 F. App'x 76 (2d

Cir. 2012) (defendant housing listings company); *Parris*, 844 F. Supp. 2d at 283 (defendant

landlord); *Stern v. Michelangelo Apartments, Inc.*, No. 97-CV-9532 GAY, 2000 WL 33766107,

at *1 (S.D.N.Y. Jan. 24, 2000) (defendant housing cooperative board president and property

management company).

Consistent with the statutory language, no court of appeal has exempted municipal

defendants from punitive damages exposure under the FHA. The district courts that have

addressed the issue have rendered conflicting decisions. *See, e.g.*, *Rehab. Support Servs.*, 2015

WL 4067066, at *11 (citing § 3613(c)(1) and rejecting argument that punitive damages cannot

be recovered against municipality); *Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,

958 F. Supp. 1320, 1331–32 (N.D. Ill. 1997) (at summary judgment, explaining that the court

"decline[s] to foreclose the possibility of awarding punitive damages" and allowing Plaintiffs to

"develop evidence of residents' knowledge and participation at trial"); *Dadian v. Vill. of

Wilmette*, No. 98 C 3731, 1999 WL 299887, at *3 (N.D. Ill. May 4, 1999); *Floyd v. City of

Sanibel*, No. 2:15-CV-00795-SPC-CM, 2017 WL 78638, at *7 (M.D. Fla. Jan. 9, 2017); *but see

*Jennings v. Hous. Auth. of Baltimore City*, No. Civ. WDQ-13-2164, 2014 WL 346641, at *9 (D.

Md. Jan. 29, 2014) (punitive damages unavailable unless statute "explicitly authorize punitive

damages awards against local governments*"); L & F Homes & Dev. v. City of Gulfport, Miss.*,

No. 1:10CV387HSO-JMR, 2011 WL 5563205, at *3 (S.D. Miss. Nov. 15, 2011) (dismissing

FHA punitive damages claim because "where a statute does not specifically address the recovery

of punitive damages, they are not ordinarily recoverable against a municipality," without

addressing the fact that the FHA does, in fact, provide for punitive damages).

The district courts that exempt municipalities from § 3613(c)(1) base their reasoning on

the Supreme Court's holding in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), but

those cases misstate the law. First, *Fact Concerts* involved municipal liability under 42 U.S.C.

§ 1983, not the FHA. *Id.* at 271. As discussed *supra*, the Supreme Court has held that the FHA

and § 1983 are interpreted differently, not least of all in that the FHA is subject to vicarious

liability while § 1983 prohibits it. *Cf. S. Middlesex Opportunity Council, Inc. v. Town of

Framingham*, No. Civ 07-12018-DPW, 2008 WL 4595369, at *20 (D. Mass. Sept. 30, 2008)

(allowing challenge to zoning decision to proceed under FHA, but not § 1983, because courts

exhibit "extreme reluctance to entertain equal protection challenges to local planning decisions"

in § 1983 context).

Second, *Fact Concerts*' reasoning is inapplicable to the FHA. In finding that

municipalities should not be subject to punitive damages for § 1983 claims, the Court relied

heavily on the statutory language, historical context, and public policy concerns implicated by

§ 1983 claims. The Court explained that "municipal immunity from punitive damages was well

established at common law by 1871," and that when Congress enacted § 1983, it did not add any

language providing for punitive damages. 453 U.S. at 263-64. In contrast, the FHA <u>does</u> provide

explicitly for punitive damages. *See* 42 U.S.C. § 3613(c)(1). Applying *Fact Concerts*' reasoning,

then, Congress's express incorporation of punitive damages language when it enacted

§ 3613(c)(1) in 1988—against the backdrop of *Fact Concerts*, which was decided seven years

earlier—should lead courts to conclude that it intended the provision to apply to all defendants,

municipal or otherwise. *See Rehab. Support Servs., Inc.,* 2015 WL 4067066, at *11 (*Fact

Concerts* does not apply to FHA because "punitive damages are specifically authorized under the

FHA"); *Dadian*, 1999 WL 299887, at *3 (denying Defendants' motion to strike Plaintiffs' claims

for punitive damages because "Defendants fail to consider the FHAA, which was passed in *1988,*

and which clearly states that 'a court may award to the plaintiff actual and punitive damages' in a

civil action under the FHAA") (emphasis in original).[7]

Third, even if this Court determines that *Fact Concerts* should be extended to FHA

claims, it would be error to dismiss punitive damages at summary judgment. *Fact Concerts* does

not stand for a blanket ban against municipal punitive damages; to the contrary, the Court

explained that punitive damages may be appropriate, even for a § 1983 claim, "where the

taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights."

---

[7] To the extent that *Fact Concerts* relies on policy arguments, they are specific to § 1983 and do not apply to the FHA. First, *Fact Concerts* explained that imposing punitive damages on municipalities for § 1983 violations are unlikely to deter future violations because the judgments would be paid for by innocent taxpayers, not the municipal actors who actually committed the violations. 453 U.S. at 267. In the FHA context generally—and on the instant facts—taxpayers' discriminatory wishes often directly lead to the adoption of discriminatory housing policies. *See Hispanics United*, 958 F. Supp. at 1332. Second, *Fact Concerts* noted that the primary purposes of § 1983 claims are to compensate and deter, not punish. 453 U.S. at 268. That is simply not the case for the FHA. *See, e.g.*, 42 U.S.C. § 3614(d)(1) (permitting civil penalties, even against municipal defendants); 42 U.S.C. § 3613(c)(1) (permitting punitive damages). Just as civil penalties are available against municipalities, so too should punitive damages be available. *Cf. Smith & Lee Assocs., Inc. v. City of Taylor, Mich.,* 102 F.3d 781, 797–98 (6th Cir. 1996) (explaining that civil penalties against municipalities in intentional discrimination cases are "especially appropriate").

*Fact Concerts*, 453 U.S. at 267 n.29; *see also Ciraolo v. City of New York*, 216 F.3d 236, 240 (2d Cir. 2000) (finding *Fact Concerts* to create an exception based on a finding of a "connection between the taxpayers' behavior and the unconstitutional municipal policy"). The taxpayer behavior exception is certainly relevant on the instant facts. *Cf. Hispanics United*, 958 F. Supp. at 1332 (in allowing punitive damages to go forward in FHA case, noting that "land use decisions are often the result of the discriminatory wishes of constituents," and holding that the "extent and nature of taxpayer participation in reprehensible municipal conduct" should guide a court's decision). Thus, whether *Fact Concerts* prohibits punitive damages is a fact-specific inquiry as to the level and scope of taxpayer participation. Where, as here, Plaintiffs have set forth a strong evidentiary record of taxpayer involvement, they are entitled to further develop the punitive damages record at trial.

## 2. The Evidentiary Record Supports Jury Assessment of Punitive Damages Against All Defendants.

Having established that punitive damages are available against Defendants under the FHA, Plaintiffs now turn to the evidentiary record. "To warrant a [punitive damages] instruction, all that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury." *Cameron,* 598 F.3d at 69; *see also Space Hunters*, 429 F. 3d at 427 (error for district court not to submit punitive damages to jury, as it "overlooked ample evidence that defendants acted with malice and reckless indifference to [Plaintiff's] federally protected rights.").

Here, genuine issues of material fact prevent a dismissal of punitive damages at summary judgment as to all Defendants. These disputes include: whether the Town and Individual Defendants' conduct rises to the level of malice or reckless indifference, and—if the Court finds that the *Fact Concerts* exception extends to cover the conduct here—whether the Town

12

residents' knowledge and participation in the discriminatory conduct qualifies the Town for punitive damages. *See, e.g.*, *United States v. Hylton*, 590 F. App'x 13, 19 (2d Cir. 2014) (punitive damages appropriate where Defendant "showed no remorse for his conduct," but rather "continued to make discriminatory comments"); *see also Hispanics United*, 958 F. Supp. at 1332 (declining to decide the issue of punitive damages at summary judgment stage and allowing plaintiff to "develop evidence of residents' knowledge and participation" in discriminatory conduct at issue at trial).

Plaintiffs have presented a record that is replete with evidence of reckless disregard by each Defendant. Specifically, Defendants received multiple warnings that their conduct against Gilead violated federal law, but proceeded anyway. *See, e.g.*, Exh. 4 (as early as 2014, group home provider advised Town that Town's treatment of the home likely violated ADA and FHA, which Mayor Faienza later acknowledged applied to his understanding of Gilead's group home); Dkt. No. 86 at ¶ 93 (Faienza and Salvatore received memo from Town Attorney warning that Town's actions against Gilead were legally suspect and may be seen as "shut[ting] out those in need of rehabilitation"); *id.* at ¶ 171 (Mayor acknowledging that Town took action against Gilead even though they knew they "were in uncharted waters," but "it was a fight this Town Council was ready to fight to [the] very end for[.]"). In addition, Plaintiffs have submitted substantial evidence of widespread taxpayer knowledge of, and participation in, the discriminatory conduct at issue. *See, e.g.*, Dkt. No. 77 at ¶ 49 (Mayor Faienza testified that he received more constituent calls and communication regarding the proposed group home at 5 Reiman than any other issue he had faced in his mayoral term); *see generally* Exh. 5 (Reiman Strong Facebook Page), at PL000352, 361-62 (describing some of the Town residents' tactics to attempt to shut down the group home, including efforts to gain Town officials' support, and indicating that the Town

"backs us 110%"); Ex. 6 (April 21, 2015 Town Press Release) (stating that Town's official opposition to Gilead's group home was "based on the concerns by those in attendance" and "on behalf of the citizens").

In sum, the evidentiary record indicates that Defendants proceeded with their campaign against Gilead despite multiple warnings that it violated the law, and that Town taxpayers instigated and participated in this campaign. Because a reasonable jury could conclude that the behavior of Defendants and Town taxpayers is sufficient to establish punitive damages under the FHA, Plaintiffs' punitive damages claims should proceed to trial.

\*       \*       \*

For all of these reasons, Plaintiffs respectfully request that the Court reinstate its original decision denying Defendants' summary judgment motion on all counts and order a jury trial on the scope of Defendants' liability under the FHA and corollary statutes, including awards of compensatory and punitive damages against all Defendants.

DATED:          November 1, 2019                    Respectfully Submitted,

    /s/ Yiyang Wu
Michael Allen, *Pro Hac Vice Granted 4/20/17*
Tara Ramchandani, *Pro Hac Vice Granted 8/25/17*
Yiyang Wu, *Pro Hac Vice Granted 4/20/17*
Andrea Lowe, *Pro Hac Vice Granted 4/30/18*
RELMAN, DANE & COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
mallen@relmanlaw.com
tramchandani@relmanlaw.com
yiyangwu@relmanlaw.com
alowe@relmanlaw.com

/s/ Greg Kirschner
Greg Kirschner (ct26888)
Connecticut Fair Housing Center, Inc.

221 Main Street, 4th Floor
Hartford, CT 06106
(860) 263-0724
gkirschner@ctfairhousing.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2019, a copy of the foregoing Plaintiffs' Supplemental Briefing Regarding Scope of Damages in Light of the Court's October 15, 2019 Order was filed and served electronically.  Notice of this filing will be sent  by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


/s/Yiyang Wu
Yiyang Wu

16