UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILEAD COMMUNITY SERVICES, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF CROMWELL, *et al.*,<br><br>Defendants. | Civil Action No. 3:17-cv-627 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................... ii

I.  **Principles of Vicarious Liability Make Clear that All Defendants are Liable Under the Fair Housing Act** ............................................................................... 1

    A.  **Mayor Faienza and Town Manager Salvatore Are Liable as Individual Defendants** ............................................................................................. 1

    B.  **A Municipality is Vicariously Liable for the Acts of its Agents** .................. 4

II. **The Parties Agree that the Punitive Damages Question Should be Submitted to a Jury as to All Defendants** ............................................................................ 5

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Anderson Grp., LLC v. Lenz,* 336 F. App'x 21 (2d Cir. 2009)..............................................4

*Andujar v. Hewitt*, No. 02 CIV. 2223 (SAS), 2002 WL 1792065
 (S.D.N.Y. Aug. 2, 2002) ...............................................................................................2

*Brooker v. Altoona Hous. Auth.,* No. 3:11-CV-95, 2013 WL 2896814
(W.D. Pa. June 12, 2013)...............................................................................................8

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) ..............................................................4

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ..................................3

*City of Newport v. Fact Concerts*, 453 U.S. 247 (1981)...........................................6, 7, 8, 9

*Dadian v. Vill. of Wilmette*, No. 98 C 3731, 1999 WL 299887
(N.D. Ill. May 4, 1999) ..............................................................................................7, 9

*Developmental Servs. of Neb. v. City of Lincoln*, 504 F. Supp. 2d 726 (D. Neb. 2007)......8

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60 (1992)...................................................9

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ..........................................................................3

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 958 F. Supp. 1320
(N.D. Ill. 1997)...............................................................................................................7

*Hope v. Pelzer,* 536 U.S. 730 (2002) ....................................................................................3

*Jennings v. Hous. Auth. of Baltimore City*, No. WDQ-13-2164, 2014 WL 346641
(D. Md. Jan. 29, 2014) ...................................................................................................8

*Johnson v. Ganim*, 342 F.3d 105 (2d Cir. 2003)..................................................................3

*Kennedy v. City of Zanesville, OH*, 505 F. Supp. 2d 456 (S.D. Ohio 2007)........................8

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995).................................................4

*Meyer v. Holley*, 537 U.S. 280 (2003) ...................................................................................4, 5, 9

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ..........................5

*N.J. Coal. of Rooming & Boarding House Owners v. Mayor & Council of City of Asbury Park*, 152 F.3d 217 (3d Cir. 1998) ...............................................................................8

*Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699 (D. Md. 2002) .............................................................................................................................3

*Patton v. Dumpson*, 498 F. Supp. 933 (S.D.N.Y. 1980)........................................................5

*People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725 (E.D. Va. 1992)....................5

*Reg'l Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002)....................................................................................................4

*Rehab. Support Servs., Inc. v. City of Albany, N.Y.*, No. 1:14-CV-0499 LEK/RFT, 2015 WL 4067066 (N.D.N.Y. July 2, 2015) ........................................................................6

*Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770 (NSR), 2019 WL 4738941 (S.D.N.Y. Sept. 27, 2019)....................................................................................................8

*S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. Civ 07-12018-DPW, 2008 WL 4595369 (D. Mass. Sept. 30, 2008)...........................9

*Tanvir v. Tanzin*, 894 F.3d 449 (2d Cir. 2018) ...................................................................9

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972)..................................................6, 9

*Tsombanidis v. City of W. Haven*, Conn., 129 F. Supp. 2d 136 (D. Conn. 2001) ...............9

*Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565 (2d Cir. 2003) ................................3

*United States v. Town of Colo. City*, 935 F.3d 804 (9th Cir. 2019)....................................5

*Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359 (D. Conn. 2011) ..........................5

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007)........................................................................3

**Statutes and Regulations** **Page(s)**

34 U.S.C. § 12601 .....5

42 U.S.C. § 1983 ..... *passim*

42 U.S.C. § 3613 .....6, 7, 9

Pub. L. 100–430, 102 Stat 1619 (1988) .....6

**Other Authorities**

H.R. Rep. 100-711 (1988).....6

Defendants' supplemental memorandum has clarified that they share Plaintiffs' position that (1) absent qualified immunity (which this Court previously denied), the Individual Defendants are liable under the Fair Housing Act (FHA) for their own discriminatory actions, and (2) the issue of punitive damages should be submitted to a jury as to all Defendants. Plaintiffs therefore respectfully request that this Court reinstate its original decision denying Defendants' summary judgment motion and allow this case to proceed to trial on all counts.

To the extent that Defendants suggest that another outcome is warranted, those arguments fail as a matter of law. First, Supreme Court and Second Circuit precedent makes clear that the principles of *respondeat superior* apply to all defendants, including municipalities. Second, Congress has expressly authorized that aggrieved parties can seek punitive damages under the FHA, and Defendants cannot identify any reason why this Court should depart from Congress's directive. Defendants' arguments to the contrary should be rejected by the Court.

**I.    Principles of Vicarious Liability Make Clear that All Defendants are Liable Under the Fair Housing Act.**

Plaintiffs' case against all Defendants should proceed to trial. Mayor Faienza and Town Manager Salvatore are liable under the FHA for their individual discriminatory conduct against Gilead, *see infra* Section I.A, and the Town is liable under the FHA for the discriminatory acts of its agents (including the Individual Defendants and other Town officials and employees) as well as its own discriminatory policies and customs, *see infra* Section I.B.

**A.    Mayor Faienza and Town Manager Salvatore Are Liable as Individual Defendants.**

In their supplemental brief, Defendants acknowledge (as they must) that under the case law, Mayor Faienza and Town Manager Salvatore "may be held liable individually under the Fair Housing Act for their own conduct." Defendants' Supplemental Memorandum (Dkt. No.

130) (hereinafter "Def. Br."), at 3; *see also* Plaintiffs' Supplemental Memorandum (Dkt. No. 131) (hereinafter "Pl. Br."), at 3-4 (citing law for same). It follows that, on the evidentiary record currently in front of this Court, neither Individual Defendant is entitled to summary judgment.

First, the Individual Defendants engaged in their own conduct that violated the FHA. An individual is liable under the FHA if he or she engaged in affirmative acts of discrimination, enforced a corporation's discriminatory rules or policies, or directed an agent to discriminate. *See Andujar v. Hewitt*, No. 02 CIV. 2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) (citing cases). Defendants have conceded that both Individual Defendants acted against Gilead by issuing public statements urging Gilead to close its group home and petitioning DPH for the same; this conduct, if performed with discriminatory motive or at the behest of another's discriminatory motive, violates the FHA. *See* Def. Br., at 6. And additional record evidence implicates the Individual Defendants far beyond those two acts—not least of all because the Individual Defendants took credit for causing the closure of the home. *See* Dkt. No. 86-109 (stating to a constituent that "it was a great team effort from [state legislators], Tony, myself and the Town Council . . . to keep fighting" and that "[t]his was a long battle but it was a fight this Town Council was ready to fight to the very end for"); Dkt. No. 86-105 (in official press release announcing closure, thanking Gilead for "listening to the concerns of Town officials and the residents of Reiman Drive").[1]

---

[1] Defendants mischaracterize the record by denying the Individual Defendants' involvement in the Town's tax exemption denials, its failure to investigate criminal harassment aimed at Gilead, and the cease and desist order, when in fact Salvatore and Faienza communicated with key decisionmakers about these actions prior to and during their implementation. *See* Def. Br., at 3-4; *but see* Dkt. No. 114 at ¶¶ 38-42, 45-49 (Salvatore involvement in tax exemption denials); *see also* Exh. 1 (Salvatore deposition testimony and accompanying exhibit regarding failure to investigate); Exh. 2 (email communication between Salvatore, Faienza, and Town Attorney Olson regarding cease and desist).

Second, the Individual Defendants are not entitled to qualified immunity. Nothing cited in Defendants' supplemental brief warrants additional consideration.

The Court's original decision correctly concluded that Defendants' actions violated clearly established law. Supreme Court and Second Circuit precedent establishes that the First Amendment does not protect statements by public employees in the scope of their official duties and that Town officials may not take action against group home providers on account of the animus of their constituents. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985); *see also Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 579-80 (2d Cir. 2003). Defendants once again insist that the law must be clearly established with respect to the "particular factual context in this case," Def. Br. at 6, but this approach is unduly narrow and is contrary to the Supreme Court's instruction in *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). *Cf. Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 714-15 (D. Md. 2002) (in group home context, rejecting defendants' argument that the law must be framed "in light of the specific context of the case" because it violated the *Hope v. Pelzer* standard).

Moreover, as even the cases cited by Defendants make clear, objective reasonableness cannot be established at the summary judgment stage because the roles of the Individual Defendants in the Town conduct at issue (and their motive for taking those actions) are clearly contested and can only be resolved at trial. *See Johnson v. Ganim*, 342 F.3d 105, 117 (2d Cir. 2003). *Walczyk v. Rio*, cited by Defendants, actually affirmed the lower court's denial of qualified immunity at summary judgment on this basis. *See* 496 F.3d 139, 163–64 (2d Cir. 2007) ("[f]urther record development and factfinding" at trial needed to determine, *inter alia*, which defendants had independent knowledge of material facts related to constitutional violation). For

3

these reasons, the Individual Defendants are liable for their own discriminatory conduct under the FHA.[2]

### B. A Municipality is Vicariously Liable for the Acts of its Agents.

Defendants next claim that the Town is entitled to summary judgment because "there may be no claims of vicarious liability against a municipality." Def. Br., at 7. Defendants provide no support for this argument, and it is, in any event, incorrect.

In *Meyer v. Holley*, the Supreme Court held that the FHA "imposes liability without fault"—in other words, vicarious liability—in accordance with "traditional agency principles, *i.e.,* it normally imposes vicarious liability upon the corporation[.]" 537 U.S. 280, 282 (2003). That the FHA contemplates claims based on vicarious liability is well-established. *See generally Cabrera v. Jakabovitz*, 24 F.3d 372, 385 (2d Cir. 1994). Indeed, the Second Circuit has applied *Meyer* to impute to municipal defendants the acts of municipal officials and employees. *See Reg'l Econ. Cmty. Action Program, Inc. (RECAP) v. City of Middletown*, 294 F.3d 35, 53-54 (2d Cir. 2002) (City and mayor liable for same acts); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 428 (2d Cir. 1995) (affirming jury verdict holding Village liable for officials' actions even though individual defendants were entitled to legislative immunity for same vote); *Anderson Grp., LLC v. Lenz*, 336 F. App'x 21, 23 (2d Cir. 2009) (affirming district court's denial of legislative immunity as to individually sued City Councilmembers and ordering trial for municipality and individual defendants).

---

[2] Defendants do not engage in any analysis regarding the Individual Defendants' exposure to compensatory damages, except to say that a finding of qualified immunity would shield them from any and all damages. *See* Def. Br. at 6-7. For the reasons set forth in Plaintiffs' original brief, Defendants will be jointly liable for Plaintiffs' compensatory damages. *See* Pl. Br., at 6-7.

Defendants nonetheless attempt to argue that principles of *respondeat superior* do not govern municipal actions because, when the Court in *Meyer* referred to the FHA's application of "traditional agency principles," it actually meant to carry over to the FHA the Supreme Court's holding in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). *See* Def. Br., at 7.

Not so. *Monell* is a case about § 1983, not the FHA, and certainly not "traditional agency principles." *See id.* Its holding that a municipality is only liable for its own customs and practices (and not under a vicarious liability theory) relies on its particularized assessment of § 1983's legislative intent and context and is therefore "confined to the peculiar characteristics of that statute." *Patton v. Dumpson*, 498 F. Supp. 933, 942 (S.D.N.Y. 1980). Moreover, contrary to Defendants' assertion, *Monell*'s holding is <u>not</u> the "traditional rule with respect to lawsuits brought against municipalities." *See* Def. Br. at 7. The opposite is in fact true: "the general rule regarding actions under civil rights statutes is that *respondeat superior* applies . . . . *Monell*'s holding remains the exception to the general rule." *United States v. Town of Colo. City*, 935 F.3d 804, 808–09 (9th Cir. 2019) (rejecting argument that *Monell* should apply to civil rights claims under 34 U.S.C. § 12601); *see also Valley Hous. LP v. City of Derby*, 802 F. Supp. 2d 359, 385 (D. Conn. 2011) (under FHA, Town is vicariously liable for acts of municipal employee); *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 733–34 (E.D. Va. 1992). Because all defendants, including municipalities, are subject to vicarious liability claims under the FHA, Defendants' argument fails as a matter of law.

## II. The Parties Agree that the Punitive Damages Question Should be Submitted to a Jury as to All Defendants.

Finally, both parties agree that the question of punitive damages should be submitted to a jury with regard to all Defendants. *See* Def. Br., at 7 ("It is the defendants' position that any

decisions regarding punitive damages should be addressed at the time of trial, after evidence has been completed, rather than at the motion for summary judgment stage.").

In any event, punitive damages are available against all Defendants, including the Town. This is true because the FHA's statutory language says as much. *See* 42 U.S.C. § 3613(c) (available remedies include "actual and punitive damages," as well as any other relief "as the court deems appropriate").[3] The FHA's purpose is "broad and inclusive," and the Supreme Court has admonished that its statutory language is subject to "generous construction." *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972).

Despite agreeing that the issue of punitive damages against the Town should be submitted to a jury, Defendants nonetheless claim that such damages are not available under *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). *See* Def. Br., at 8. But there, the Supreme Court based its holding that § 1983 did not provide for punitive damages against municipalities on the fact that the statute was silent on the matter. The Court stated, "[t]he general rule today is that no punitive damages are allowed <u>unless expressly authorized by statute</u>." *Id.* at 260 n. 21 (emphasis added); *see also id.* at 263 ("Given that municipal immunity from punitive damages was well established at common law by 1871, we proceed on the familiar assumption that Congress would have specifically so provided had it wished to abolish the doctrine.") (citation omitted). It is entirely consistent with *Fact Concerts'* directive that, when Congress passed § 3613(c) seven years later, it "expressly authorized" the availability of punitive damages. *See, e.g., Rehab. Support Servs., Inc. v. City of Albany, N.Y.*, No. 1:14-CV-0499 LEK/RFT, 2015 WL

---

[3] Section 3613(c) was passed as part of the 1988 Amendments to the FHA, Pub. L. No. 100-43, 102 Stat 1619 (1988), the purpose of which was to strengthen the FHA's "enforcement mechanism" and to remove "disincentives in the law itself." H.R. Rep. 100-711, at 16 (1988). "The bill strengthens the [FHA's] private enforcement section by . . . removing the limitation on punitive damages." *Id.*, at 17.

6

4067066, at *11 (N.D.N.Y. July 2, 2015) (holding that FHA allows punitive damages against municipalities); *Dadian v. Vill. of Wilmette*, No. 98 C 3731, 1999 WL 299887, at *3 (N.D. Ill. May 4, 1999) (same).

Defendants do not even attempt to confront this. Instead, they offer three arguments why the Court should extend *Fact Concerts* to apply to the FHA, all of which are unpersuasive.

First, Defendants assert that the "reasoning" of *Fact Concerts* "seems largely hinged" on policy concerns that allegedly apply to the FHA—namely that it seems unfair to assess punitive damages only to have them paid for by taxpayers. *See* Def. Br., at 8; *see also Fact Concerts*, 453 U.S. at 267 ("Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers."). As an initial matter, Defendants fail to explain why these policy concerns override § 3613(c)'s text and Congress's intent in passing the statute (plainly, it does not). Moreover, this argument ignores *Fact Concerts*' explicit recognition that such policy concerns are not at play in cases involving *complicit* taxpayers, where there is evidence of the taxpayers' role in the illegal activity. *See id.* at 267 n. 29 (suggesting, without deciding, that punitive damages may be available in such a situation for cases brought under § 1983). In *Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, the district court declined to dismiss punitive damages at summary judgment, noting that the plaintiff could establish trial evidence that "a significant part of the defendant's motivation was to cater to the vocal concerns of bigoted Village residents," and that such a finding would neutralize the policy concerns expressed in *Fact Concerts*. 958 F. Supp. 1320, 1332 (N.D. Ill. 1997). Where, as here, the record is replete with evidence of taxpayer animus, the issue of punitive damages is inappropriate for summary judgment.

7

Second, Defendants point to a string of district court decisions (and one appellate court *dictum*) that are inapposite or otherwise unpersuasive. Most of those cases cite summarily to *Fact Concerts* without acknowledging the crucial differences that (1) *Fact Concerts* was grounded in § 1983, not the FHA, and (2) the FHA provides for punitive damages but § 1983 does not. *See N.J. Coal. of Rooming & Boarding House Owners v. Mayor & Council of City of Asbury Park*, 152 F.3d 217, 225 (3d Cir. 1998) (in *dictum*, stating that it is not clear whether punitive damages can be awarded while also acknowledging taxpayer conduct exception); *see also Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770 (NSR), 2019 WL 4738941, at *8 (S.D.N.Y. Sept. 27, 2019) (because claims under § 1983, FHA, and punitive damages under those statutes, were "fully abandoned," dismissing punitive damages without distinguishing between § 1983 and FHA); *Kennedy v. City of Zanesville, OH*, 505 F. Supp. 2d 456, 499 (S.D. Ohio 2007) (same); *Developmental Servs. of Neb. v. City of Lincoln*, 504 F. Supp. 2d 726, 737 n. 20 (D. Neb. 2007) (noting in passing that punitive damages were not available under that case's facts).

The district courts' decisions in *Jennings* and *Brooker* are also unpersuasive because they required Congress to have "explicitly authorize[d] punitive damage awards <u>against local governments</u>." *Jennings v. Hous. Auth. of Baltimore City*, No. WDQ-13-2164, 2014 WL 346641, at *9 (D. Md. Jan. 29, 2014) (emphasis added); *see also Brooker v. Altoona Hous. Auth.,* No. 3:11-CV-95, 2013 WL 2896814, at *27 (W.D. Pa. June 12, 2013). Those courts held that Congress should have affirmatively enumerated the classes of defendants against whom punitive damages are available—in other words, in order to escape the *Fact Concerts* fate, Congress needed to have to enacted language that is something to the effect of "the court may award . . . actual and punitive damages (including against municipalities)." There is no support for this

8

narrow interpretation. To the contrary, in *Franklin v. Gwinnett Cnty. Pub. Sch.*, the Supreme Court noted the longstanding presumption that "[w]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use <u>any available remedy</u> to make good the wrong done." 503 U.S. 60, 66 (1992) (emphasis added).[4] The strained interpretation of *Fact Concerts* is particularly inappropriate in the FHA context, given that its statutory text "focuses on prohibited acts," not actors, and given the Court's instruction to afford the text "generous construction." *Meyer*, 537 U.S. at 285; *Trafficante*, 409 U.S. at 212.

Finally, Defendants claim—without citing any authority—that "it would run contrary to common sense" to allow for punitive damages under the FHA but not under § 1983. Def. Br., at 9. As previously discussed, there are numerous ways that the case law has differentiated between § 1983 claims and the FHA. *See, e.g.*, *Meyer*, 537 U.S. at 282 (vicarious liability available under FHA but not § 1983); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. Civ 07-12018-DPW, 2008 WL 4595369, at *20 (D. Mass. Sept. 30, 2008) (allowing challenge to zoning decision to proceed under FHA but not § 1983); *Tsombanidis v. City of W. Haven*, Conn., 129 F. Supp. 2d 136, 159 (D. Conn. 2001) (granting summary judgment to defendant Town on § 1983 claim but not FHA). And it is not uncommon for a plaintiff to assert two federal causes of action on the same set of facts, yet be entitled to punitive damages under one claim but not the other.

---

[4] Courts have applied *Franklin* to find that statutory causes of action give rise to remedies including punitive damages. *See, e.g., Dadian*, 1999 WL 299887, at *3 (citing cases). The Second Circuit has noted that *Franklin* is especially helpful where, as here, "Congress has . . . explicitly authorized courts to provide 'any appropriate relief,' without limitation."). *Tanvir v. Tanzin*, 894 F.3d 449, 467 (2d Cir. 2018) (applying *Franklin* presumption to find that monetary damages were available under the First Amendment and Religious Freedom Restoration Act). Because § 3613(c) enables courts to grant any other order "as the court deems appropriate," *Franklin* is on point, and the Court should find that the FHA allows for "all appropriate remedies," including punitive damages. *Franklin*, 503 U.S. at 65-66.

For all these reasons, punitive damages are available against the Town, and the issues of compensatory and punitive damages should be submitted to the jury as to all Defendants.

DATED: November 8, 2019 Respectfully Submitted,

/s/ Yiyang Wu
Michael Allen, *Pro Hac Vice Granted 4/20/17*
Tara Ramchandani, *Pro Hac Vice Granted 8/25/17*
Yiyang Wu, *Pro Hac Vice Granted 4/20/17*
Andrea Lowe, *Pro Hac Vice Granted 4/30/18*
RELMAN, DANE & COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
mallen@relmanlaw.com
tramchandani@relmanlaw.com
yiyangwu@relmanlaw.com
alowe@relmanlaw.com

/s/ Greg Kirschner
Greg Kirschner (ct26888)
Connecticut Fair Housing Center, Inc.
221 Main Street, 4th Floor
Hartford, CT 06106
(860) 263-0724
gkirschner@ctfairhousing.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 8th day of November, 2019, a copy of the foregoing Plaintiffs' Response In Opposition to Defendants' Supplemental Memorandum in Support of Motion for Summary Judgment was filed and served electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

            /s/Yiyang Wu
            Yiyang Wu