## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GILEAD COMMUNITY SERVICES, INC., *et al.*,

        Plaintiffs,

        v.

TOWN OF CROMWELL, *et al.*,

        Defendants.

Civil Action No. 3:17-cv-627

July 30, 2021

## PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE INTRODUCTION OF INADMISSIBLE AND PREJUDICIAL DOCUMENTS

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ........................................................................................ iii

   **I.**    **APRIL 30, 2015 LETTER** ....................................................................... 1

   **II.**   **JULY 20, 2015 EMAIL FROM REP. CARPINO TO DOREEN DELBIANCO** .. 4

**CONCLUSION** ......................................................................................................... 5

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                     <u>Pages</u>

*City of New York v. Pullman Inc.*, 662 F.2d 910 (2d Cir. 1981) ..................................... 5

*Dindinger v. Allsteel, Inc.*, 853 F.3d 414 (8th Cir. 2017) ........................................... 1, 3

*Hester v. BIC Corp.*, 225 F.3d 178 (2d Cir. 2000) ................................................... 4, 5

*Hodges v. Keane*, 886 F. Supp. 352 (S.D.N.Y. 1995) .................................................. 3

*United States v. Torniero,* 735 F.2d 725 (2d Cir. 1984) ............................................... 3

<u>Other Authorities</u>                                                                           <u>Pages</u>

Fed. R. Evid. 401 ................................................................................................. 1

Fed. R. Evid. 402 ................................................................................................. 1

Fed. R. Evid. 403 ................................................................................................. 1

Fed. R. Evid. 701 ................................................................................................. 1

Fed. R. Evid. 801 ............................................................................................. 1, 2

Plaintiffs respectfully move for an order to prevent Defendant from introducing a letter

and emails sent by certain elected state officials to or concerning Gilead Community Services

that contain hearsay, have minimal or no probative value, would prejudicially inflame, mislead

or confuse the jury and contain impermissible lay opinion. Fed. R. Evid. 401, 402, 403, 701, 801.

The letters and emails, sent on official government stationary, contain inflammatory statements

and inadmissible hearsay from unidentified witnesses and should be excluded. Moreover, to the

extent the Defendant proposes to utilize any exception to hearsay, sufficient alternative means of

proof are available: both the senders and recipients of the letters and emails are on Defendant's

trial witness list. *See* Fed. R. Evid. 403; *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 426-28 (8th

Cir. 2017).

### I.  April 30, 2015 Letter

Defendant has included on its exhibit list[1] a letter from State Representative Christie

Carpino and then-State Senator Paul Doyle to Dan Osborne dated April 30, 2015. In 2015, Rep.

Carpino and Sen. Doyle were the elected representatives for Cromwell in the Connecticut

General Assembly. They were elected state officials and not associated with the Town of

Cromwell. Neither is a party to this action. They sent the April 30 letter shortly after Gilead

participated in a public forum to respond to community opposition to their plans to house

individuals with disabilities at 5 Reiman Drive. Attendees at the public forum expressed hostility

to Gilead, its plans, and the intended residents of 5 Reiman Drive.

The letter is on official letterhead for the Connecticut General Assembly. The letter cites

reports that Rep. Carpino and Sen. Doyle received from unidentified constituents challenging

---

[1] The letter appears on Defendant's exhibit list three times at exhibit numbers 516, 565, and 674.
A copy is attached hereto as Exhibit 1.

Gilead's presentation at the public forum about police activity at other group homes. The letter specifically references unsubstantiated claims that Gilead had concealed a prior police response to an incident of a resident of an unidentified group home threatening a Gilead employee with a knife. The letter accuses Gilead as being misleading at the public forum "if these allegations are true." No evidence to support these unfounded allegations has been produced in this case. The letter further opines that the authors believe Gilead needs "enhanced procedures" for screening its residents. Finally, although it cites no claims that any alleged incidents involved neighbors of Gilead's group homes, the letter demands to know what "comfort and security can [Gilead] provide Cromwell residents from such future incidents?"

The letter expressly acknowledges that it relies on hearsay – it is based entirely on statements to Representative Carpino or Senator Doyle by unidentified constituents and without supporting documents. Defendant did not identify any of these constituents in its 26(a)(1) disclosure or trial witness list. Representative Carpino was not able to provide any information about the background of the letter during her deposition, including the identities of the constituents or even who wrote the letter. Ex. 2 (Carpino Dep. Tr., pp. 82:18 – 85:9). No exceptions to hearsay apply and Defendant should not be permitted to introduce the document on that basis. Fed. R. Evid. 801.

The letter also lacks any probative value. Neither of the authors are Town officials or had any control over the Town's actions. They disclaim any personal knowledge as to claims they make in the letter. To the extent it does have any probative value it is far outweighed by the potential prejudice that that would result from introducing this document because it is both inflammatory and likely to confuse the jury. The letter is likely to lead to confusion because a jury is likely to confuse a letter on General Assembly letterhead signed by two elected officials

as having the weight of an official governmental finding despite the fact this letter is entirely speculative and based on hearsay. In *Dindinger*, an Equal Pay Act case, the Eighth Circuit held that the district court properly excluded Department of Labor ("DOL") audit findings as unfairly prejudicial "because it would suggest to the jury that an official fact-finding body had already decided whether [defendant] had violated the Equal Pay Act" which "would create the risk that the jury would rely on the [DOL] results instead of its own judgment in determining whether the plaintiffs had proven their claims." *Dindinger*, 853 F.3d at 427.  Admitting the letter here would similarly create the risk that the jury would treat the author's opinions as a finding that Gilead had made misrepresentations about its program or was neglecting the safety of fellow neighbors.

The letter is also prejudicial because it would cause an emotional response in jurors based on stereotypes about people with disabilities. The letter references uncorroborated alleged incidents of violence involving individuals with mental health diagnoses who have nothing to do with the at the time not-yet-opened 5 Reiman house. *Hodges v. Keane*, 886 F. Supp. 352, 355 (S.D.N.Y. 1995) ("Courts in this circuit have excluded evidence of past mental illness as not helpful to the factfinder when the illness is remote . . . from . . . the events forming the basis of the case."). The letter also suggests that the people with disabilities who would live at 5 Reiman drive would represent a "security" issue for the community. Such statements are likely to evoke an emotional response in jurors because of societal stereotypes about people with mental health disabilities. *See United States v. Torniero,* 735 F.2d 725, 726 (2d Cir. 1984) (noting that "[a]ny issue involving insanity evokes extraordinary interest and, indeed, passion."). That these notions are communicated by elected officials on governmental letterhead only makes it more likely to lead to such a response.

Lastly, the authors of the letter have no basis for their opinions that Gilead required

"enhanced procedures" for its residents, that Gilead's clients may present a "safety risk to the community or first responders" or that Gilead had inadequate "evaluation protocols." Neither of the authors has been disclosed as an expert and there is nothing to indicate that they in fact have any expertise in mental health assessment or the operation of group homes. And while "[t]he rules of evidence allow a lay witness to testify in the form of an opinion" these circumstances are "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determinations of a fact in issue. Fed. R. Evid. 701." *Hester v. BIC Corp.*, 225 F.3d 178, 181 (2d Cir. 2000) (internal quotations omitted). Here, there is no indication that this opinion is based on any personal observation or experience – to the contrary it is expressly based on hearsay. Nor does the opinion bear on any of the facts at issue in the case. Accordingly, the assessment about Gilead's screening process for 5 Reiman expressed in the letter is impermissible lay opinion that has no probative value and would confuse the jury and must be excluded. *Id.* at 184 (reversing district court's decision to admit lay opinion where witnesses lacked personal knowledge and "instead consisted of the witnesses' subjective impressions").

## II.   July 20, 2015 Email from Rep. Carpino to Doreen DelBianco

In a July 20, 2015 email to the Department of Mental Health and Addiction Services (Defendant's Exhibit 526 attached hereto as Exhibit 3), Rep. Carpino refers to a then-resident of 5 Reiman as "a patient," which would confuse and mislead the jury as to the status of residents of the property. The email correspondence that follows similarly may confuse and mislead the jury as it refers to a "report" on the Gilead residence that is purported to outline steps that will be taken to make sure the "neighbors are protected." This language mischaracterizes the nature of the DMHAS review, implies neighbors were put in danger, and may mislead the jury as to the

role of elected officials in the review process. There in fact was never any report produced by DMHAS and any interim discussions should be excluded. *See City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (upholding exclusion of draft report where "a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in 'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability.").

Further, the email's assertions about a resident of 5 Reiman being "unattended" is a misunderstanding and misrepresentation of the Gilead program and similarly likely to mislead and prejudice the jury. Rep. Carpino lacks expertise for the opinions of the elopement set forth in the email. None of what she opines on is within her experience or direct observation. Her statements are just impermissible lay opinion. *See Hester*, 225 F.3d 178.

The mischaracterization of the DMHAS review and the expression of Rep. Carpino's lay opinion are compounded by the likelihood that her status as an elected official would likely confuse the jury about her qualifications to render such opinions. Referring to the resident as a "patient" who was "unattended" relies on stereotypes that all persons with disabilities require constant care and attention and suggests that they are dangerous to others if not supervised. The email also implies that group homes inherently present a risk to neighbors, requiring planning to protect them. These groundless assertions would improperly influence the jury to act on emotion.

## CONCLUSION

Both the letter and email are inadmissible. To the extent any exceptions apply, sufficient alternative means exist to offer evidence.

DATED:        July 30, 2021                          Respectfully Submitted,

/s/ Greg Kirschner
Greg Kirschner (ct26888)
Connecticut Fair Housing Center, Inc.

60 Popieluszko Court
Hartford, CT 06106
(860) 263-0724
gkirschner@ctfairhousing.org

/s/ Andrea Lowe
Andrea Lowe, *Pro Hac Vice Granted 4/30/18*
Michael Allen, *Pro Hac Vice Granted 4/20/17*
Tara Ramchandani, *Pro Hac Vice Granted 8/25/17*
Yiyang Wu, *Pro Hac Vice Granted 4/20/17*
RELMAN COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
alowe@relmanlaw.com
mallen@relmanlaw.com
tramchandani@relmanlaw.com
ywu@relmanlaw.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 30th day of July, 2021, a copy of the foregoing was filed and served electronically.  Notice of this filing will be sent  by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


/s/ Andrea Lowe
Andrea Lowe