# ATTACHMENT E

# Defendants' Proposed Jury Charges and Plaintiffs' Objections

## DEFENDANT'S PRELIMINARY REQUESTS TO CHARGE AND PLAINTIFFS' OBJECTIONS AND RESPONSES

1. Under section 3604(c) of the Fair Housing Act it is unlawful to make print or publish, or caused to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on handicap or disability, or an intention to make any such preference, limitation, or discrimination. 42 U.S.C.. 3604 (c)

*No objection.*

2. The Fair Housing Act applies on its face to anyone who makes prohibited statements. **United States v. Space Hunters** 429F. 3D416, 424 (2dCIR. 2005)

*No objection.*

3. In determining whether section 3604© has been violated, an "ordinary listener test" is applied. Under the standard, section 3604 (c) can be violated by statements targeted at an individual that convey to an ordinary listener that the individual is disabled**. Rodriguez v. Village Green Realty, Inc**. 788F. 3D 31, 52 (2d CIR. 2015)

*Plaintiffs object to the extent that this charge only refers to one standard for establishing a violation of § 3604(c) when the Second Circuit has stated that there are two paths: (1) the author of the statement intended to express a preference, limitation, or discrimination based on disability; or (2) the statement itself indicates a preference, limitation, or discrimination based on disability, regardless of the speaker's motive, which is judged under the ordinary listener standard. Soules v. U.S. Dep't of Hous. & Urb. Dev., 967 F.2d 817, 824 (2d Cir. 1992). Plaintiffs also object to the extent that this charge suggests that a violation of § 3604(c) only occurs if a statement is "targeted at an individual." Rodriguez states the opposite: "a statement implicating subsection 3604(c) need not be targeted at a single, identifiable individual at all." Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 53 (2d Cir. 2015).*

4. The ordinary listener standard requires a fact intensive, case by case inquiry. Factfinders may examine the speaker's intent, not because a lack of design constitutes an affirmative defense to an FHA violation, but because it helps determine the manner in which a statement was made and the way an ordinary listener would have interpreted it. **Rodriguez,** supra, at page 53

*Plaintiffs object to the extent that this charge conflates two separate avenues for establishing a violation of § 3604(c). See Soules v. U.S. Dep't of Hous. & Urb.*

*Dev., 967 F.2d 817, 824 (2d Cir. 1992). Plaintiffs further object that the only case cited, Rodriguez, does not support this proposed jury charge.*

5. What matters is whether the challenged statements convey a prohibited preference or discrimination to the ordinary listener**. Rodriguez** at page 53. Statements that indicate a preference that is unrelated to a person's disability, do not violate the Fair Housing Act. A statement indicating a preference must be a preference based on a person's disability or handicap to be a prohibited preference. Id.  Accordingly, if you find that a statement made by a Town of Cromwell official indicated a preference, but that preference was not based on any person's disability or handicap, then such a statement would not be prohibited by the Fair Housing Act. **Id.**

*Plaintiffs object. Under Second Circuit law, the proper standard is whether the statement in question conveys to the ordinary listener that a person with disabilities is dispreferred (or preferred) for the housing in question. See Ragin v. New York Times Co., 923 F.2d 995, 999 (2d Cir. 1991). Defendant's proposed charge is confusing and misleading in its reference to statements that indicate a preference "that is <u>un</u>related to a person's disability." There is no need to present the flip side of the statutory language, especially where it is likely to confuse the jury. A preference not to have a home supported by Department of Mental Health and Addiction Services, for example, would clearly violate § 3604(c) and the standard set forth in Ragin, but may be perceived by a juror as "unrelated to a person's disability or handicap."*

*The only case cited by Defendant, Rodriguez, does not support Defendant's language about statements that are unrelated to a person's disability. To the contrary, Rodriguez says, "a statement implicating subsection 3604(c) need not be targeted at a single, identifiable individual at all." Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 53 (2d Cir. 2015).*

6. Speech on a matter of public concern is protected by the First Amendment and will not constitute a prohibited statement under the Fair Housing Act. If you find that one or more statements by any of the Town of Cromwell officials, that is non-employees of the Town of Cromwell, were made concerning an issue of public concern then you should not consider any such statement to be a prohibited statement under the Fair Housing Act. **Garcetti v. Ceballos** 547 U.S. 410 (2006**)   Lane v. Franks** 134 S.Ct. 2369 (2014); United States Constitution, First Amendment

*Plaintiffs object. This proposed charge misstates the law because the First Amendment only protects Town officials' speech (regardless of whether it is a matter of public concern) if the speech is undertaken by defendants as private citizens. Garcetti v. Ceballos, 547 U.S. 410, 421(2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution*

*does not insulate their communications from employer discipline."); Lane v. Franks, 573 U.S. 228, 238 (2014) (employee testifying outside the scope of his ordinary job duties is private citizen). In other words, Defendant's proposed charge focuses erroneously on whether the statements in question implicate a matter of public concern, but ignores the more fundamental question of whether the statement was made pursuant to official duties or as a private citizen.*

*Plaintiffs further object that this instruction does not elucidate what it means to be a statement made pursuant to official duties or whether it was a statement made as a private citizen. Assuming for the sake of argument that there is a reasonable dispute on whether statements were made officially or privately—which Plaintiffs do not believe there to be, as Mayor Faienza admitted in his deposition that he was speaking as a Town official—then a jury instruction should be cabined to that factual dispute, not this overbroad, incorrect recitation of the First Amendment.*

7. If you find that the statements made by any statement made by any employee of the Town of Cromwell was made as a citizen, and not as the Town of Cromwell employee, then you should consider whether such a statement was made regarding an issue of public concern.  If both are found, then any such statement would not be prohibited statement under the Fair Housing Act **Garcetti v. Ceballos** 547 U.S. 410 (2006**) Lane v. Franks** 134 S.Ct. 2369 (2014); United States Constitution, First Amendment

*Plaintiffs object. Defendant's proposed charges are misleading in their differentiation between public officials (No. 6) and public employees (No. 7), while glossing over the actual issue of whether the statement was made pursuant to official duties or as a private citizen. If the statements were made pursuant to official duties, then there is no First Amendment protection. Only if the statements were made as private citizens does the public concern factor even come into play.*

*Plaintiffs further object that this instruction does not elucidate what it means to be a statement made pursuant to official duties or whether it was a statement made as a private citizen. Assuming for the sake of argument that there is a reasonable dispute on whether statements were made officially or privately—which Plaintiffs do not believe there to be, as Faienza admitted in his deposition that he was speaking as a Town official—then a jury instruction should be cabined to that factual dispute, not this overbroad, incorrect recitation of the First Amendment.*

8.  The First Amendment protects the right to petition the government for redress of grievances. The petition filed by the Town of Cromwell to the CT Department of Public Health for denial of Gilead's license to operate was such a petition for redress. As such it is protected conduct by the First Amendment and cannot be found by you to be prohibited conduct under the Fair Housing Act, unless you find that the filing of the petition was made in bad faith, that is, it was

groundless,. **LeBlancSternberg v. Fletcher**, 781 F. Supp. 261, 266 (S.D.N.Y. 1991) (citing **City of Columbia v. Omni Outdoor Advert**., Inc., supra, 499 U.S. 379).

*Plaintiffs object. The right to petition the government for redress of grievances is not protected by the First Amendment if it was done in order to achieve discriminatory goals. The case cited by Defendant says as much. LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261, 266–67 (S.D.N.Y. 1991) ("[W]e are not prepared to conclude that defendants' conduct is protected by the first amendment. . . . To allow individuals to avail themselves of first amendment protections when it is alleged that their conduct will lead to official misconduct in violation of the United States Constitution would defeat the purpose of the civil rights laws."). No jury instruction is therefore necessary for the First Amendment right to petition. If Plaintiffs prove that Defendant's actions violate the anti-discrimination laws, then it follows that they are not protected by the First Amendment.*

*Moreover, the cited decision does not support Defendant's use of the terms "bad faith" or "groundless." To the contrary, it states, "[I]f access to a governmental forum is undertaken <u>in order to harass others or to obstruct others' ability to seek relief</u>, the petitioner cannot use its right to petition as a shield against the consequences of its actions." LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261, 266 (S.D.N.Y. 1991) (emphasis added).*

*This jury instruction is also confusing and misleading. It exclusively focuses on the DPH petition as the sole action that could lead to a violation of the Fair Housing Act, when it is actually just one of many Town acts challenged by Plaintiffs.*

*Finally, there is no need to have two separate instructions on whether Defendant's DPH petition is subject to First Amendment protection.*

9.  OMITTED

10.  The above instructions have identified what constitutes prohibited statements or conduct under the Fair Housing Act and what statements or conduct does not. If you find that any statement or conduct made by the Town of Cromwell constitutes prohibited conduct under the Fair Housing Act you then should consider whether or not such behavior of conduct actually caused Gilead's claimed injuries and losses. **Comcast Corp v. National Association of African American-owned Media, et al**. No. 18-1171, (SCOTUS March 23, 2020).  In this case Gilead claims they suffered injury and losses that included the closing of their home at five Reiman Drive and need to sell the property. The Town of Cromwell asserts, on the other hand, that Gilead's closing  the home and selling  the property was caused by Gilead's own mismanagement of the operation of subject home and other of its homes, and the pending investigation

into Gilead's 11 other businesses by the CT Dept. of Mental Health and Addiction Services.   If you find that Gilead would have taken the same action to close its home at 5 Reiman Drive, and sell the property, regardless of whether the prohibited statements or conduct occurred, then your verdict should be for the defendant Town of Cromwell.  **Comcast Corp v. National Association of African American-owned Media, et al, supra.**

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's discriminatory statements caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's discriminatory statements caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981 and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

11. Under 42 USC 3604 (f) it is unlawful to discriminate in the sale or rental or two otherwise make unavailable or deny a dwelling because of handicap of a person residing in or intending to reside in that dwelling

*No objection.*

12. The "otherwise make unavailable or deny" provision has been construed to reach every practice which has the effect of making Housing more difficult to obtain on prohibited grounds **Thurmond v. Bowman, , 211F. Supp. 3d 554, 564 (W.D.N.Y.  2016)**

*Plaintiffs object to the extent that this jury instruction suggests that the "making housing unavailable" inquiry turns on whether Gilead was able to obtain housing in the first instance. In fact, § 3604(f)(1) makes it illegal to discriminate against*

*any buyer or renter because of a handicap of (a) that buyer or renter, (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or (c) any person associated with that buyer and renter. 42 U.S.C. § 3604(f)(1)(a)-(c). If, at any point, the Town's actions made housing more difficult to obtain for Gilead's clients, then that is sufficient to establish a violation of § 3604(f)(1).*

13. Plaintiff has the burden of proving not only that the Town of Cromwell made Housing more difficult to obtain by Gilead, but also must prove that the Town did so based on prohibited grounds, that is, because the residents were disabled. **Thurmond, Supra**.

*Plaintiffs object. It is well-established that disability need only be a motivating factor behind Defendant's conduct. Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 616 (2d Cir. 2016); Cabrera v. Jakabovitz, 24 F.3d 372, 383 (2d Cir. 1994); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997). This proposed charge does not make that clear.*

14. If you find that the plaintiff has proven the Town of Cromwell made Housing more difficult to obtain by Gilead, and did so based on prohibited grounds, that is, because the residents were disabled, then you must consider whether plaintiff has proved that that such prohibited conduct by the Town of Cromwell actually caused Gilead to suffer the damages and loss as it claims. In this case Gilead claims they suffered the closing of their home at five Reiman Drive and the need to sell the property. If you find that Gilead would've taken the same Action with respect to closing its home and selling the property regardless of whether the town of Cromwell's prohibited conduct, then plaintiff has not provedIt's case and your verdict should be for the defendant . **Comcast Corp v. National Association of African American-owned Media, et a**l. No. 18-1171, (SCOTUS March 23, 2020).  In this case Gilead claims they suffered injury and losses that included the closing of their home at five Reiman Drive and need to sell the property. The Town of Cromwell asserts, on the other hand, that Gilead's closing the home and selling  the property was caused by Gilead's own mismanagement of the operation of subject home and other of its homes, and the pending investigation into Gilead's 11 other businesses by the CT Dept. of Mental Health and Addiction Services.   If you find that Gilead would have taken the same action to close its home at 5 Reiman Drive, and sell the property, regardless of whether the prohibited statements or conduct occurred, then your verdict should be for the defendant Town of Cromwell.  **Comcast Corp v. National Association of African American-owned Media, et al, Supra.**

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's prohibited conduct*

*caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's prohibited conduct caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

15. The Defendant has plead an affirmative defense known as the Noerr Pennington doctrine. Under the <u>Noerr-Pennington</u> doctrine, efforts to influence governmental activity cannot be the basis of legal penalties, unless the proposal to the governmental body is a sham, that is, it has no chance for success. The <u>Noerr-Pennington</u> doctrine applies to claims under the Fair Housing Act such as the claims made in this suit against the Town of Cromwell; furthermore the <u>Noerr-Pennington</u> doctrine applies to municipalities; a municipality has a right to speak and petition for redress of grievances, so the <u>Noerr-Pennington</u> doctrine applies fully to municipal activities. Accordingly, if you find that the Town of Cromwell has proved that its Petition to the Connecticut Department of Health was not a sham that had no chance for success, then the Towns has proved its affirmative defense and its filing of the Petition to the Connecticut Department of Public Health cannot be a basis for violation of the Fair Housing Act. **New W., L.P. v. City of Joliet**, supra, 491 F.3d 722 (citing **Columbia v. Omni Outdoor Advertising, Inc**., 499 U.S. 365 (1991); **Affordable Housing Development Corp. v. Fresno**, 433 F.3d 1182, 1193 (9th Cir.2006); **White v. Lee**, 227 F.3d 1214, 1231–33 (9th Cir.2000); **Manistee Town Center v. Glendale**, 227 F.3d 1090, 1093–94 (9th Cir. 2000)

*Plaintiffs object. First, Defendant has not cited any binding precedent to establish that Noerr-Pennington applies to claims under the Fair Housing Act and Americans with Disabilities Act, nor can it, as there is no Second Circuit decision on point. The only case cited by Defendant that supports this proposition is Tri-Corp. v. Bauman, but that case is inapposite insofar*

*as it involved a defendant who issued statements and lobbied for certain rulings in administrative proceedings, but who himself had no power to affect the plaintiff's housing. Moreover, the DPH petition is only one of many Town acts challenged by the Plaintiffs, any one of which could serve as the basis for a violation of the FHA, and evidence of the DPH petition would be introduced regardless as overall intent and motive evidence. See Gilead Cmty. Servs., Inc. v. Town of Cromwell, 432 F. Supp. 3d 46, 75 (D. Conn. 2019).*

*Second, Defendant's definition of what constitutes a "sham" is incorrect. Bauman does not define "sham" to be having "no chance for success," but rather uses that language as one example. In fact, the Second Circuit has made clear that the "sham" exception captures all activities that are objectively baseless and seek to cause harm through the use of governmental process. See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993); Pathways, Inc. v. Dunne, 172 F. Supp. 2d 357, 365 (D. Conn. 2001). Put another way, "[m]unicipal officials may not pursue even potentially meritorious claims if they do so in a discriminatory fashion." Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills, 701 F. Supp. 2d 568, 603 (S.D.N.Y. 2010).*

*Finally, there is no need to have two separate instructions on whether Defendant's petition is subject to First Amendment protection.*

16. The Fair Housing Act also provides, under provision 42 U.S.C. 3617 that it shall be unlawful to coerce intimidate threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercise or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act. To make a prima facie case under section 3617 plaintiffs must show (1) that they were engaged in a protected activity; (2) that defendants were aware of the Activity; (3) that defendants took adverse Action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. **Joseph's House and Shelter, Inc. v.  City of Troy**, 641F. Supp. 2d 154, 158 (NDNY2009).

*Plaintiffs object to the extent that this proposed charge conflates two independent causes of action that Plaintiffs have pled under § 3617: an interference claim and a retaliation claim.*

17. If plaintiff can establish establishes all four elements above, then the plaintiff has established a prohibited practice under the Fair Housing Act. To succeed in his lawsuit, plaintiff must then establish that the prohibited practice in fact, caused them to suffer injuries and losses. In this case, the defendant claims that Gilead did not close its home and sell the property because of any conduct by the Town of Cromwell.  **Comcast Corp v. National Association of African**

**American-owned Media, et al**. , **No. 18-1171, (SCOTUS March 23, 2020**).  In this case Gilead claims they suffered injury and losses that included the closing of their home at five Reiman Drive and need to sell the property. The Town of Cromwell asserts, on the other hand, that Gilead's closing  the home and selling the property was caused by Gilead's own mismanagement of the operation of subject home and other of its homes, and the pending investigation into Gilead's 11 other businesses by the CT Dept. of Mental Health and Addiction Services.   If you find that Gilead would have taken the same action to close its home at 5 Reiman Drive, and sell the property, regardless of whether the prohibited statements or conduct occurred, then your verdict should be for the defendant Town of Cromwell.  **Comcast Corp v. National Association of African American-owned Media, et al, Supra**
In this case, the defendant claims that Gilead did not close it's home and sell the property because of any conduct by the town of Cromwell and instead did so because of its own miss management of the subject home and it's problems perceive are associated with the investigation by the Connecticut Department of mental health and addiction services If you find that Gilead would have closed its home regardless of any statement or conduct by the defendant then you should return a verdict for the Defendant Town of Cromwell.

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's prohibited conduct caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's prohibited conducted caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

18 the Plaintiffs have also sued under the Americans with disabilities Act. Due to the similarity of the ADA and the Fair Housing Act's protections of individuals with disabilities in housing matters, this court analyzes the two statutes as one. See **Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n. 4 (2d Cir.2003); Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 782–83 (7th Cir.2002).** Accordingly however you decide the claims made under the Fair Housing Act you should also decide as to the ADA claims.

*No objection.*

19. Plaintiffs have also sued for violation of Section 504 of the Rehabilitation Act of 1973. Section 504 of the rehabilitation Act of 1973 makes unlawful discrimination against an otherwise qualified individual with a disability solely by reason of his or her disability See 29 U.S.C. § 794(a) (2020) Accordingly, in order to prove this claim plaintiffs must demonstrate that the injures and losses they claim to have suffered were caused solely by discriminatory actions of the Town and that their own conduct and the pending investigation by the CT Dept of Mental Health and Addiction Services played no role in the decision. **29 U.S.C. § 794(a) (2020)**

*Plaintiffs object because they are no longer pursuing a claim under the Rehabilitation Act.*

20. **Deposition Testimony** Certain testimony [will now be] [has been] presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers [will be][have been] [read-][shown] to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you in the same way] as if the witness had been present and had testified from the witness stand in court.

*Plaintiffs object to the extent that this proposed charge does not contain any supporting citation and may not be necessary in the instant case.*