## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GILEAD COMMUNITY SERVICES, INC.,
*et al.*

       *Plaintiffs*,

       v.

TOWN OF CROMWELL, *et al.*
       *Defendants*.

No. 3:17-cv-00627 (VAB)

## PRE-TRIAL JURY INSTRUCTIONS

Members of the jury, now that you have been sworn, I will give you some preliminary instructions to guide you in your important function as jurors. These instructions are not a substitute for the jury instructions you will receive at the conclusion of the case. These instructions are designed simply to assist you with your consideration of the case.

### Statement of the Case

This is a civil lawsuit. The party who brings a civil lawsuit is called the plaintiff. In this case, the plaintiffs are Gilead Community Services (or "Gilead") and the Connecticut Fair Housing Center, which are represented by Ms. Ramchandani, Ms. Wu, Ms. Lowe and Mr. Kirschner. The parties who are sued are called the defendants. In this case, the defendant is the Town of Cromwell (or "the Town"). The Town is represented by Mr. Gerarde.

Gilead and the Connecticut Fair Housing Center (collectively, "Plaintiffs") claim that the Town of Cromwell violated both the Fair Housing Act and the Americans with Disabilities Act. Specifically, Plaintiffs claim that:

(1) the Town took actions in opposition to a home that Gilead had purchased and intended to use to provide a home for people with disabilities, and that these actions

1

amounted to intentional discrimination because they were motivated by the disabilities

of the home's intended residents;

(2) the Town made statements that indicated a limitation or preference that Gilead's

disabled clients not live at the home that Gilead had purchased in the Town; and

(3) the Town retaliated against Gilead by revoking its tax-exempt status because Gilead

asserted its fair housing rights.

The Town denies having violated the Fair Housing Act or the American with

Disabilities Act. The Town claims that Gilead's decision to end its contract to provide services

at the intended location was the result of Gilead's decision-making.

**<u>Duty of the Jury</u>**

As the jury, it is your duty to listen to and consider the evidence, and to decide what the

facts are based on that evidence. You and you alone are the judges of facts in this case. Then,

you will apply those facts to the law as I will give it to you at the end of the trial. You must

follow that law whether you agree with it or not. But nothing I may say or do during the course

of the trial should be taken by you as indicating what your verdict should be. You will make your

judgment based solely on the evidence received in this courtroom, which consists of the

testimony of witnesses and any documents or other items received in evidence during the course

of the trial.

You may hear references to "counsel" or "attorneys" or "lawyers" during the course of

this trial. These words mean the same thing.

You may hear references to "the Court." When someone refers to "the Court" they

generally mean the judge presiding over the case.

You also will hear the words "instruct" or "instruction;" this is a direction or order from me that you must follow.

**<u>Evidence</u>**

The evidence will consist of sworn witness testimony, documents, and other things admitted into the record as exhibits, and any facts that the parties agree to or that the court instructs you to find. You should give careful attention to the testimony and evidence presented throughout the trial, keep an open mind, and not form or express any opinion about the case one way or the other until you have heard all of the evidence.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer" and the expression "to draw an inference" mean to find that a fact exists, even though it has not been proven directly. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that, because there are no windows in this courtroom, you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then, a few minutes later, another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see or hear whether it is raining. So, you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

An inference may be drawn only if it is reasonable and logical, not if it is speculative. You are allowed to draw logical inferences from facts that you find to have been proven; but you may not go outside of the evidence to find the facts, nor may you resort to guesswork or conjecture. To aid you in better understanding this, in the rain example I used a moment ago,

although you could infer from evidence of the wet umbrellas that it had rained, you could not also infer that there was a thunderstorm or lightning, without additional evidence. In other words, you must avoid resorting to speculation, conjecture, or guesswork to determine critical facts in this case.

I will give you further instructions on these issues at the end of the case, but keep in mind that you may consider circumstantial evidence as well as direct evidence, and it is for you to decide how much weight, if any, to give to either.

You, as the jury, also decide the credibility of witnesses and the weight to be given their testimony. In considering the weight and value of the testimony of any witness you may take into consideration the appearance, attitude, and behavior of the witness; the interest of the witness in the outcome of the case, if any; the inclination of the witness to speak truthfully or not; the probability or improbability of the witness's statements, and all other facts and circumstances in evidence. You should test the evidence a witness gives by your own knowledge of human nature and of the motives that influence and control human action.

In short, you are to assess a witness's testimony using the same considerations and the same sound judgments and common sense you apply to the questions of truth and veracity that present themselves in your daily lives. It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you further guidelines for determining the credibility of witnesses at the end of the case.

Certain things are not evidence and must not be considered by you when determining what the facts are. I will list them for you now.

First, statements, arguments, and questions by lawyers are not evidence. On the other hand, the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness, is evidence.

Second, objections are not evidence. You may see the lawyers make objections when they believe that evidence is improper. In fact, it is their duty to object to testimony or other evidence that they believe is not admissible. You should not prefer or dislike an attorney or party because an attorney does or does not make objections.

What a lawyer says while making an objection is not evidence and should not influence you. If I "sustain" or "grant" an objection, ignore the question that was objected to, draw no inference from the question, and do not speculate about what the witness would have said. If I "overrule" or "deny" an objection, treat the witness's answer to the question like any other.

If you are instructed by me that some evidence, whether it is an exhibit or testimony is received for a limited purpose only, you must follow that instruction and consider that evidence only for the specified purpose. If I instruct you that testimony or other evidence is "stricken" or excluded, that means evidence initially received must not be considered by you.

Third, on occasion, when the lawyers object, I will have the lawyers up to the side of the bench for a sidebar to understand the reasons for their objections out of your hearing. We will try to keep the sidebars to a minimum by taking up such objections during your breaks, but you should understand that they may be necessary.

Fourth, testimony or other evidence that the Court excludes or tells you to disregard is not evidence and must not be considered.

Fifth, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in this courtroom.

**Burden of Proof**

The Plaintiffs have the burden of proving their case by what is called "the preponderance of the evidence," which means that, in order to prevail, they must produce evidence that leads you to believe that their claims are more likely true than not.

On this point, it helps to visualize a scale. Imagine that you place on one side of the scale the evidence that you find credible, relevant, and supportive of the Plaintiffs' position on a particular issue, and place on the other side of the scale the evidence that you find credible, relevant, and supportive of the Defendant's position on that issue. If the scales tip in favor of the Plaintiffs, even a little bit, then they have carried their burden of proof. But if the scales are evenly balanced, or if the scales tip in favor of the Defendant, even a little bit, then Plainitffs have not carried their burden of proof with respect to the Defendant. This does not mean that the party who calls the most witnesses or offers the most exhibits wins. This is not a numbers game. Rather, it means that the party who offers the evidence that you find most persuasive prevails.

Some of you may have heard of a standard of proof called "beyond a reasonable doubt." That requirement does not apply in a civil case like this one. So, you must put it out of your mind.

**Conduct of Jurors**

Now, a few words about how you must conduct yourselves as jurors.

First, you must decide this case based solely on the evidence presented within the four walls of this courtroom. You may not conduct independent research about this case, the matters

in the case, or the individuals involved in the case. Put simply, do not read or listen to anything relating to this case in any way. That includes Internet content, social media, television programs, newspaper articles, books, dictionaries, and other reference materials.

Second, until you enter the deliberation room at the end of the trial, you may not discuss this case with anyone, even your fellow jurors. This prohibition extends to the use of technology and social networking devices. In other words, do not post about this case or about your duty as a juror on websites such as Twitter, Facebook, Snapchat, TikTok, Google Plus, LinkedIn, Instagram, Tumblr, YouTube, or any other such platforms, and do not use your cellphone or any other communications device to communicate about any of your activities or opinions regarding this case. If anyone should try to talk to you about this case outside of the courtroom, please bring it to my attention promptly.

Third, while serving on this jury, please do not speak with any of the parties or their attorneys or any witness or with me—either about the case or about any other subject. In no other way can all the parties be assured of the absolute impartiality they are entitled to expect from you as jurors. If, however, you have a question to pose to me or any other message, please write out the question or message, give it to the Courtroom Deputy, Ms. Perez, who will bring it to my attention. I will try to respond promptly. Although you should not talk at all with any of us, you may certainly talk among yourselves during breaks. Just be sure your conversations are not about anything having to do with the case.

Please also note that the lawyers are bound by a rule of professional conduct that forbids them from having any contact with jurors during a trial, so you should not hold it against any party or lawyer that they maintain their distance and do not converse with you if you see them in the building.

Finally, in fairness to the parties to this lawsuit you should keep an open mind throughout the trial, reaching your conclusion only during your final deliberations after all the evidence is in and you have heard my instructions to you on the law and the attorneys' summations. Even then, you should reach a conclusion only after an interchange of views with the other members of the jury during deliberations.

**<u>Final Points</u>**

You may take notes during the course of the trial. These notes must be left in the jury room during all recesses and should not be brought home at night or at the conclusion of this case. Any notes that you take should be used only as memory aids; do not rely on your notes if they conflict with your independent recollection of the evidence. If you do not take notes, you should rely on your own recollection of the proceedings and should not be unduly influenced by the notes of other jurors.

These preliminary instructions are, as I previously stated, intended simply to help orient you to hear the evidence. Later, before you begin deliberations, I will instruct you again in greater detail. I am sure you will bear these principles in mind and will keep an open mind until you have heard all the evidence and my formal instructions.

In a moment, we will hear opening statements from each lawyer. What the lawyers say in their opening arguments is not evidence; rather, it is a prediction or roadmap by the lawyer of what he or she expects the evidence will be. You should not decide anything about this case on the basis of the opening statements, which, like these preliminary instructions, are intended merely to orient you to the case. The trial will then proceed in the following order:

- Gilead and the Connecticut Fair Housing Center will introduce evidence in support of the claims they have made in their complaint, while the Town of Cromwell will elicit evidence to support their defense through cross-examination.

8

- Next, the Town of Cromwell will introduce evidence to refute Gilead and the Connecticut Fair Housing Center's claims and to also support the claims the Town has itself made in their answer to Gilead and the Connecticut Fair Housing Center's complaint. Gilead and the Connecticut Fair Housing Center will elicit evidence to support their claims through cross-examination.

- Third, the Town will have an opportunity to introduce rebuttal evidence in response to Gilead and the Connecticut Fair Housing Center's evidence. The burden is always on Gilead and the Connecticut Fair Housing Center's to prove every element of their claims by a preponderance of the evidence.

- After all the evidence is in, I will instruct you on the applicable law.

- Finally, the parties will make their closing arguments. Remember, what is said in closing argument is not evidence. The arguments by the lawyers are designed to present to you the contentions of the parties as to what the evidence has shown and what inferences may be drawn from the evidence. Following closing arguments, you will retire to deliberate on your verdict.

On full trial days, we will start at 9:00 a.m., although you should report to the courthouse by 8:30 a.m. You will get a 15-minute break at 10:30 a.m. and a one-hour lunch break at noon. We will start again at 1:00 p.m., take a 15-minute break at 2:30 p.m., and then end the day at 4:00 p.m. I will do my best to adhere to this timeline, but I ask for your patience if any testimony runs over.

These preliminary instructions are, as I previously stated, intended simply to help orient you as you hear the evidence. Later, after all the evidence has been presented, I will instruct you again in greater detail.

Thank you for your attention.