UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GILEAD COMMUNITY SERVICES, INC., | : | NO.: 3:17-CV-00627-VAB |
| ET AL | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF CROMWELL | : | OCTOBER 11, 2021 |

## PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' SUPPLEMENTAL REQUESTS REGARDING JURY CHARGE

1.      Under section 3604(c) of the Fair Housing Act it is unlawful to make print or publish, or caused to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on handicap or disability, or an intention to make any such preference, limitation, or discrimination. 42 U.S.C.. 3604 (c)

*No objection.*

2.      The Fair Housing Act applies on its face to anyone who makes prohibited statements. **United States v. Space Hunters** 429F. 3D416, 424 (2dCIR. 2005)

*No objection.*

3.      In determining whether section 3604© has been violated, an "ordinary listener test"is applied. Under the standard, section 3604 (c) can be violated by statements targeted at an individual that convey to an ordinary listener that the individual is disabled**. Rodriguez v. Village Green Realty. Inc**. 788F. 3D 31, 52 (2d CIR. 2015)

*Plaintiffs object to the extent that this charge only refers to one standard for establishing a violation of § 3604(c) when the Second Circuit has stated that there are two paths: (1) the author of the statement intended to express a preference, limitation, or discrimination based on disability; or (2) the statement itself indicates a preference, limitation, or discrimination based on disability, regardless of the speaker's motive, which is judged under the ordinary listener standard. Soules v. U.S. Dep't of Hous. & Urb. Dev., 967 F.2d 817, 824 (2d Cir. 1992). Plaintiffs also object to the extent that this charge suggests that a violation of § 3604(c) only occurs if a statement is "targeted at an individual." Rodriguez states the opposite: "a statement implicating subsection 3604(c) need not be targeted at a single, identifiable individual at all." Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 53 (2d Cir. 2015).*

4.      The ordinary listener standard requires a fact intensive, case by case inquiry.

Factfinders may examine the speaker's intent, not because a lack of design constitutes an affirmative defense to an FHA violation, but because it helps determine the manner in which a statement was made and the way an ordinary listener would have interpreted it. **Rodriguez** supra, at page 53

*Plaintiffs object to the extent that this charge conflates two separate avenues for establishing a violation of § 3604(c). See Soules v. U.S. Dep't of Hous. & Urb. Dev., 967 F.2d 817, 824 (2d Cir. 1992). Plaintiffs further object that the only case cited, Rodriguez, does not support this proposed jury charge.*

5.      What matters is whether the challenged statements convey a prohibited preference or discrimination to the ordinary listener. **Rodriguez** at page 53. Statements that indicate a preference that is unrelated to a person's disability, do not violate the Fair Housing Act. A statement indicating a preference must be a preference based on a person's disability or handicap to be a prohibited preference. Id. Accordingly, if you find that a statement made by a Town of Cromwell official indicated a preference, but that preference was not based on any person's disability or handicap, then such a statement would not be prohibited by the Fair Housing Act. **Id.**

*Plaintiffs object. Under Second Circuit law, the proper standard is whether the statement in question conveys to the ordinary listener that a person with disabilities is dispreferred (or preferred) for the housing in question. See Ragin v. New York Times Co., 923 F.2d 995, 999 (2d Cir. 1991). Defendant's proposed charge is confusing and misleading in its reference to statements that indicate a preference "that is unrelated to a person's disability." There is no need to present the flip side of the statutory language, especially where it is likely to confuse the jury. A preference not to have a home supported by Department of Mental Health and Addiction Services, for example, would clearly violate § 3604(c) and the standard set forth in Ragin, but may be perceived by a juror as "unrelated to a person's disability or handicap."*

*The only case cited by Defendant, Rodriguez, does not support Defendant's language about statements that are unrelated to a person's disability. To the contrary, Rodriguez says, "a statement implicating subsection 3604(c) need not be targeted at a single, identifiable individual at all." Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 53 (2d Cir. 2015).*

6.      Speech on a matter of public concern is protected by the First Amendment and will not constitute a prohibited statement under the Fair Housing Act. If you find that one or more statements by any of the Town of Cromwell officials, that is non-employees of the Town of Cromwell, were made concerning an issue of public concern then you should not consider any such statement to be a prohibited statement under the Fair Housing Act. **Garcetti v. Ceballos** 547 U.S. 410 (2006) **Lane v. Franks** 134 S.Ct. 2369 (2014); United States Constitution, First Amendment

*Plaintiffs object. This proposed charge misstates the law because the First Amendment only protects Town officials' speech (regardless of whether it is a matter of public concern) if the speech is undertaken by defendants as private citizens. Garcetti v. Ceballos, 547 U.S. 410, 421(2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does*

*not insulate their communications from employer discipline."); Lane v. Franks, 573 U.S. 228, 238 (2014) (employee testifying outside the scope of his ordinary job duties is private citizen). In other words, Defendant's proposed charge focuses erroneously on whether the statements in question implicate a matter of public concern, but ignores the more fundamental question of whether the statement was made pursuant to official duties or as a private citizen.*

*Plaintiffs further object that this instruction does not elucidate what it means to be a statement made pursuant to official duties or whether it was a statement made as a private citizen. Assuming for the sake of argument that there is a reasonable dispute on whether statements were made officially or privately—which Plaintiffs do not believe there to be, as Mayor Faienza admitted in his deposition that he was speaking as a Town official—then a jury instruction should be cabined to that factual dispute, not this overbroad, incorrect recitation of the First Amendment.*

7.      If you find that the statements made by any statement made by any employee of the Town of Cromwell was made as a citizen, and not as the Town of Cromwell employee, then you should consider whether such a statement was made regarding an issue of public concern. If both are found, then any such statement would not be prohibited statement under the Fair Housing Act **Garcetti v. Ceballos** 547 U.S. 410 (2006) **Lane v. Franks** 134 S.Ct. 2369 (2014); United States Constitution, First Amendment

*Plaintiffs object. Defendant's proposed charges are misleading in their differentiation between public officials (No. 6) and public employees (No. 7), while glossing over the actual issue of whether the statement was made pursuant to official duties or as a private citizen. If the statements were made pursuant to official duties, then there is no First Amendment protection. Only if the statements were made as private citizens does the public concern factor even come into play.*

*Plaintiffs further object that this instruction does not elucidate what it means to be a statement made pursuant to official duties or whether it was a statement made as a private citizen. Assuming for the sake of argument that there is a reasonable dispute on whether statements were made officially or privately—which Plaintiffs do not believe there to be, as Faienza admitted in his deposition that he was speaking as a Town official—then a jury instruction should be cabined to that factual dispute, not this overbroad, incorrect recitation of the First Amendment.*

8.      The First Amendment protects the right to petition the government for redress of grievances. The petition filed by the Town of Cromwell to the CT Department of Public Health for denial of Gilead's license to operate was such a petition for redress. As such it is protected conduct by the First Amendment and cannot be found by you to be prohibited conduct under the Fair Housing Act, unless you find that the filing of the petition was made in bad faith, that is, it was groundless,. **LeBlancSternberg v. Fletcher**, 781 F. Supp. 261, 266 (S.D.N.Y. 1991) (citing **City of Columbia v. Omni Outdoor Advert**., Inc., supra, 499 U.S. 379).

*Plaintiffs object. The right to petition the government for redress of grievances is not protected by the First Amendment if it was done in order to achieve discriminatory goals. The case cited by Defendant says as much. LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261, 266–67 (S.D.N.Y. 1991) ("[W]e are not prepared to conclude that defendants' conduct is protected by the first*

3

*amendment. . . . To allow individuals to avail themselves of first amendment protections when it is alleged that their conduct will lead to official misconduct in violation of the United States Constitution would defeat the purpose of the civil rights laws.").* No jury instruction is therefore necessary for the First Amendment right to petition. If Plaintiffs prove that Defendant's actions violate the anti-discrimination laws, then it follows that they are not protected by the First Amendment.

*Moreover, the cited decision does not support Defendant's use of the terms "bad faith" or "groundless." To the contrary, it states, "[I]f access to a governmental forum is undertaken <u>in order to harass others or to obstruct others' ability to seek relief</u>, the petitioner cannot use its right to petition as a shield against the consequences of its actions." LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261, 266 (S.D.N.Y. 1991) (emphasis added).*

*This jury instruction is also confusing and misleading. It exclusively focuses on the DPH petition as the sole action that could lead to a violation of the Fair Housing Act, when it is actually just one of many Town acts challenged by Plaintiffs.*

*Finally, there is no need to have two separate instructions on whether Defendant's DPH petition is subject to First Amendment protection.*

9.    "But For" standard of causation In order to succeed on a 3604(c) claim the plaintiffs are required to prove, by a fair preponderance of evidence, that a challenged statement was made "because of" the claimed disability of the intended occupants of the subject home, that is, disability was the reason why the statement was made; disability must be the "but for" cause of the statement's being made, meaning the Defendant would not have made the statement "but for" the disability of the intended occupants. If Plaintiff cannot prove this "but for" causation, then your verdict must be for the Defendant. <u>Comcast Corp v. National Association of African American-owned Media, et al</u>, 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020); <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167 (2009).

*Plaintiffs object. First, 42 U.S.C. § 3604(c) does <u>not</u> require that plaintiffs prove intent—in other words, it does not require that plaintiffs establish that a statement was made "because of" disability. The Court's current proposed instruction on § 3604(c) is correct: "But the speaker's subjective belief is not determinative." Rodriguez v. Village Green Realty, Inc., 788 F.3d 31, 53 (2d Cir. 2015). Second, the only two cases cited by Defendant are Comcast and Gross, but these cases do not support Defendant's instruction. Comcast is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981). Gross is an Age Discrimination in Employment (ADEA) case, and the Court again made clear that Title VII was "materially different" from that statute. In the Second Circuit, Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 613 (2d Cir. 2016), continues to control.*

10.    The above instructions have identified what constitutes prohibited statements or conduct under the Fair Housing Act and what statements or conduct does not. If you find that any statement or conduct made by the Town of Cromwell constitutes prohibited conduct under the Fair Housing Act you then should then consider whether or not such

statement or conduct, in fact, caused Gilead's claimed injuries and losses. **Comcast Corp v. National Association of African American-owned Media, et al**. 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020). In this case, the defendant claims that Gilead did not close its home and sell the property but for any conduct by the Town of Cromwell. **Comcast Corp v. National Association of African American-owned Media, et al**. , . 140 S.CT 1009, **No. 18-1171, (SCOTUS March 23, 2020**). In this case, if you find that Gilead would not have closed its home and sold the property, or otherwise suffered an injury or loss, but for of any conduct by the Town of Cromwell,then you should return a verdict for the Defendant Town of Cromwell. **Comcast Corp v. National Association of African American-owned Media, et a**l. . 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020).

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's discriminatory statements caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's discriminatory statements caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981 and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

11.     Under 42 USC 3604 (f) it is unlawful to discriminate in the sale or rental or two otherwise make unavailable or deny a dwelling because of handicap of a person residing in or intending to reside in that dwelling

*No objection.*

**12.**     The "otherwise make unavailable or deny" provision has been construed to reach every practice which has the effect of making Housing more difficult to obtain on prohibited grounds **Thurmond v. Bowman. . 211F. Supp. 3d 554, 564 (W.D.N.Y. 2016)**

*Plaintiffs object to the extent that this jury instruction suggests that the "making housing unavailable" inquiry turns on whether Gilead was able to obtain housing in the first instance. In fact, § 3604(f)(1) makes it illegal to discriminate against any buyer or renter because of a handicap of (a) that buyer or renter, (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or (c) any person*

*associated with that buyer and renter. 42 U.S.C. § 3604(f)(1)(a)-(c). If, at any point, the Town's actions made housing more difficult to obtain for Gilead's clients, then that is sufficient to establish a violation of § 3604(f)(1).*

13.     Plaintiff has the burden of proving not only that the Town of Cromwell made Housing more difficult to obtain by Gilead, but also must prove that the Town did so based on prohibited grounds, that is, because the residents were disabled. **Thurmond. Supra**.

*Plaintiffs object. It is well-established that disability need only be a motivating factor behind Defendant's conduct. Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 616 (2d Cir. 2016); Cabrera v. Jakabovitz, 24 F.3d 372, 383 (2d Cir. 1994); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997). This proposed charge does not make that clear.*

13a. "But For" standard of causation In order to succeed on a 3604 (f) claim the plaintiffs are required to prove, by a fair preponderance of evidence, that action taken by the Defendant that made housing more difficult to obtain was taken "because of" the claimed disability of the intended occupants of the subject home, that is, disability was the reason why the action was taken; disability must be the "but for" cause of the action being taken, meaning the Defendant would not have taken the action that made housing more difficult to obtain "but for" the disability of the intended occupants. If Plaintiff cannot prove this "but for" causation, then your verdict must be for the Defendant. <u>Comcast Corp v. National Association of African American-owned Media, et al</u>, 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020); <u>Gross v. FBL Financial Services. Inc.</u>, 557 U.S. 167 (2009).

*Plaintiffs object. The Second Circuit has explicitly held that the standard for causation under the Fair Housing Act is mixed motive. Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 613 (2d Cir. 2016) ("While this standard has been modified by statute in the context of Title VII, there is no indication it remains inapplicable to claims under the Fair Housing Act, and therefore a plaintiff bears the burden of proof" in showing "that the adverse action was motivated, at least in part, by an impermissible reason."). The only two cases cited by Defendant are Comcast and Gross, but these cases do not support Defendant's instruction. Comcast is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981). Gross is an Age Discrimination in Employment (ADEA) case, and the Court again made clear that Title VII was "materially different" from that statute.*

*Plaintiffs further object to the extent that Defendant's jury instruction suggests that the discriminatory animus of the Town constituents would not serve as sufficient discriminatory motive if the Town acted on account of those constituents' discriminatory animus. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 448, (1985) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." (citing Palmore v. Sidoti, 466 U.S. 429, 433 (1984))); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997); United States v. Yonkers Bd.*

*of Educ., 837 F.2d 1181, 1224-26 (2d Cir. 1987).*

14.     If you find that the plaintiff has proven the Town of Cromwell made housing more difficult to obtain by Gilead, because the residents were disabled, then you must consider whether plaintiff has proved that that such prohibited conduct by the Town of Cromwell, in fact, caused Gilead to suffer the damages and loss as it claims. **Comcast Corp v. National Association of African American-owned Media, et al**. . 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020). ). In this case, the defendant claims that Gilead did not close its home and sell the property but for of any conduct by the Town of Cromwell. **Comcast Corp v. National Association of African American- owned Media, et al**. , . 140 S.CT 1009, **No. 18-1171, (SCOTUS March 23, 2020**). In this case, if you find that Gilead would not have closed its home and sold the property, or otherwise suffered an injury or loss, but for any conduct by the Town of Cromwell, then you should return a verdict for the Defendant Town of Cromwell. **Comcast Corp v. National Association of African American-owned Media, et al**. . 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020).

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's prohibited conduct caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's prohibited conduct caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

15.     Under the Noerr-Pennington doctrine, efforts to influence governmental activity cannot be the basis of legal penalties, unless the proposal to the governmental body is a sham, that is, it has no chance for success. The Noerr-Pennington doctrine applies to claims under the Fair Housing Act such as the claims made in this suit against the Town of Cromwell; furthermore the Noerr-Pennington doctrine applies to municipalities; a municipality has a right to speak and petition for redress of grievances, so the Noerr-Pennington doctrine applies fully to municipal activities. Accordingly, if you find that the Town of Cromwell's Petition to the Connecticut Department of Health was not a sham that had no chance for success, then the Towns filing of the Petition to the Connecticut

Department of Public Health cannot be a basis for violation of the Fair Housing Act. **New W., L.P. v. City of Joliet**, supra, 491 F.3d 722 (citing **Columbia v. Omni Outdoor Advertising, Inc.**, 499 U.S. 365 (1991); **Affordable Housing Development Corp. v. Fresno**, 433 F.3d 1182, 1193 (9th Cir.2006); **White v. Lee**, 227 F.3d 1214, 1231–33 (9th Cir.2000); **Manistee Town Center v. Glendale**, 227 F.3d 1090, 1093–94 (9th Cir. 2000)

*Plaintiffs object. First, Defendant has not cited any binding precedent to establish that Noerr-Pennington applies to claims under the Fair Housing Act and Americans with Disabilities Act, nor can it, as there is no Second Circuit decision on point. The only case cited by Defendant that supports this proposition is Tri-Corp. v. Bauman, but that case is inapposite insofar as it involved a defendant who issued statements and lobbied for certain rulings in administrative proceedings, but who himself had no power to affect the plaintiff's housing. Moreover, the DPH petition is only one of many Town acts challenged by the Plaintiffs, any one of which could serve as the basis for a violation of the FHA, and evidence of the DPH petition would be introduced regardless as overall intent and motive evidence. See Gilead Cmty. Servs., Inc. v. Town of Cromwell, 432 F. Supp. 3d 46, 75 (D. Conn. 2019).*

*Second, Defendant's definition of what constitutes a "sham" is incorrect. Bauman does not define "sham" to be having "no chance for success," but rather uses that language as one example. In fact, the Second Circuit has made clear that the "sham" exception captures all activities that are objectively baseless and seek to cause harm through the use of governmental process. See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993); Pathways, Inc. v. Dunne, 172 F. Supp. 2d 357, 365 (D. Conn. 2001). Put another way, "[m]unicipal officials may not pursue even potentially meritorious claims if they do so in a discriminatory fashion." Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills, 701 F. Supp. 2d 568, 603 (S.D.N.Y. 2010).*

*Finally, there is no need to have two separate instructions on whether Defendant's petition is subject to First Amendment protection.*

16.     The Fair Housing Act also provides, under provision 42 U.S.C. 3617 that it shall be unlawful to coerce intimidate threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercise or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act. To make a prima facie case under section 3617 plaintiffs must show (1) that they were engaged in a protected activity; (2) that defendants were aware of the Activity; (3) that defendants took adverse Action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. **Joseph's House and Shelter, Inc. v.  City of Troy**, 641F. Supp. 2d 154, 158 (NDNY2009).

*Plaintiffs object to the extent that this proposed charge conflates two independent causes of action that Plaintiffs have pled under § 3617: an interference claim and a retaliation claim.*

16a. "But For" standard of causation In order to succeed on a retaliation claim claim the plaintiffs are required to prove, by a fair preponderance of evidence, that a retaliatory act was taken "because of" the claimed disability of the intended occupants of the subject home, that is, disability was the reason why the action that is claimed to

be retaliatory was taken; disability must be the "but for" cause of the claimed retaliatory act, meaning the Defendant would not have taken the action "but for" the disability of the intended occupants. If Plaintiff cannot prove this "but for" causation, then your verdict must be for the Defendant. <u>Comcast Corp v. National Association of African American-owned Media, et al</u>, 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020); <u>Gross v. FBL</u> <u>Financial Services, Inc.</u>, 557 U.S. 167 (2009).

*Plaintiffs object. The Second Circuit has held that the standard for causation for a FHA retaliation claim is that a "retaliatory motive played <u>a part</u> in the adverse [] action."). Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002) (emphasis added). The only two cases cited by Defendant are Comcast and Gross, but these cases do not support Defendant's instruction. Comcast is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981). Gross is an Age Discrimination in Employment (ADEA) case, and the Court again made clear that Title VII was "materially different" from that statute.*

17.     If plaintiff can establish establishes all four elements above, then the plaintiff has established a prohibited practice under the Fair Housing Act. To succeed in his lawsuit, plaintiff must then establish that the prohibited practice in fact, caused them to suffer injuries and losses. **<u>Comcast Corp v. National Association of African American-owned Media, et a</u>**l. . 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020). In this case, the defendant claims that Gilead did not close its home and sell the property but for any conduct by the Town of Cromwell. **<u>Comcast Corp v. National Association of African American-owned Media, et al</u>. , .** 140 S.CT 1009, **No. 18-1171, (SCOTUS March 23, 2020**). In this case, if you find that Gilead would not have closed its home and sold the property, or otherwise suffered an injury or loss, but for any conduct by the Town of Cromwell, then you should return a verdict for the Defendant Town of Cromwell. **<u>Comcast Corp v. National Association of African American-owned Media, et a</u>**l. . 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020).

*Plaintiffs object. Defendant has proposed that an iteration of this causation charge be included after each cause of action (statements, intentional discrimination, and retaliation), but then it misstates the causal requirement. Closure of the 5 Reiman home is one injury, among many, that Plaintiffs have alleged. The jury does not need to find that Defendant's prohibited conduct caused the closure of the home in order to find a violation of the Fair Housing Act. For example, a jury may find that Defendant's prohibited conducted caused harm to Gilead's reputation and mission; this would more than meet the causation standard under the Fair Housing Act. Defendant's proposal is therefore confusing and misleading.*

*The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392*

*U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981).*

*The causation requirement is properly featured in Plaintiffs' damages instruction, which states that damages should only be awarded for injuries that Gilead proved were caused by the Town's wrongful conduct. There is no reason to feature it after each cause of action—and certainly no reason to focus on just one of many alleged damages suffered by Plaintiffs.*

18.    The Plaintiffs have also sued under the Americans with Disabilities Act.   Due to the similarity of the ADA and the Fair Housing Act's protections of individuals with disabilities in housing matters, this court analyzes the two statutes as one. See **Tsombanidis v. W. Haven Fire Dep't,** 352 F.3d 565, 573 n. 4 (2d  Cir.2003); **Oconomowoc Residential Programs v. City of Milwaukee,** 300 F.3d 775, 782–83 (7th Cir.2002). Accordingly however you decide the claims made under the Fair Housing Act you should also decide as to the ADA claims.

*No objection.*

**19.**    Plaintiffs have also sued for violation of Section 504 of the Rehabilitation Act of 1973. Section 504 of the rehabilitation act of 1973 makes unlawful discrimination against an otherwise qualified individual with a disability solely by reason of his or her disability See 29 U.S.C. § 794(a) (2020) Accordingly, in order to prove this claim plaintiffs must demonstrate that the injures and losses they claim to have suffered were caused solely by discriminatory actions of the Town and that their own conduct and the pending investigation by the CT Dept of Mental Health and Addiction Services played no role in the decision. **29 U.S.C. § 794(a) (2020)**

*Plaintiffs object because they are no longer pursuing a claim under the Rehabilitation Act.*

20.    **Deposition Testimony** Certain testimony [will now be] [has been] presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers [will be][have been] [read-][shown] to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you in the same way] as if the witness had been present and had testified from the witness stand in court.

*Plaintiffs object to the extent that this proposed charge does not contain any supporting citation and may not be necessary in the instant case.*

21.    **No Principal/Agent liability.** In a suit against a municipality under a civil rights statute such as the Fair Housing Act or Americans with Disabilities Act, there is no

Principal/Agent or Respondeat Superior liability. The municipality can only be held liable for actions which are the official policy of the municipality. <u>Monell v. Dept. of Social Services of the City of New York, et al</u>, 436 U.S. 658 (1978). <u>Meyer v.Holley</u>, 537 U.S. 280 (2003)

*Plaintiffs object. It is not true that the Fair Housing Act and Americans with Disabilities Act only cover actions which are the official policy of the municipality. As the Supreme Court held in Meyer v. Holley, a municipality is liable for discriminatory actions taken by its agents under principles of respondeat superior. See 537 U.S. 280, 286 (2003); see also RECAP v. City of Middletown, 294 F.3d 35, 53-54 (2d Cir. 2002) (holding City liable for acts of mayor). In other words, a municipality's liability under the FHA and ADA can be established under both Monell principles and under respondeat superior principles.*

22.    **Single Act of Policymaker** The actions of individual municipal employees or municipal officials are not the official policy of the municipality for the purposes of civil rights liability unless the individual taking the action was the final decision-maker for the municipality with respect to the action taken. <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1987); <u>Pembauer v. City of Cinncinnatti</u> 475 U.S. 469 (1986) <u>Jett v. Dallas Independent School District</u>, 491 U. S. 701 (1989).

*Plaintiffs object. The final decisionmaker requirement of Praprotnik, Jett, and Pembauer applies only to claims brought under 42 U.S.C. § 1983, not the Fair Housing Act and Americans with Disabilities Act. Under the standard set forth in Meyer v. Holley, 537 U.S. 280 (2003), corporations are liable under traditional vicarious liability principles for violations of the Fair Housing Act committed by their agents and employees. In other words, as long as the acts were done within the ordinary course of the agents' or employees' employment, or within the ordinary course of the Town's business, the Town is liable for those acts. Therefore, no analysis is required to ascertain whether actions by municipal officials constitute the municipality's policy, or whether an individual was the final policy-maker for the municipality, and Defendant's instruction is confusing and misleading in its suggestion to the contrary.*

23.    **Town Council actions are official policy** The actions of a municipality's governing body, in this case the Town Council, constitute official acts and policy of the municipality. <u>Fennell v. City of Hartford</u>, 238 Conn 839 (1996) <u>Bellsite Development, LLC v. Town of Monroe</u> 155 Conn.App. 131(2015); <u>Van Deusen v. Town of Watertown</u>, 62 Conn.App. 298 (2001)

*Plaintiffs object. This instruction is confusing because, while the jury may consider actions of the Town of Cromwell's Town Council actions in assessing whether the Town violated the FHA and ADA, those are not the only actions that the jury may consider. Only § 1983 claims require the presence of a municipal policy. A municipality's liability under the FHA and ADA can be established under both Monell principles and under respondeat superior principles.*

*The cases cited by Defendant are irrelevant because they are not brought under the Fair Housing Act or Americans with Disabilities Act. In Fennell v. City of Hartford, 238 Conn. 809 (Conn. 1996), the court determined that only the Hartford City Council could amend*

*the city's pension and retirement benefits for municipal officials. In Bellsite Dev., LLC v. Town of Monroe, 155 Conn. App. 131, 122 A.3d 640 (2015), the court determined that the Town's charter did not allow for the Town selectman to bind the Town to a contract. And finally, in Van Deusen v. Town of Watertown, 62 Conn. App. 298, 771 A.2d 176 (2001), the court determined that by statute, only the town council was required to vote to establish a historic district.*

24.      **Mixed Motive standard for causation should not be charged.** The Supreme Court's decision in **Comcast Corp v. National Association of African American-owned Media, et a**l. 140 S.CT 1009, No. 18-1171, (SCOTUS March 23, 2020) established a "but for" causation standard as the default standard for all civil rights- based causes of action. This is consistent with the common law as it existed when the Fair Housing Act was enacted. "But for" causation has been the dominant common law standard, since the late nineteenth century, including in 1968 when the Fair Housing Act was enacted, and in 1988 when the Fair Housing Amendments Act reenacted the statute's "because of" language to define its key substantive provisions. See Robert. G. Schwem, *Fair Housing and the Causation Standard After Comcast*, 66 Vill. L. Rev. 63, 86-87 (2021).  The Defendant's requests to charge on "but for" causation set forth above in paragraphs 10, 14 and 17 articulate the correct standard for causation and should be submitted to the jury. The mixed motive standard for causation should not be submitted to the jury as proposed by Plaintiffs in paragraphs 8-10 of their proposed jury instructions or in the court's draft instructions.

*Plaintiffs object. The Second Circuit has explicitly held that the standard for causation under the Fair Housing Act is mixed motive. Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 613 (2d Cir. 2016) ("While this standard has been modified by statute in the context of Title VII, there is no indication it remains inapplicable to claims under the Fair Housing Act, and therefore a plaintiff bears the burden of proof" in showing "that the adverse action was motivated, at least in part, by an impermissible reason."). The only case Defendant cites for this proposed charge is Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1011 (2020), but this is a § 1981 case. The Court specifically noted that its holding was limited to § 1981, and distinguished it from Title VII of the Civil Rights Act. Id. at 1017-18; see also Jones v. Alfred H. Mayer Co., 392 U.S. 409, 416 (1968) (Fair Housing Act is governed by different standards than civil rights claims brought under provisions of the Civil Rights Act of 1866, like § 1981). And Defendant's citation to Robert Schwemm's article ignores the numerous stated reasons why motivating factor is, in fact, the correct standard for causation under the Fair Housing Act. 66 Vill. L. Rev. 63, 87-90 (2021).*

25.      **Punitive damages should not be charged**. Punitive damages are not available to the plaintiff and should not be part of the jury charge. In the context of 42 U.S.C. § 1983, local governments are immune from punitive damages.  See, e.g., City of Newport v. Fact Concerts, 453 U.S. 247 (1981). "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar conduct… it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort." Id. at 266-67. "The reasoning of City of Newport seems largely hinged upon the fact that the traditional purposes of punitive damages (punishment and deterrence) would not be served by imposing punitive

damages upon local governments, because taxpayers would foot the bill, governments would likely have to increase taxes or reduce public services, and such an award would place the local government's financial integrity in serious risk." Revilla v. Glanz, 8 F.Supp. 3d 1336, 1342-43 (N.D. Okla. 2014)).  See also Chestnut v.City of Lowell, 305 F.3d 18, 21-22 (1st Cir. 2002) (vacating award of punitive damages against City, remanding and giving plaintiff option of having new trial on issue of actual damages against City).

Likewise, in the context of the Fair Housing Act, local governments are immune from punitive damages. See, e.g., Ross v. Port Chester Housing Authority, No. 17-CV-4770(NSR), 2019 WL 4738941, at n.17 (S.D.N.Y. Sept. 27, 2019) ("As a matter of law, Plaintiff's claim for punitive damages also fails because governmental entities are immune from punitive damages.") (citing City of Newport v. Fact Concerts, 453 U.S. 247(1981)); New Jersey Coalition of Rooming and Boarding House Owners v. Mayor and Council of City of Asbury Park, 152 F.3d 217, 225 (3d Cir. 1998) (opining in *dicta* in FairHousing Act case that "it is not clear that punitive damages can ever be awarded against a municipal defendant"); Jennings v. Housing Authority of Baltimore City, 2014 WL 346641, at *9 (D. Md. 2014) (holding that local governments are not liable for punitive damages under the Fair Housing Act); Brooker v. Altoona Housing Authority, 2013 WL 2896814, at *27 (W.D. Pa. 2013) (holding that punitive damages cannot be recovered against municipalities under the Fair Housing Act); Kennedy v. City of Zanesville, OH, 505 F. Supp. 2d 456, 476 (S.D. Ohio 2007) (holding, in a case based on the Fair Housing Act as well as other civil rights statutes, that punitive damages are not available against the county and city defendants); Developmental Services of Nebraska v. City of Lincoln, 504 F. Supp. 2d 726, 737-38 n.20 (D. Neb. 2007) (holding in a Fair Housing Act case that punitive damages are not available against a municipal defendant) (citing Inland Mediation Bd. V. City of Pomona, 158 F. Supp. 2d 1120, 1158 (C.D. Cal. 2001)).

It would run contrary to common sense to allow a plaintiff to obtain punitive damages in a case brought pursuant to the Fair Housing Act, yet exclude a plaintiff from punitive damages for a case brought pursuant to § 1983. The Fair Housing Act is a federal statute, and claims brought pursuant to the FHA can also be enforced through 42 U.S.C. § 1983. It would strain logic to allow for punitive damages against municipalities when claims are pursued via the Fair Housing Act, and to simultaneously deny plaintiffs the ability to obtain punitive damages against a municipality when claims for the same rights are pursued via 42 U.S.C. § 1983.

The Court should follow the reasoning set forth in the aforementioned case law, since allowing the plaintiffs to obtain punitive damages against the municipal defendant would also run contrary to the purposes of punitive damages. Specifically, as set forth in City of Newport v. Fact Concerts, 453 U.S. 247 (1981), the purposes of punitive damages, i.e. punishment and deterrence, would not be achieved in this matter, in that the taxpayers of the Town of Cromwell would foot the bill, and as a result, the Town would likely have to increase taxes or reduce public services. Id. Allowing the Town of Cromwell to be held liable for punitive damages in this case would be both illogical in consideration of the well-established case law with respect to claims brought pursuant to 42 U.S.C. § 1983, and would not serve the purposes of punitive damages. Accordingly, the jury should not be charged on punitive damages

as proposed by Plaintiffs in their request 22 and in the court's draft jury instructions.

*Plaintiffs object. Punitive damages are proper in FHA cases where a defendant "has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Space Hunters, 429 F.3d at 427 (internal quotations omitted). In 1988, Congress amended the FHA and added punitive damages as an available remedy upon a finding of liability. See Pub. L. 100–430, 102 Stat 1619 (1988) (codified at 42 U.S.C. § 3613). In stark contrast to other civil rights statutes, § 3613(c)(1) does not set forth any limitation as to who may be subject to punitive damages awards. Compare 42 U.S.C. § 3613(c)(1) ("[I]f the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages,") with 42 U.S.C. § 1981a(b)(1) (in Title VII context, "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision[.])"). Multiple courts have thus held that municipalities face exposure to punitive damages under the Fair Housing Act. See Rehab. Support Servs., 2015 WL 4067066, at \*11; Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill., 958 F. Supp. 1320, 1331–32 (N.D. Ill. 1997); Dadian v. Vill. Of Wilmette, No. 98 C 3731, 1999 WL 299887, at \*3 (N.D. Ill. May 4, 1999); Floyd v. City of Sanibel, No. 2:15-CV-00795-SPC-CM, 2017 WL 78638, at \*7 (M.D. Fla. Jan. 9, 2017).*

*The Court's current proposed instruction properly refers to the concerns articulated in Fact Concerts, namely that the jury should consider "the level of taxpayer or constituent knowledge, participation, and influence on the Town of Cromwell's decision to take action against Gilead Community Services and the Connecticut Fair Housing Center."*

26.      **The jury should not be charged on principal/agent or respondent superior liability**. For the reasons stated in Request to Charge 21-23 above, the Defendant submits that the court should not charge the jury in accordance with the Plaintiffs proposed request to charge 14 and the Courts draft jury charge on the issue of municipal liability for the statements of officials and employees. Instead, the Defendants proposed charge in paragraphs 21-23 should be provided. Monell v. Dept. of Social Services of the City of New York, et al, 436 U.S. 658 (1978). Meyer v. Holley, 537 U.S. 280 (2003)City of St. Louis v. Praprotnik, 485 U.S. 112 (1987); Pembauer v. City of Cinncinnatti 475 U.S. 469 (1986) Jett v. Dallas Independent School District, 491 U. S. 701 (1989).

*Plaintiffs object for the same reasons listed above for charges 21-23.*

DATED:       October 11, 2021           Respectfully Submitted,


                                        /s/ Yiyang Wu
                                        Yiyang Wu, *Pro Hac Vice Granted 4/20/17*
                                        Andrea Lowe, *Pro Hac Vice Granted 4/30/18*
                                        Michael Allen, *Pro Hac Vice Granted 4/20/17*
                                        Tara Ramchandani, *Pro Hac Vice Granted 8/25/17*
                                        RELMAN COLFAX PLLC

1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
alowe@relmanlaw.com
mallen@relmanlaw.com
tramchandani@relmanlaw.com
ywu@relmanlaw.com

Greg Kirschner (ct26888)
Connecticut Fair Housing Center, Inc.
60 Popieluszko Court
Hartford, CT 06106
(860) 263-0724
gkirschner@ctfairhousing.org

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 11th day of October, 2021, a copy of the foregoing was filed and served electronically.  Notice of this filing will be sent  by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


<u>/s/ Yiyang Wu</u>
Yiyang Wu