**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GILEAD COMMUNITY SERVICES, INC.,
*et al.*

      *Plaintiffs*,

      v.

TOWN OF CROMWELL
      *Defendant*.

No. 3:17-cv-00627 (VAB)

**POST-TRIAL JURY INSTRUCTIONS**

1

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................3

PART I: GENERAL INSTRUCTIONS ...............................................................................4

    A.   ROLE OF THE COURT .....................................................................................4
    B.   INSTRUCTIONS TO BE CONSIDERED AS A WHOLE ................................4
    C.   BOTH SIDES ENTITLED TO FULL AND FAIR HEARING ..........................5
    D.   STIPULATIONS...................................................................................................5
    E.   OBJECTIONS AND RULINGS ..........................................................................5
    E.   DUTIES OF THE JURY ......................................................................................7
    F.   "PROVE," "FIND," AND "ESTABLISH" ..........................................................8
    G.   BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ................8
    H.   FORMS OF EVIDENCE ....................................................................................9
    I.   EXPERT WITNESS ..........................................................................................10
    J.   WHAT IS NOT EVIDENCE ............................................................................10
    J.   DIRECT & CIRCUMSTANTIAL EVIDENCE ...............................................11
    K.   INFERENCE DEFINED ...................................................................................12
    L.   WITNESS CREDIBILITY – GENERAL ........................................................13
    N.   IMPEACHMENT OF WITNESS ......................................................................14
    O.   UNCONTRADICTED TESTIMONY ..............................................................14

PART II: THE ISSUES AND CLAIMS IN THIS CASE.................................................15

    A.   CLAIM UNDER 42 U.S.C. § 3604(f) OF THE FAIR HOUSING ACT AND 42 U.S.C. § 12132 OF THE AMERICANS WITH DISABILITIES ACT ..........................................................17
        1.   MAKING HOUSING UNAVAILABLE ...........................................18
        2.   IMPOSITION OF DISCRIMINATORY TERMS AND CONDITIONS ...............................................19
        3.   HARRASSMENT AND INTERFERENCE WITH ENJOYMENT OF HOUSING ..............................20
        4.   DISCRIMINATORY INTENT: MOTIVATING FACTOR ..............21
        5.   EVIDENCE OF MOTIVATING FACTOR: DECISIONMAKERS' INTENT ........................................21
        6.   EVIDENCE OF MOTIVATING FACTOR: RESPONDING TO CITIZENS ............................................23
        7.   FIRST AMENDMENT DEFENSE REGARDING TOWN OF CROMWELL'S PETITION TO DEPARTMENT OF PUBLIC HEALTH ...............................24
    B.   CLAIM UNDER 42 U.S.C. § 3604(c) OF THE FAIR HOUSING ACT ........24
        1.   ORDINARY LISTENER TEST .........................................................25
    C.   CLAIM UNDER 42 U.S.C. § 3617 OF THE FAIR HOUSING ACT AND 42 U.S.C. § 12132 OF THE AMERICANS WITH DISABILITIES ACT .........................................................26

PART III: DAMAGES .......................................................................................................28

    A.   GENERAL INSTRUCTIONS ON DAMAGES ...............................................28
    B.   COMPENSATORY DAMAGES.......................................................................29
    D.   PUNITIVE DAMAGES ....................................................................................30

PART IV: FINAL INSTRUCTIONS ................................................................................33

    A.   NOTE TAKING.................................................................................................33
    B.   UNANIMOUS VERDICT .................................................................................33
    C.   FOREPERSON AND DELIBERATIONS ........................................................34
    D.   VERDICT FORM ..............................................................................................34
    F.   ADDITIONAL INSTRUCTIONS .....................................................................35

## INTRODUCTION

Members of the jury, you now have heard all of the evidence. I now will instruct you about the law applicable to this case. After these instructions, you will hear the closing arguments of counsel, and I will provide some final instructions. You then will return to the jury room to deliberate in accordance with these instructions. But first, I want to express my gratitude to each of you for the time and energy you have devoted to this trial. Jury service is rarely convenient, but without you, justice could not be done in this case. Thank you.

It will take some time for me to read these instructions to you, but it is important for you to listen carefully. I will go as slowly as I can and be as clear as possible. At the start of the trial, I told you that your principal function was to listen carefully and observe each witness who testified. I ask you to give that same careful attention, as I instruct you on the law. You have been provided with a copy of my instructions so that you can read along as we go. Please feel free to write on these copies. You will be permitted to take them into the jury room with you.

My instructions will be in three parts. First, I will discuss general rules concerning the role of the court and the duty of the jury. Second, I will go over the issues in this case and set out the specific questions of fact that you must answer based on the evidence at trial. Third, I will give you some rules and guidelines for your deliberations.

Before we begin, I ask you to look over the other document that was placed on your seats—namely, the Verdict Form. After I have given these instructions and you hear the closing arguments of counsel, you will go back into the jury room to deliberate. You will have with you the following: the original of the Verdict Form, copies of the original exhibits, your copies of these instructions, and any personal notes that you may have taken. At the conclusion of your deliberations, you will use the verdict form to report your verdict to the court and the parties.

# PART I: GENERAL INSTRUCTIONS

## A.      ROLE OF THE COURT

As the judge, I perform two basic functions during the trial. First, I decide what evidence you may consider. You have heard me doing that throughout the trial. Second, I instruct you on the law that you are to apply to the facts in this case. I gave you some preliminary instructions before trial began, and some during the course of the trial, but it is now—at the close of evidence—that the final instructions are given, so please be patient and listen closely. If any of the lawyers state the law differently from the way I am explaining it to you, you are to follow my instructions.

I believe that everything I am going to tell you now is consistent with the preliminary instructions I gave you at the start of the trial, but if you have any doubt, you should not rely on anything different I may have said in the preliminary instructions. The instructions I am giving you now must guide your deliberations in this case.

## B.      INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

This is a long instruction, and I may repeat certain parts. That does not mean that those parts should be emphasized. You should not single out any one part of my instructions and ignore the rest. Instead, you should consider all parts of the instructions as a whole and consider each part of the instructions in light of all the others. The order in which I give you instructions does not indicate their relative importance. Do not read into these instructions, or into anything I have said or done, any suggestion about what verdict you should return—that is a matter for you alone to decide.

I should also point out to you that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

4

### C.   BOTH SIDES ENTITLED TO FULL AND FAIR HEARING

Regardless of your ultimate decision about the parties' claims and defenses, the parties in this case are entitled to a full and fair hearing. The parties are entitled to a trial free from prejudice or bias. Our justice system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right. In deciding the facts or applying the law as I have given it to you, you must not be swayed by bias or prejudice for or against any party. All persons and all institutions stand equal before the law and are to be dealt with as equals in a court of justice, regardless of who they are. You must not be swayed by your personal opinions about any of the issues raised in this trial. You should not be swayed by sympathy. You should be guided solely by the evidence presented during trial and the law that I give you, without regard to the consequences of your verdict.

### D.   STIPULATIONS

Before the trial of this case, the court held a conference with the lawyers for all the parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof. I will refer to these facts, when they are relevant, in the second part of my instructions.

### E.   OBJECTIONS AND RULINGS

Our courts operate under an adversary system in which we believe that the truth will emerge through the competing presentations of adverse parties. It is the role of attorneys to press as hard as they can for their respective positions, and in fulfilling that role, they have a duty to object to the introduction of evidence that they believe is not properly admissible. You should not prefer or dislike an attorney or a party because an attorney did or did not make objections

during the trial. The application of the rules of evidence is not always clear, and lawyers often disagree about them. It has been my job as the judge to resolve these disputes during the course of the trial.

It is important for you to realize, however, that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as a preference for one side or the other. You are not to concern yourself with why a lawyer made an objection or why I ruled on it in the manner that I did. You should draw no inference from the fact that a lawyer objected to evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection. My rulings on objections have nothing to do with the merits of the case or with the credibility of the witnesses.

If I have allowed testimony or evidence that an attorney objected to, you should not give that evidence greater or lesser weight. If I have sustained an objection to a question asked of a witness, you must disregard the question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if he or she had been permitted to answer the question. You must disregard any testimony that I have stricken, because it is not evidence. Finally, if I instructed you to consider an item of evidence for a limited purpose only, you must follow that limiting instruction and use the evidence only for the limited purpose for which it was admitted.

One further note about attorneys. During the course of the trial, one cannot help but recognize the various personalities and styles of the attorneys. But it is important for you as jurors to recognize that this is not a contest among attorneys. Whatever you may think about the conduct of the lawyers during this trial, you must remember that this dispute is about the parties, not the lawyers, and you must decide this case solely on the basis of the evidence. Remember, statements and characterizations of the evidence by the attorneys are not evidence. Insofar as you

6

find their closing arguments to be helpful, take advantage of that, but it is your memory, your evaluation of the evidence, and my instructions on the law that count in this case.

## E.     DUTIES OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts. It is your duty to find the facts from all of the evidence in the case. You determine the credibility of witnesses. You resolve any conflicts that may exist in the testimony. You draw whatever reasonable inferences you decide should be drawn from the facts you determine, and you weigh the evidence. No one may invade your province or function as jurors. Because you are the sole and exclusive judges of the facts, I do not mean to indicate, in this charge or at any time during the trial, any opinion as to the facts or as to what your verdict should be. The rulings I have made during the trial are not any indication of what your decision should be or which party should prevail in this case, because I have no view on those matters.

In order to determine the facts, you must rely upon your own recollection of the evidence. In reaching a verdict you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you. Regardless of any opinion you may have about what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you. You must do your duty as jurors regardless of any personal likes, dislikes, opinions, prejudices, or sympathies that you may have. In other words, you must decide the case solely on the evidence before you, and you must do so fairly and impartially.

The verdict you reach must be unanimous; that is, agreed upon by each of you. You must each decide the case for yourself, but must do so only after impartial consideration of the evidence in the case with your fellow jurors.

### F.     "PROVE," "FIND," AND "ESTABLISH"

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the plaintiffs, Gilead Community Services and the Connecticut Fair Housing Center, must do in order to win this case. My use of the word "prove" means "prove by the appropriate burden of proof," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts or the parties "establishing" various facts, you must determine whether those facts have been proven by the appropriate burden of proof, even if I simply use the word "find" or "establish."

### G.     BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

Because this is a civil case, the plaintiffs, Gilead Community Services and the Connecticut Fair Housing Center, have the burden of proving every disputed element of their claims by a preponderance of the evidence. Neither party has to disprove the opposing party's claims or defenses.

To establish a fact by a preponderance of the evidence, the party with the burden of proof must prove that the fact is more likely true than not true. You will recall the example I gave you at the beginning of this trial of the scales of justice. For the plaintiffs' claims, if you find that the credible evidence on a given issue is evenly divided between the plaintiffs and the defendant, or tips in favor of the defendant, then you must decide that issue for that defendant. However, if the plaintiffs prove that a fact is more likely true than not, even if only slightly more likely true than not, then you are to find that the plaintiffs have proven that fact by a preponderance of the evidence.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of

the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should not consider or discuss that standard in your deliberations.

## H.    FORMS OF EVIDENCE

Next, I want to discuss with you generally what we mean by evidence and how you should consider it. The evidence from which you are to decide what the facts are comes in one of three forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, and regardless of who called the witness.

Second, there are the exhibits that have been received into the trial record. All of the exhibits that have been admitted into evidence will be with you in the jury room. If an exhibit has been admitted into evidence, it is evidence that can be considered by you regardless of whether any witness referred to the exhibit or testified about it during the trial.

One word about the exhibits that you will have in the jury room. You may notice that certain exhibit numbers have not been used. For example, you may find exhibit number 5 and number 7 but not find number 6. Please do not be concerned about the numerical sequencing of exhibits and do not think that an exhibit is missing. The reason for what would otherwise seem like gaps is that we assigned all of the potential trial exhibits numbers before trial, and then before or during trial, counsel decided not to introduce certain exhibits or certain exhibits were simply marked for identification purposes and then not made full exhibits. We have checked the exhibits and made sure that you will have all of the exhibits that you should have, so once again do not pay any attention to the numbering or sequencing of the exhibits.

## I.      EXPERT WITNESS

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training. Such expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. In weighing the expert's testimony, you also should consider any bias, motive, or interest in the outcome of this case you may find such expert may have. You may give the opinion testimony whatever weight, if any, you find it deserves, in light of all the evidence in this case. You should not, however, accept expert testimony merely because I allowed the witness to testify concerning his opinion. Nor should you substitute it for your own reason, judgment, and common sense.

The determination of the facts in this case rests solely with you. As with the testimony of any other witness, you, the jury, may decide to accept all, some, or none of the testimony of any expert witness. If you decide that an opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not convincing to you, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

## J.      WHAT IS NOT EVIDENCE

It is the witnesses' answers, and not the lawyers' questions, that are evidence. At times, a lawyer may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and

if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because the assumed fact was contained in the lawyer's question.

Testimony that I have ordered stricken, testimony that I have instructed you to disregard, and testimony that I have excluded are not evidence and may not be considered by you in rendering your verdict.

What the lawyers say in their opening statements and closing arguments, in their comments, objections, and even in their questions is not evidence. What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the evidence differs from the lawyers' statements, you should rely on your memory.

Moreover, what I may have said during the trial or what I may say in these instructions is not evidence, and my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.

It is for you—and you alone—to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

## J.     DIRECT & CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence includes a witness's testimony about something the witness knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Also assume that as you were sitting here, someone walked in with

11

an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have just presented to you, it would be reasonable and logical for you to infer that it had been raining.

That is all there is to circumstantial evidence. On the basis of your reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict be based on a preponderance of all of the evidence presented.

## K.      INFERENCE DEFINED

During the trial you may have heard the attorneys use the term "inference," and in their arguments, they may ask you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proven by direct or circumstantial evidence. One party may ask you to draw one set of inferences, while the other party asks you to draw another. It is for you, and you alone, to decide which inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In

drawing inferences, you should exercise your common sense. The mere process of drawing an inference from the evidence does not change the burden of proof. Finally, you may not draw any inferences from the mere fact that the plaintiffs filed this lawsuit or that the defendant has chosen to defend it.

## L.      WITNESS CREDIBILITY – GENERAL

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine a witness's truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Was he or she frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her behavior, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he testified; the accuracy of the witness's memory; the witness's candor or lack of candor and intelligence; the reasonableness and probability of the witness's testimony; the

consistency or lack of consistency; and the corroboration or lack of corroboration with other credible testimony.

Always remember that in assessing any witness's testimony you should use your common sense, your good judgment, and your own life experience.

## N.      IMPEACHMENT OF WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness' present testimony. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

## O.      UNCONTRADICTED TESTIMONY

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not discredited or impeached. You may decide, because of the witness's manner and demeanor or because of the improbability of his or her testimony or for other reasons, that the witness's testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately related what in fact occurred.

## PART II: THE ISSUES AND CLAIMS IN THIS CASE

I will now instruct you on the specific claims made by the plaintiffs and the defenses raised by the defendant.

Gilead Community Services and the Connecticut Fair Housing Center contend that the Town of Cromwell engaged in discrimination in violation of two federal civil rights laws: (1) the Fair Housing Act, and (2) the Americans with Disabilities Act. These laws apply to the conduct of municipalities like the Town of Cromwell, and they make it unlawful for a municipality to commit discriminatory housing practices against persons or entities because of their race, color, sex, national origin, religion, familial status, and disability.

Plaintiffs have three claims:

*One*, that the Town of Cromwell intentionally discriminated against them because of disability, by treating Gilead Community Services and the intended residents of 5 Reiman Drive less favorably than it treats non-disabled Town residents, in violation of the Fair Housing Act and the Americans with Disabilities Act;

*Two*, that the Town of Cromwell made statements that indicated a limitation or preference because of disability, specifically by expressing a preference that Gilead's disabled clients not live at 5 Reiman Drive, in violation of the Fair Housing Act; and

*Third*, that the Town of Cromwell engaged in unlawful retaliation against Gilead by denying its renewal application for property tax-exemption because Gilead filed a lawsuit against the Town alleging disability discrimination, in violation of the Fair Housing Act and the Americans with Disabilities Act.

Gilead Community Services and the Connecticut Fair Housing Center do not need to prove all three theories.

I will now describe each of these three theories—also called causes of action—in greater detail.

Before doing so, however, I will note that you have heard evidence dealing with decisions and actions taken by Town of Cromwell officers and employees. When you decide whether to find the Town of Cromwell liable, you are to consider the Town of Cromwell

responsible for the actions of its officers and employees. The parties have agreed that, at all relevant times, Anthony Salvatore was Acting Town Manager or Town Manager of the Town of Cromwell, Enzo Faienza was the Town Mayor, and that Shawna Baron was the Tax Assessor for the Town. The law considers a "corporation," including the incorporated Town of Cromwell, a person—but a corporation can act only through its officers, employees, or other agents. Therefore, a municipal corporation is responsible for all unlawful acts of its officers, employees, or other agents, so long as the unlawful acts are done within the scope of their authority, as would usually be the case if done in the ordinary course of their employment, or in the ordinary course of the Town of Cromwell's business. Here, because the Town of Cromwell has admitted that all of the actions that are at issue in this case were taken by officers, employees, and agents of the Town of Cromwell within the scope of their authority, the Town of Cromwell is responsible for those actions.

Also, for any claim brought both under the Fair Housing Act and the Americans with Disabilities Act, because the law treats these laws as the same, if you find that Gilead Community Services and the Connecticut Fair Housing Center have proven by a preponderance of the evidence that the Town of Cromwell violated the Fair Housing Act, you also must find that the Town of Cromwell violated the Americans with Disabilities Act. As a result, these instructions will not separately discuss the elements of a claim under the Americans with Disabilities Act.

Finally, the parties have agreed to the following stipulation:  Mayor Faienza stated to a newspaper reporter, "What we are against is the idea of having this group home in this particular neighborhood."

A.    **CLAIM UNDER 42 U.S.C. § 3604(f) OF THE FAIR HOUSING ACT AND 42 U.S.C. § 12132 OF THE AMERICANS WITH DISABILITIES ACT**

It is unlawful to engage in housing practices that treat people differently because of their disability. This is sometimes called the prohibition against "intentional discrimination," and it arises under 42 U.S.C. § 3604(f) of the Fair Housing Act, which makes it unlawful

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person.

42 U.S.C. § 3604(f)(1)-(2).

To prove a claim of intentional discrimination, Gilead Community Services and the Connecticut Fair Housing Center have the burden of proving by a preponderance of the evidence that the Town of Cromwell's actions against Gilead's home at 5 Reiman Drive were motivated at least in part by the disabilities of the home's intended residents.

Gilead Community Services and the Connecticut Fair Housing Center allege that the Town of Cromwell's conduct resulted in three different types of discriminatory housing practices. They are:

(1) engaging in conduct that makes housing unavailable;

(2) imposing discriminatory terms and conditions of rental or ownership; and

(3) harassing or interfering with a housing owner or resident's right to live in their housing free from discrimination.

I will now describe each of these discriminatory housing practices in greater detail.

1.      MAKING HOUSING UNAVAILABLE

First, as I just stated, it is a discriminatory housing practice to engage in conduct that makes housing unavailable because of the handicap of the buyer or renter; a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter. In other words, it is unlawful to impose burdens on a class of residents or potential residents, making it more difficult for them to obtain housing; to cause delays in securing housing; or to otherwise convey a sense that the class of residents are unwanted because of their disability. If the Town of Cromwell has engaged in any of these housing practices, they are said to have made housing unavailable. The parties have agreed that the clients served by Gilead's housing programs, including at the 5 Reiman Drive home, are people with disabilities. They have also agreed that Gilead intended to use the home at 5 Reiman Drive as a home for six or fewer persons receiving mental health or addiction services.

Prohibited municipal conduct that makes housing unavailable includes: (1) restricting, or attempting to restrict, the choices of a person so as to discourage residence in certain neighborhoods and locations; (2) assigning any person to housing in a particular location in a neighborhood; or (3) communicating to any prospective purchaser, renter, or resident that he or she would not be compatible with existing residents of a neighborhood.

A municipality may not make housing unavailable because of disability. Just like a municipality may not make housing more difficult for a class of residents because of their race, they cannot do so because of their disability. The parties have agreed that the Town of Cromwell is a municipality.

If you find, by a preponderance of the evidence, that the Town of Cromwell made housing unavailable to Gilead's clients because of their disabilities, then you must find that the

Town of Cromwell violated the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' making housing unavailable claim.

If you do not find that the Town of Cromwell made housing unavailable to Gilead because of their clients' disabilities, then you must find that the Town of Cromwell did not violate the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' making housing unavailable claim.

### 2.       IMPOSITION OF DISCRIMINATORY TERMS AND CONDITIONS

Second, it is a discriminatory housing practice to engage in conduct that discriminates in the terms, conditions, or privileges of the rental or ownership of housing because of the disabilities of the intended residents of the home.

It is unlawful for a municipality to impose discriminatory terms and conditions because of disability. Prohibited conduct includes: (1) employing municipal rules, codes, or other devices to segregate or reject applicants, purchasers, or renters, or (2) implementing zoning-related rules, policies, or requirements that restrict housing.

If you find, by a preponderance of the evidence, that the Town of Cromwell imposed differing rental or ownership terms and conditions on the 5 Reiman Drive home because of the disabilities of its intended residents, then you must find that the Town of Cromwell violated the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' discriminatory terms and conditions claim.

If, however, you do not find, by a preponderance of the evidence, that the Town of Cromwell imposed differing rental or ownership terms and conditions on the 5 Reiman Drive home because of the disabilities of its intended residents, then you must find that the Town of Cromwell did not violate the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' discriminatory terms and conditions claim.

### 3. HARRASSMENT AND INTERFERENCE WITH ENJOYMENT OF HOUSING

Third, it is a discriminatory housing practice to engage in conduct that subjects a housing provider, owner, or resident to harassment because of the disabilities of the intended residents of the home. Similarly, it is a discriminatory housing practice to coerce, intimidate, or interfere with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, including the right to live in the home of one's choice free of discrimination.

It is unlawful for a municipality to harass or interfere with someone in relation to their housing because of disability. Prohibited conduct that constitutes harassing or interfering behavior includes: (1) subjecting a person to harassment, where the harassment has the effect of imposing different terms, conditions, or privileges relating to the rental of housing; (2) interfering with persons in their enjoyment of housing, or (3) coercing a person, either orally, in writing, or by other means, to deny or limit the sale or rental benefits provided to that person.

If you find, by a preponderance of the evidence, that the Town of Cromwell engaged in harassment or interference against 5 Reiman Drive because of the disabilities of its intended residents, then you must find that the Town violated the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' harassment and interference claims.

If you find, however, by a preponderance of the evidence, that the Town of Cromwell did not engage in harassment or interference against 5 Reiman Drive because of the disabilities of its intended residents, then you must find that the Town of Cromwell did not violate the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' harassment and interference claims.

### 4.      DISCRIMINATORY INTENT: MOTIVATING FACTOR

Gilead Community Services and the Connecticut Fair Housing Center have established that the Town of Cromwell engaged in intentional discrimination if they showed that the Town of Cromwell engaged in any one of the three housing practices I just described because of the disabilities of the intended residents of 5 Reiman Drive.

Next, I will describe what it means to take an action "because of" disability. In order to determine whether the Town of Cromwell's actions were taken because of disability, you must decide whether the Town of Cromwell's actions were motivated in part by the disabilities of the intended residents of the 5 Reiman Drive home.

Gilead Community Services and the Connecticut Fair Housing Center are not required to prove that disability was the only reason for the Town of Cromwell's behavior. Rather, they are only required to show that disability was one motivating factor for the conduct. This means that in order for the Town of Cromwell to be found liable, disability need only have played some role in the Town of Cromwell's behavior. Gilead Community Services and the Connecticut Fair Housing Center can establish that disability was one motivating factor in the Town of Cromwell's conduct through one of two ways, which I will now go on to describe.

### 5.      EVIDENCE OF MOTIVATING FACTOR: DECISIONMAKERS' INTENT

One way for Gilead Community Services and the Connecticut Fair Housing Center to show that the Town of Cromwell's conduct was motivated in part by disability is for Gilead Community Services and the Connecticut Fair Housing Center to establish that the municipal decisionmakers themselves—that is, the Town of Cromwell's Mayor, Town Manager, Town Council, and other employees—acted with discriminatory motive. The anti-discrimination laws I described earlier make it unlawful for the Town of Cromwell and its officials to base municipal

decisions on stereotypes or generalized fears that the disabilities of the intended residents of 5

Reiman Drive make them unsuitable to reside there.

In civil rights cases, outright admissions of discriminatory motive are infrequent and

plaintiffs often must rely upon other evidence. Whether disability was a motivating factor behind

the Town of Cromwell's actions may be inferred from the totality of the relevant facts.

For example, you may consider any combination of the following factors:

(1) contemporary statements by Town of Cromwell officials, including minutes of their
meetings or other communications, regarding the motivation behind the behavior;

(2) the specific sequence of events leading up to the challenged actions;

(3) the historical background behind the Town of Cromwell's decisions to act, in other
words, whether it reveals a history of official actions taken for a discriminatory
purpose;

(4) departures from normal procedural sequences; and

(5) departures from normal substantive criteria, particularly if the factors usually
considered important by the decisionmaker strongly favor a decision contrary to the
one reached.

These factors are not the only ones you may consider when evaluating whether Town of

Cromwell officials acted with discriminatory motive. Nor do you have to find evidence of all of

these factors in order to determine that Town of Cromwell officials were motivated in part by the

disabilities of the intended residents of the home on 5 Reiman Drive.

In determining whether the Town of Cromwell was motivated in part by the disabilities

of the intended residents of the home on 5 Reiman Drive, it is important for you to remember

what this case is about. This case is about alleged violations of federal law, specifically the Fair

Housing Act and the Americans with Disabilities Act, not state law.

There has been evidence in this case about state law, and that the Town of Cromwell may

have relied on interpretations of state law in taking certain actions regarding Gilead Community

Services and its clients. However, you are not being asked to determine whether the Town of Cromwell complied with state law, but whether the Town of Cromwell violated federal law. As a result, if you find that the Town of Cromwell was motivated in part by the disabilities of the intended residents of the home on 5 Reiman Drive, the Town of Cromwell can be found to have violated federal law, even if the Town of Cromwell officials believed they were complying with state law.

You also do not have to accept any alleged non-discriminatory reasons presented by the Town of Cromwell, if you find these reasons to be pretextual. That is, if rather than being the true reason for any actions, these alleged non-discriminatory reasons were actually developed over time to counter the evidence suggesting discrimination motivated by disability. So, if you find that any alleged non-discriminatory reasons were pretextual, you may reject them.

### 6.   EVIDENCE OF MOTIVATING FACTOR: RESPONDING TO CITIZENS

Even if Town of Cromwell officials did not personally hold discriminatory viewpoints, a second, alternative way that Gilead Community Services and the Connecticut Fair Housing Center may demonstrate that the Town of Cromwell's acts were motivated in part by disability is if they establish that discriminatory views or biases were a motivating factor behind the behavior of private citizens or constituents, and that the Town of Cromwell acted in order to appease those private citizens.

In other words, Gilead Community Services and the Connecticut Fair Housing Center can establish that the Town of Cromwell acted "because of disability" by showing that Town of Cromwell officials bowed to political pressure by private citizens who opposed the home at 5 Reiman Drive on account of prejudice. Private citizens have a First Amendment right to express their views, including prejudiced ones, to Town of Cromwell officials. But Town of Cromwell

officials may not allow private citizens' prejudices to influence the decision-making process. If they do, they have acted "because of disability" in violation of the anti-discrimination laws.

### 7. FIRST AMENDMENT DEFENSE REGARDING TOWN OF CROMWELL'S PETITION TO DEPARTMENT OF PUBLIC HEALTH

The First Amendment protects the right to petition the Government for a redress of grievances. However, the First Amendment does not protect "sham" petitions. A petition is a sham if it was intended to cause harm to Gilead Community Services through the governmental process and was objectively baseless, or was otherwise undertaken in order to harass.

Here, the parties disagree on whether the Town of Cromwell's petition to the Department of Public Health was a sham petition. If you find that the petition was a good faith effort to influence the enforcement of laws, then you may not find that the Town of Cromwell's filing of the petition violated the Fair Housing Act or the Americans with Disabilities Act. If, however, you find that the Town of Cromwell's petition was a sham, then you may consider the Town's filing of the petition in reaching your verdict.

## B. CLAIM UNDER 42 U.S.C. § 3604(c) OF THE FAIR HOUSING ACT

The second claim of discrimination is the prohibition against discriminatory statements, which arises under 42 U.S.C. § 3604(c) and states that

> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

To prove a claim of discriminatory statement-making, Gilead Community Services and the Connecticut Fair Housing Center have the burden of proving each of the following elements by a preponderance of the evidence:

*First,* that the Town of Cromwell made a notice or statement with respect to a sale or rental of a dwelling; and

*Second,* that statement indicates a preference, limitation, or discrimination based on disability.

A statement is made with respect to a sale or rental of a dwelling if it is made in connection with the housing market. Statements that fall under the discriminatory statements category may include those published in newspapers or otherwise provided to the general public, and may also include private communications to a smaller group of people or a single person. You are to determine whether a discriminatory statement was made by applying the "ordinary listener test."

If you find, by a preponderance of the evidence, that the Town of Cromwell made statements indicating a preference, limitation, or discrimination based on disability, then you must find that the Town of Cromwell violated the Fair Housing Act with respect to Plaintiffs' discriminatory statements claim.

If you find, however, by a preponderance of the evidence, that the Town of Cromwell did not make discriminatory statements indicating a preference, limitation, or discrimination based on disability, then you must find that the Town of Cromwell did not violate the Fair Housing Act with respect to Plaintiffs' discriminatory statements claim.

## 1.    ORDINARY LISTENER TEST

Under the ordinary listener test, section 3604(c) can be violated if a statement suggests to an ordinary reader that people with disabilities are preferred or not preferred for the housing in question. The ordinary listener standard requires a fact intensive, case-by-case inquiry. As part of this inquiry, you may consider whether the maker of the statement had an actual intent to discriminate. But the speaker's subjective belief is not determinative. Instead, what matters is

whether the challenged statements convey a prohibited preference or discrimination against persons

with disabilities to the ordinary listener.

**C.   CLAIM UNDER 42 U.S.C. § 3617 OF THE FAIR HOUSING ACT AND 42 U.S.C. § 12132 OF THE AMERICANS WITH DISABILITIES ACT**

I now turn to the third claim of discrimination that Gilead Community Services and the

Connecticut Fair Housing Center have made. It also is unlawful to retaliate against an

organization on account of the organization having exercised its rights under the Fair Housing

Act. This claim arises under 42 U.S.C. § 3617, which provides that

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of [the Fair Housing Act].

42 U.S.C. § 3617.

To prove a claim of illegal retaliation, Gilead Community Services and the Connecticut

Fair Housing Center have the burden of proving each of the following elements by a

preponderance of the evidence:

> *First,* Gilead Community Services engaged in an activity protected under the Fair Housing Act, here, the filing of the federal lawsuit;

> *Second,* the Town of Cromwell subjected Gilead Community Services to an adverse action, namely denying its renewal application for tax-exempt status of its home at 461 Main Street; and

> *Third,* that the Town of Cromwell took the adverse action against Gilead Community Services because the organization engaged in activity protected under the Fair Housing Act.

Here, it is undisputed that Gilead Community Services filed a lawsuit against the Town

of Cromwell in federal court, and that the Town of Cromwell took an adverse action by denying

Gilead Community Services' renewal application for tax-exempt status of the home at 461 Main

Street. Thus, the question you must decide is whether Gilead Community Services' decision to

file the lawsuit played a part in the Town of Cromwell's decision to deny the renewal application for tax-exempt status of the Gilead Community Services home at 461 Main Street. To decide this, you may consider evidence of any statements made by the Town that indicate a retaliatory motive, and the timing of the retaliatory action as compared to the filing of the lawsuit.

As I noted earlier, it is important for you to remember what this case is about. This case is about alleged violations of federal law, specifically the Fair Housing Act and the Americans with Disabilities Act, not state law. There has been evidence in this case about state law, and that the Town of Cromwell may have relied on interpretations of state law in taking certain actions regarding Gilead Community Services and its clients. However, you are not being asked to determine whether the Town of Cromwell complied with state law, but whether the Town of Cromwell violated federal law. As a result, if you find that the Town of Cromwell retaliated against Gilead Community Services for exercising its fair housing rights, the Town of Cromwell can be found to have violated federal law, even if the Town of Cromwell officials believed they were complying with state law.

If you find, by a preponderance of the evidence, that the Town of Cromwell retaliated against Gilead Community Services for exercising its fair housing rights, then you must find that the Town of Cromwell violated the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' retaliation claim.

If you find, however, by a preponderance of the evidence, that the Town of Cromwell did not retaliate against Gilead Community Services for exercising its fair housing rights, then you must find that the Town of Cromwell did not violate the Fair Housing Act and the Americans with Disabilities Act with respect to Plaintiffs' retaliation claim.

## PART III: DAMAGES

It is exclusively your function to decide upon liability. I am instructing you on the law of damages so that, if you decide that Gilead Community Services and the Connecticut Fair Housing Center is entitled to recover against the Town of Cromwell, you will have guidance as to how you should proceed to determine damages.

### A.    GENERAL INSTRUCTIONS ON DAMAGES

If Gilead Community Services and the Connecticut Fair Housing Center fail to prove the elements of their claims against the Town of Cromwell, then the Town of Cromwell has prevailed on the issue of liability and you should not consider the issue of damages. Only if Gilead Community Services and the Connecticut Fair Housing Center have proven, by a preponderance of the evidence, that the Town of Cromwell is liable should you address the issue of damages.

Before I instruct you on the issue of damages, a few words of caution are in order. The fact that I am instructing you on the subject of damages does not mean that I have an opinion one way or the other on whether you should or should not reach the issue of damages in your deliberations. Again, you are only to reach the issue of damages if you find by a preponderance of the credible evidence that Gilead Community Services and the Connecticut Fair Housing Center have established their claims. These instructions are for your guidance only if you reach the issue of damages.

In respect to the damages claimed, as in respect to every other matter before you, you can award only such damages as are justified by the proof and the law. The burden is on Gilead Community Services and the Connecticut Fair Housing Center to satisfy by a fair preponderance of the evidence the extent and nature of the losses they suffered as a result of the Town of Cromwell's actions. It is not the Town of Cromwell's burden to disprove the claimed losses.

Our law permits counsel for any party to argue to the jury his or her view of the proper amount of damages. You should understand that what a lawyer says about the amount of damages is not evidence but only argument and the determination of the amount to be awarded, if any, is solely your function and in your deliberations you may accept or disregard his or her argument on the amount of damages.

## B.    COMPENSATORY DAMAGES

The purpose of money damages is to compensate Gilead Community Services and the Connecticut Fair Housing Center for the damages inflicted on them by any violations of the law that they have proven. Compensatory damages are limited to restoring to a plaintiff, as far as money can, what they lost because of the harm they suffered. They are not awarded to punish a defendant for his unlawful actions.

The law places the burden on Gilead Community Services and the Connecticut Fair Housing Center to prove facts that will enable you to arrive at the amount of damages with reasonable certainty. This is not a requirement of mathematical precision and you are permitted to determine the amount of damages by estimation or approximation, as long as Gilead Community Services and the Connecticut Fair Housing Center provide you with a reasonable basis for such estimation or approximation, such that you are not required to make a calculation by guessing or speculation. You should be guided by dispassionate common sense.

If Gilead Community Services and the Connecticut Fair Housing Center have proven all the essential elements of any of their claims, then you must award them a sum of money that you believe will fairly and justly compensate them for any injury you believe they actually sustained as a proximate result of the Town of Cromwell's misconduct. You shall award damages only for those injuries that you find Gilead Community Services and the Connecticut Fair Housing Center have proven by a preponderance of the evidence. Moreover, you may not simply award damages

for any injury suffered by Gilead Community Services and the Connecticut Fair Housing Center—you must award damages only for those injuries that are a proximate result of the Town of Cromwell's conduct that violated the law.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial.

There are two types of compensatory damages that you may consider: economic damages and non-economic damages. Economic damages are compensation for pecuniary losses, which may include money actually spent on debts and financial losses incurred as a result of the injury. Non-economic damages, on the other hand, are compensation for all non-pecuniary losses including humiliation, injury to reputation, the effect of diverting Gilead Community Services' resources away from its other programs and activities in order to address the Town of Cromwell's unlawful conduct, damage to Gilead Community Services and the Connecticut Fair Housing Center's ability to carry out its mission and purpose, and the effect of diverting the Connecticut Fair Housing Center's resources away from its other programs and activities in order to address and/or investigate the Town's unlawful conduct.

Actual loss is not limited to expenses or debts incurred. Instead, injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you award should be proportional to the actual loss sustained, whether that loss is physical, mental, or emotional, or one of the other types of loss I have previously discussed with you.

## D.    PUNITIVE DAMAGES

In addition to compensatory damages, you may, but need not, assess punitive damages against the Town of Cromwell if you find in favor of Gilead Community Services and the

Connecticut Fair Housing Center on their claim. An award of punitive damages is discretionary, which means that if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages or you may decide not to. In making the decision whether to award punitive damages against the Town of Cromwell, you should consider the underlying purposes of punitive damages. These purposes are to punish a defendant for extreme or outrageous conduct and to set an example in order to deter that defendant and others from committing similar acts in the future. Punitive damages are intended to protect the community and to express the jury's indignation at the misconduct.

You may award punitive damages if you find that the conduct of the Town of Cromwell was in reckless indifference to federally protected rights. When I say "in reckless indifference," I mean whether the Town of Cromwell's actions were taken with knowledge that it may violate the federal anti-discrimination laws.

To make this decision, you may consider whether the Town of Cromwell was aware of the Fair Housing Act's protections and whether the Town of Cromwell discriminated in spite of the risk that their actions violated the Fair Housing Act.

If you find punitive damages to be appropriate, you should calculate them by considering the following factors:

    (1) the reprehensibility of the Town of Cromwell's conduct;

    (2) the impact of the Town of Cromwell's conduct on Gilead Community Services and the Connecticut Fair Housing Center;

    (3) the relationship between the Town of Cromwell and Gilead Community Services and the Connecticut Fair Housing Center;

    (4) the likelihood that the Town of Cromwell would repeat the conduct if an award of punitive damages is not made;

(5) the level of taxpayer or constituent knowledge, participation, and influence on the Town of Cromwell's decision to take action against Gilead Community Services and the Connecticut Fair Housing Center;

(6) the relationship of any award of punitive damages to the amount of actual harm Gilead Community Services and the Connecticut Fair Housing Center suffered; and

(7) the effect of the damages award on the Town of Cromwell's financial condition.

If you award punitive damages against the Town of Cromwell with respect to Gilead Community Services and the Connecticut Fair Housing Center's claims, you should indicate on the Verdict Form the amount of punitive damages to be awarded, bearing in mind that the law requires that punitive damages, if awarded, must be fixed with calm discretion and sound reason. The amount must not reflect bias, prejudice, or sympathy toward any party, but is to be an amount you believe necessary to fulfill the purposes of punitive damages, as I have described them.

\* \* \* \* \* \*

\* \* \* \* \* \*

At this point we will interrupt the instructions to hear closing arguments of counsel. I will conclude the instructions after those summations. Remember, what the lawyers say in their closing arguments is not evidence, but it is merely argument about what they believe the evidence shows.

## PART IV: FINAL INSTRUCTIONS

You have now heard my instructions on the law and the parties' closing arguments. I remind you that the parties' arguments are not evidence. I will now give you some final instructions before you begin your deliberations.

### A.     NOTE TAKING

You were permitted to take notes during the course of the trial. Any notes you have taken should be used only as memory aids; do not give your notes more importance than your independent recollection of the evidence. If you did not take notes, you should rely on your own memory of the proceedings and should not be unduly influenced by the notes of other jurors. The fact that a particular juror has taken notes entitles that juror's opinions to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during the course of deliberations. Your notes are not evidence.

### B.     UNANIMOUS VERDICT

Your verdict must be unanimous and represent the considered judgment of each juror.

Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror. Until a verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Remember at all times that you are not a partisan. Rather, you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

## C.    FOREPERSON AND DELIBERATIONS

When you return to the jury room, you should first elect one person to act as your foreperson. The foreperson does not have any more power or authority than any other juror, and his or her opinion does not count for any more than any other juror's vote or opinion. The foreperson merely presides over your deliberations and is your spokesperson to the Court. He or she will send out any notes, and when the jury has reached its verdict, he or she will notify the marshal that the jury has reached its verdict and you will come out into open court and give the verdict.

After you have retired to begin your deliberations, you are not to leave your jury room without first notifying the marshal, who will escort you. No deliberations may take place without all jurors being present. If at any time a juror is in the bathroom facilities, the other jurors must cease deliberations and not resume deliberations until all jurors are present. Likewise, if at any time a juror is on a cell phone, the other jurors must cease deliberations immediately and may not begin deliberations again until all cell phones are off. If you bring your cell phones into the jury room, you must turn them off during deliberations.

Finally, you are prohibited from conducting any outside research on the case. You must not research any issue nor communicate with any person about the case through the Internet, smart phones, tablets, e-mail, text messaging, social media, blogs, Internet chat rooms, social networking websites, or any other forms of electronic communication.

## D.    VERDICT FORM

As mentioned at the outset of these instructions, a Verdict Form has been prepared for your convenience. Focusing on the questions set forth in the Verdict Form will assist you in your

deliberations. I want to caution you now to take your time when completing the Verdict Form. Let me ask you to look at the Verdict Form now, and I will walk through it briefly with you. As you can see, the Form consists of a series of questions. Each question calls on you either to check "yes" or "no" or to write in a monetary amount. Answer each question as it appears and only those questions shown on the Form. As you review the Form, you will see that there are instructions in **_bold-faced italicized type_**. Please read these instructions and follow them carefully. Depending on your answer to a particular question, it may not be necessary to answer a later question. Finally, be consistent in your responses.

You must complete and return the Verdict Form in court when you have reached a unanimous agreement as to your verdict. You will have the original Verdict Form in the deliberation room, and I will ask the Courtroom Deputy to collect the copies at this time. You will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous. When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, and date and sign the Verdict Form. If the foreperson makes any error in completing the Verdict Form, please do not strike out the error and add a correct response. Instead, please request a new Verdict Form, so that the Verdict Form that is submitted is error-free. Then inform the marshal or courtroom deputy that you have reached your verdict. The Verdict Form must be used only in connection with the charge I have just given to you. The terms used in the Verdict Form are discussed in my instructions, and these instructions must govern your deliberations.

## F.    ADDITIONAL INSTRUCTIONS

Shortly after you go into the jury room, Ms. Perez will show you how to access the exhibits in this case. Do not begin your deliberations until she has shown you how to access the

exhibits. Do not even elect a foreperson until this has occurred, as it is very important that your deliberations remain entirely private and without interruption.

In the jury room, you will have exhibits electronically accessible, but you will not have a transcript of the testimony. If you need to have testimony read back to you, we will do so. However, please understand that it is difficult and time-consuming to locate and read back testimony. If you nevertheless require a read-back, please be as specific as possible about the portions of the testimony you want to hear.

Your requests for a read-back of testimony and, in fact, any communication with the Court must be made to me in writing, signed by your foreperson, and given to the marshal or Courtroom Deputy. I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must caution you that in your communications with the Court you should never reveal your numerical division at any time. If you are divided, do not report how the vote stands, and if you have reached your verdict, do not report what it is until you are asked in open court.

A note about timing. We ordinarily end our trial day at 4:00 p.m. But that is not a constraint on your deliberations, and you should certainly not rush to meet any deadline. You may choose, if you find it necessary, to deliberate past 4:00 p.m. You may also choose to break at 4:00 p.m. and resume deliberations tomorrow. It is your decision. Whatever you decide, we will be here.

It is proper to add a final caution. Nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

As you deliberate, determine the facts on the basis of the evidence as you have heard it and apply the law as I have outlined it for you. Render your verdict fairly, uprightly, and without

a scintilla of prejudice. Take as long as you think is necessary to fairly and impartially reach your verdict.

Members of the jury, that concludes my instructions to you. Thank you for your patience and attention. You may now retire. The marshal will escort you to the jury room where you will begin your deliberations.